1  Albert M. Sterwerf; SBN: 175454
   Law Offices of Albert M. Sterwerf
2  The Atrium Building
   19200 Von Karman Avenue; 6th Floor
3  Irvine, California 92612
   Tel: (949) 622-5464 Cell: 30-271-1246
4  Fax: (949) 622-5553

5  Attorney for Plaintiffs: Ricky Ritch and Donna Ritch

6

7            UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF CALIFORNIA

8  RICKY RITCH, an Individual, and       )  CASE NO.: CV06-4795 CAS (JWJx)
9  DONNA RITCH, an Individual,           )
                                         )  PROPOSED AMENDED COMPLAINT FOR
10 Plaintiffs                            )  DAMAGES,
                                         )   (42 U.S.C. § 1983 & 18 U.S.C.
11 v.                                    )  §§ 1960-1964 & California Penal
                                         )          Code § 9)
12                                       )
   AVIVA BOBB, an Individual, WIL-       )
13 LIAM MACLAUGHLIN, an Individ-         )  CAUSES OF ACTION:
   ual, MITCHELL BECKLOFF, an In-        )  1.   FIRST CAUSE OF ACTION -
14 dividual, BRENDA PENNY, an In-        )          PERJURY
   dividual, RONALD BERMAN, an In-       )     (18 U.S.C. §§ 1621 & 1622 & California
15 dividual, JAMES SCHNIEDERS, an        )         Penal Code §§ 118 - 127)
16 Individual, LISA MACCARLEY, an        )  2.   SECOND CAUSE OF ACTION -
   Individual, CHRISTOPHER JOHN-         )          ATTORNEY MISCONDUCT
17 SON, an Individual, DAVID COLE-       )        (California B. & P. C. § 6068)
18 MAN, an Individual, ANDREA            )  3.   THIRD CAUSE OF ACTION -
   STERN-HODGES, an Individual,          )          JUDICIAL MISCONDUCT
19 HERMAN STERN, an Individual,          )  (California Constitution Article VI,
20 HOWARD STERN, an Individual,          )     Section 18 C.C.P. §§ 170-170.6)
   BERMAN & BERMAN, A Professional       )  4.   FOURTH CAUSE OF ACTION -
21 Law Corporation, OLDMAN, COO-         )      DEFAMATION, LIBEL, SLANDER, AND
22 LEY, SALLUS, GOLD, BRINBERG, &        )      INVASION OF PRIVACY
   COLEMAN, A Limited liability          )  5.   FIFTH CAUSE OF ACTION -
23 Partnership, RUSSAKOW, RYAN, &        )      CIVIL ACTION FOR DEPRIVATION OF
24 JOHNSON, A Professional Law           )      RIGHTS AND CONSPIRACY AGAINST
   Corporation, CLAUDIA L. KREI-         )      RIGHTS
25 GENHOFER, an Individual, RE-          )  (42 U.S.C. § 1983 & 18 U.S.C. § 241)
26 TIREMENT ADVISORS OF AMERICA, a       )  6.   SIXTH CAUSE OF ACTION -
   Corporation, MAGNOLIA GARDENS,        )          EXTORTION
27 a Private Company, ENCINO-            )        (Penal Code §§ 518 - 524)
   TARZANA REGIONAL MEDICAL CEN-         )  7.   SEVENTH CAUSE OF ACTION -
28 TER, a TENET Subsidiary, OFFI-        )      FALSE IMPRISONMENT/KIDNAPPING
                                         )   (18 U.S.C. § 1201 & California Penal
                                         )       Code §§ 182 and 236)

                                    1                    COMPLAINT FOR DAMAGES

CER G. YANG, an Individual, OF-
FICER ASTORGA, an Individual,
LEE BACA, an Individual, LOS
ANGELES COUNTY, a Government
Entity, LOS ANGELES COUNTY SU-
PERIOR COURT, a Government En-
tity, LOS ANGELES COUNTY SHER-
IFF'S DEPARTMENT, a Government
Entity, and DOES 1 to 10

8.   EIGHTH CAUSE OF ACTION –
          BATTERY
     (Penal Code §§ 182, 242 & 243)
9.   NINTH CAUSE OF ACTION –
          ASSAULT
     (Penal Code §§ 240 & 245)
10.  TENTH CAUSE OF ACTION –
          CONVERSION
     (Penal Code § 484)
11.  ELEVENTH CAUSE OF ACTION –
          FRAUD AND DECEIT
     (Civil Code §§ 1709-1710 and Penal Code
          § 484)
12.  TWELFTH CAUSE OF ACTION –
          FALSE STATEMENT TO A BANK
     (18 U.S.C. § 1014 and Penal Code § 484)
13.  THIRTEENTH CAUSE OF ACTION –
     STATE CIVIL RIGHTS VIOLATION
          (Civil Code § 52.1 -Tom Bane Civil
               Rights Act)
14.  FOURTEENTH CAUSE OF ACTION –
          CONSPIRACY
     (Penal Code § 182 – Civil Conspiracy)
15.  FIFTEENTH CAUSE OF ACTION –
          OBSTRUCTION OF JUSTICE
          (18 U.S.C. §§ 1503, 1512, & 1513)
16.  SIXTEENTH CAUSE OF ACTION –
          CIVIL RICO
          (18 U.S.C. § 1961-1964)
17.  SEVENTEENTH CAUSE OF ACTION
          – HOBBS ACT
          (18 U.S.C. § 1951)
18.  EIGHTEENTH CAUSE OF ACTION
     INTENTIONAL AND NEGLIGENT INFLIC-
          TION OF EMOTIONAL HARM

This is an unlimited case. The
Prayer for relief is
$100,000,000.00

THE PLAINTIFF ALLEGES:

1. This is an action brought under 42 U.S.C. § 1983 to recover damages against defendants for violation of plaintiffs Ricky Ritch and Donna Ritch's rights, i.e. Federal and State Constitutional rights to be secure in their person, right to liberty, right to due process, right to a jury, right to due

1   process prior to the taking of property, right to the pursuit
2   of happiness (denied access to Marshall Stern, the plaintiff's
3   father (Donna Ritch) and father-in-law (Ricky Ritch)).

4   2. The jurisdiction of this Court is predicated on 28 U.S.C. §§
5   1331, 1332, 1337, and 1343 and 18 U.S.C. §§ 1964(a) and
6   1964(c) and pendant jurisdiction principles. The amount in
7   controversy exceeds $75,000.00 exclusive of interest and
8   costs.

9       a. In the case of justice, this Court is appropriate ju-
10         risdiction in that one of the primary defendants in
11         this case, Judge Aviva Bobb, has been appointed the
12         Chief Justice of the California Supreme Court to be on
13         a panel created by the Chief Justice to investigate the
14         corruption in the California conservatorship system.

15      b. However, as will be shown in this case, Judge Bobb is a
16         participant in the corruption of the California Conser-
17         vatorship system. The plaintiffs believe that the po-
18         tential cover-up of the corruption in the California
19         Court system regarding conservatorship proceedings may
20         go all the way up to the California Supreme Court.

21      c. Therefore, an appeal within the State Court System may
22         not be free of the corruption complained of in this ac-
23         tion and an action within the Federal system could be
24         the only path to justice for the plaintiffs.

25  3. Venue is proper in this Court. 18 U.S.C. § 1965 and 28 U.S.C.
26  § 1391. All defendants reside in, can be found in, have
27  agent(s) in and/or transact or have transacted their affairs
28  in this District.

3

**COMPLAINT FOR DAMAGES**

4. This Court is an appropriate Jurisdiction since this matter does not involve either the probate of a will or an estate of a decedent or the annulment of a will. <u>Marshall v. Marshall</u>, 126 S.Ct. 1735 (2006). All probate issues are ancillary to the primary causes of action in this case.

5. Plaintiff, Ricky Ritch, is and at all times mentioned in this complaint was a citizen of the United States, and was a resident of Alabama or Louisiana. (Alabama prior to June 2005 and after January 2006, and Louisiana from June 2005 to January 2006)

6. Plaintiff, Donna Ritch, is and at all times mentioned in this complaint was a citizen of the United States, and was a resident of Alabama or Louisiana. (Alabama prior to June 2005 and after January 2006, and Louisiana from June 2005 to January 2006)

7. Defendants, Los Angeles County, Los Angeles County Superior Court and Los Angeles County Sheriff's Department, are, and at all times mentioned in this complaint are agencies of the County of Los Angeles in the State of California, with the capacity to be sued.

    a. Plaintiffs name the individual defendants below and incorporate them into this action as parties to the actions of this complaint.

8. A substantial part of the events giving rise to this action occurred in Los Angeles County, California. Venue is therefore proper under 28 U.S.C. § 1391(b).

9. Defendants, Los Angeles County, Los Angeles County Superior Court and Los Angeles County Sheriff's Department, were at all

**COMPLAINT FOR DAMAGES**

1    times mentioned in this complaint, acting under color of state

2    law.

3  10. The facts of the violations of the plaintiff's Federal Consti-

4    tutional and statutory rights are described in the following

5    causes of action.

6  11. Plaintiff Ricky Ritch is informed and believes and thereon al-

7    leges that he was subjected to violations of his Federal and

8    State Constitutional right to be secure in his person, his

9    right to liberty, his right to due process, his right to a

10   jury trial, his right to an impartial judge, his right to due

11   process prior to the taking of property, his right to the pur-

12   suit of happiness (denied access to his father-in-law), as a

13   result of the customs, practices, and policies of the defen-

14   dants Los Angeles County, Los Angeles County Superior Court

15   and Los Angeles County Sheriff's Department.

16  12. Plaintiff Donna Ritch is informed and believes and thereon al-

17   leges that she was subjected to violations of her Federal and

18   State Constitutional right to be secure in her person, her

19   right to liberty, her right to due process, her right to an

20   impartial judge, her right to due process prior to the taking

21   of property, her right to the pursuit of happiness (denied ac-

22   cess to her father), as a result of the customs, practices,

23   and policies of the defendants Los Angeles County, Los Angeles

24   County Superior Court and Los Angeles County Sheriff's Depart-

25   ment.

26  13. The Plaintiffs are informed and believes and thereon alleges

27   that the customs, practices, and policies of the defendants

28   Los Angeles County, Los Angeles County Superior Court and Los

**COMPLAINT FOR DAMAGES**

1  Angeles County Sheriff's Department, are such that they fail
2  to follow the statutes and laws of the United States and the
3  State of California, and thereby their implementation of those
4  statutes is not discretionary.

5      a. Specifically, the Superior Court has allowed the Pro-
6         bate Section to conduct itself in an illegal manner, by
7         failing to follow the California Probate Code and the
8         Court Rules by appointing a select group of attorneys
9         and professional conservators to fleece the conserva-
10        tees placed in their charge and then criminally prose-
11        cuting (without due process) any parties that oppose
12        them.

13     b. The Los Angeles Sheriff's Department has allowed its
14        officers to physically abuse those under their charge,
15        to threaten those under their charge with physical vio-
16        lence, to relay threatening messages from the Judges on
17        the Los Angeles Superior Court. A physical battery re-
18        sulting in a serious life threatening injury on the
19        plaintiff Ricky Ritch by a Sheriff Officer was "A mes-
20        sage from the Judge!"

21  14. Plaintiffs do not know the date and the originator of the
22      above policies of Los Angeles County, the Los Angeles Superior
23      Court or the Los Angeles Sheriff's Department.

24  15. The customs, practices, and policies of the defendants Los An-
25      geles County, Los Angeles County Superior Court and Los Ange-
26      les County Sheriff's Department described in this complaint
27      amounted to deliberate indifference to the rights of persons,
28      such as the plaintiffs, who petitioned to be the conservator

6                                          **COMPLAINT FOR DAMAGES**

1   for family members and for the family and friends of conserva-
2   tees and proposed conservatees.

3   16. As a direct and proximate result of the customs, practices,
4   and policies of the defendants Los Angeles County, Los Angeles
5   County Superior Court and Los Angeles County Sheriff's Depart-
6   ment described in this complaint, plaintiff Ricky Ritch has
7   suffered injury, loss, and damage, including a life threaten-
8   ing concussion from having his head hit against a Sheriff's
9   car, the aggravation of a broken back by physical violence,
10  loss of liberty, loss of property, injury to his reputation,
11  and emotional distress, pain and suffering.

12  17. As a direct and proximate result of the customs, practices,
13  and policies of the defendants Los Angeles County, Los Angeles
14  County Superior Court and Los Angeles County Sheriff's Depart-
15  ment described in this complaint, plaintiff Donna Ritch has
16  suffered loss of property, injury to her reputation, and emo-
17  tional distress, pain and suffering.

18  18. As a direct and proximate result of the customs, practices,
19  and policies of the defendants Los Angeles County, Los Angeles
20  County Superior Court and Los Angeles County Sheriff's Depart-
21  ment described in this complaint, plaintiffs medical expenses
22  in the amount of $2,000,000.00.

23  19. Plaintiffs demand a jury trial.

## TABLE OF CONTENTS/CAUSES OF ACTION

TABLE OF CONTENTS/CAUSES OF ACTION ................................... 7

CERTIFICATION OF PARTIES ........................................... 14

CITATIONS .......................................................... 23

STATEMENT OF CASE .................................................. 27

7                                    COMPLAINT FOR DAMAGES

1  STATEMENT OF FACTS ................................................. 28

2  FIRST CAUSE OF ACTION - PERJURY .................................... 51

3    First Count - Ronald Berman .................................... 51

4    Second Count - Ronald Berman ................................... 57

5    Third Count - Ronald Berman .................................... 60

6    Fourth Count - Jim Schnieders and Lisa MacCarley .............. 63

7    Fifth Count - Jim Schnieders and Lisa MacCarley .............. 68

8    Sixth Count - Jim Schnieders and Lisa MacCarley .............. 71

9    Seventh Count - Christopher Johnson, Andrea Hodges, & Herman Stern

10   against Ricky Ritch and Donna Ritch ............................ 74

11   Eighth Count - Christopher Johnson against Ricky Ritch .......... 83

12 SECOND CAUSE OF ACTION - ATTORNEY MISCONDUCT ...................... 86

13   First Count - Ronald Berman .................................... 86

14   Second Count - Ronald Berman ................................... 89

15   Third Count - Lisa MacCarley ................................... 95

16   Fourth Count - Lisa MacCarley .................................. 97

17   Fifth Count - Lisa MacCarley .................................. 104

18   Sixth Count - David Coleman ................................... 108

19   Seventh Count - David Coleman ................................. 110

20   Eighth Count - David Coleman .................................. 116

21   Ninth Count - David Coleman ................................... 117

22   Tenth Count - Christopher Johnson ............................. 123

23   Eleventh Count - Christopher Johnson .......................... 126

24 THIRD CAUSE OF ACTION - JUDICIAL MISCONDUCT ...................... 127

25   Count One - Aviva Bobb - On-Bench Abuse of Authority in the

26   Performance of Judicial Duties (Unlawful Appointment of PVP

27   Counsel). ..................................................... 127

28

**COMPLAINT FOR DAMAGES**

Count Two - Aviva Bobb - On-Bench Abuse of Authority in the
Performance of Judicial Duties (Unlawful Competency Determination).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129
Count Three - Aviva Bobb - On-Bench Abuse of Authority in the
Performance of Judicial Duties (Allowed Unlawful Movement of
Conservatee). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 130
Count Four - Aviva Bobb - On-Bench Abuse of Authority in the
Performance of Judicial Duties (Unlawful Appointment of
Conservator). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131
Count Five - Aviva Bobb - On-Bench Abuse of Authority in the
Performance of Judicial Duties (Unlawful Jurisdiction Over Trust).
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 131
Count Six - Aviva Bobb - On-Bench Abuse of Authority in the
Performance of Judicial Duties (Unlawfully Retained a Case After
Motion of Prejudice was Filed). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133
Count Seven - Aviva Bobb - Count Seven - Aviva Bobb - On-Bench Abuse
Of Authority In Performance Of Judicial Duties (Unlawfully Ruled on
a Case When The Petitioner was Still in His Response Time). . . . . . 135
Count Eight - Brenda Penny - On-Bench Abuse of Authority in the
Performance of Judicial Duties (Unlawful Appointment of a Temporary
Conservator). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136
Count Nine - Mitchell Beckloff - On-Bench Abuse Of Authority In
Performance Of Judicial Duties (Unlawfully Ruled on a Case When The
Petitioner was Still in His Response Time). . . . . . . . . . . . . . . . . . . 137
Count Ten - Aviva Bobb - Abuse of Contempt Power and Failure to
Ensure Rights (Unlawful Prosecution of Plaintiff) . . . . . . . . . . . . . 138
Count Eleven - Aviva Bobb - Bias or Appearance of Bias . . . . . . . . . 139

**COMPLAINT FOR DAMAGES**

Count Twelve - Aviva Bobb - Ex Parte Communications ("Special Prosecutor" Informed of His Appointment Prior to the Hearing) ... 143

Count Thirteen - Aviva Bobb - Ex Parte Communications (Communication with Attorney Christopher Johnson) ............................ 145

FOURTH CAUSE OF ACTION - DEFAMATION, LIBEL, SLANDER, AND INVASION OF PRIVACY ............................................................ 147

First Count - Ronald Berman - Libel and Invasion of Privacy Against Ricky Ritch and Donna Ritch .................................... 147

Second Count - Lisa MacCarley and James Schnieders - Libel and Invasion of Privacy ............................................ 150

Third Count - Christopher Johnson, Andrea Hodges, and Herman Stern - Libel and Invasion of Privacy ................................ 154

Fourth Count - David Coleman - Libel, Slander and Invasion of Privacy ....................................................... 156

FIFTH CAUSE OF ACTION - CIVIL ACTION FOR DEPRIVATION OF RIGHTS AND CONSPIRACY AGAINST RIGHTS ..................................... 159

First Cause of Action - Civil Rights Violation of 14th Amendment/Due Process - Guilt Must Be Proven Beyond A Reasonable Doubt/Presumption of Innocence ............................................... 159

Second Count - Civil Rights Violation of 14th Amendment - Due Process/Fifth Amendment -- Failure to Give Notice of Criminal Prosecution. ...................................................... 163

Third Count - Civil Rights Violation of 14th Amendment/Fifth Amendment - Failure to Give Self-Incrimination Warning ......... 165

Fourth Count - Civil Rights Violation of 14th Amendment/Due Process - Criminal Contempt Trial Not Held Before an Unbiased Judge ..... 167

Fifth Count - Civil Rights Violation of 14th Amendment/Sixth Amendment Right to Jury Trial. ................................... 168

**COMPLAINT FOR DAMAGES**

Sixth Count - Civil Rights Violation of 14th Amendment/Due Process - Appointment of Opposing Counsel in Civil Case as "Special Prosecutor" ................................................... 169

Seventh Count - Civil Rights Violation of 14th Amendment/Due Process - Allowing Special Prosecutor to Call Criminal Defendant as Witness ................................................... 171

Eighth Cause of Action - Civil Rights Violation of 14th Amendment/Due Process - Special Prosecutor Allowed To Treat Defendant as a "Hostile Witness" ................................ 172

SIXTH CAUSE OF ACTION - EXTORTION ................................ 173

SEVENTH CAUSE OF ACTION - FALSE IMPRISONMENT/KIDNAPPING .......... 176

First Count - Judge Bobb, Judge MacLaughlin, Ronald Berman, Lisa MacCarley, David Coleman, Los Angeles County Superior Court ..... 176

Second Count - Judge Bobb, Judge MacLaughlin, Ronald Berman, Lisa MacCarley, David Coleman, Los Angeles County Superior Court, Los Angeles County Sheriff's Department, Sheriff Baca ............... 178

Third Count - Judge Bobb, Commissioner Penny, Judge MacLaughlin, Ronald Berman, Lisa MacCarley, David Coleman, Magnolia Gardens, Los Angeles County Superior Court ................................ 182

EIGHTH CAUSE OF ACTION - BATTERY ................................ 184

NINTH CAUSE OF ACTION - ASSAULT ................................ 187

TENTH CAUSE OF ACTION - CONVERSION .............................. 189

Count One - All Defendants - Taking of Trust Assets ............ 190

Count Two - Lee Baca and Los Angeles County Sheriff's Department - Ricky Ritch's Personal Property ................................ 191

ELEVENTH CAUSE OF ACTION - FRAUD AND DECEIT ..................... 193

**COMPLAINT FOR DAMAGES**

(Civil Code §§ 1709-1710 and Penal Code § 484 in Compliance with Rule 9(b)) Count One - Aviva Bobb, Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman .................................. 193

Count Two - Encino-Tarzana Regional Medical Center ............. 197

TWELFTH CAUSE OF ACTION - FALSE STATEMENT TO A BANK Jim Schnieders 199

THIRTEENTH CAUSE OF ACTION - STATE CIVIL RIGHTS VIOLATION ........ 200

FOURTEENTH CAUSE OF ACTION - CONSPIRACY .......................... 203

FIFTEENTH CAUSE OF ACTION - OBSTRUCTION OF JUSTICE ............... 210

First Count - Aviva Bobb, Mitchell Beckloff, Brenda Penny, Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman - Influencing of Officer of the Court ...................................... 210

Second Count - Aviva Bobb, Mitchell Beckloff, Brenda Penny, Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman, Officer Yang, Officer Astorga, Los Angeles Sheriff's Department - ............ 211

Tampering With a Witness ....................................... 211

Third Count - Aviva Bobb, Mitchell Beckloff, Brenda Penny, Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman, Officer Yang, Officer Astorga, Los Angeles Sheriff's Department - Retribution Against a Party/Witness ...................................... 214

SIXTEENTH CAUSE OF ACTION - CIVIL RICO .......................... 215

First Count - All Defendants - Pattern of Racketeering Activity . 216

Second Count - All Defendants - 18 U.S.C. § 1962(a) RICO Income from Racketeering. ................................................. 217

Third Count - All Defendants - 18 U.S.C. § 1962(b) RICO Take over of an Enterprise. ................................................ 219

Fourth Count - James Schnieders and Lisa MacCarley - 18 U.S.C. § 1962(c) Employee of Enterprise Involved in Racketeering Activities. .............................................................. 220

**COMPLAINT FOR DAMAGES**

1   Fifth Count - All Defendants - 18 U.S.C. § 1962(d) RICO Conspiracy
2   to Violate 18 U.S.C. 1962(a)(b)&(c). ............................ 222
3   Sixth Count - Ronald Berman and BERMAN & BERMAN - 18 U.S.C. §
4   1962(c) Employee of Enterprise Involved in Racketeering Activities.
5   ................................................................ 223
6   Seventh Count - David Coleman and OLDMAN, COOLEY, SALLUS, GOLD,
7   BRINBERG, & COLEMAN - 18 U.S.C. § 1962(c) Employee of Enterprise
8   Involved in Racketeering Activities. ............................ 224
9   Eighth Count - Christopher Johnson and RUSSAKOW, RYAN, & JOHNSON -
10  18 U.S.C. § 1962(c) Employee of Enterprise Involved in Racketeering
11  Activities. .................................................... 226
12  SEVENTEENTH CAUSE OF ACTION - HOBBS ACT ......................... 227
13  First Cause of Action - Extortion or Attempted Extortion by Force.
14  ................................................................ 227
15  Second Cause of Action - Extortion or Attempted Extortion Under
16  Color of Official Right ........................................ 229
17  EIGHTEENTH CAUSE OF ACTION - INTENTIONAL AND NEGLIGENT INFLICTION OF
18  EMOTIONAL DISTRESS ............................................. 230
19  First Cause of Action - Intentional Infliction of Emotional Distress
20  to Ricky Ritch. ................................................ 230
21  Second Cause of Action - Negligent Infliction of Emotional Distress
22  to Ricky Ritch. ................................................ 232
23  Third Cause of Action - Intentional Infliction of Emotional Distress
24  to Donna Stern-Ritch. .......................................... 233
25  Fourth Cause of Action - Negligent Infliction of Emotional Distress
26  to Donna Stern-Ritch. .......................................... 235
27  PETITIONER'S PRAYER FOR RELIEF ................................. 237
28  VERIFICATION ................................................... 243

**COMPLAINT FOR DAMAGES**

CERTIFICATES OF COMPLIANCE AND RELATED CASES ..................... 243

## CERTIFICATION OF PARTIES

PETITIONER ALLEGES THE FOLLOWING DEFENDANTS ARE PARTIES TO THE ABOVE ALLEGATIONS:

1. The plaintiff is informed and believes and thereon alleges that the defendant Aviva Bobb is, and at all times herein mentioned was a resident of Los Angeles County, California and is employed as a Superior Court Judge in Department 11 as the Senior Judge of the Probate Section by the County of Los Angeles.

2. The plaintiff is informed and believes and thereon alleges that the defendant William MacLaughlin is, and at all times herein mentioned was a resident of Los Angeles County, California and is employed as the Presiding Judge for the Los Angeles County Superior Court by the County of Los Angeles.

   a. The plaintiffs are informed and believes and thereon alleges that the defendant William MacLaughlin and the Los Angeles County Superior Court are subject to derivative action (*respondent superior*) under this action in that:

      i. Aviva Bobb, Mitchell Beckloff, and Brenda Penny were acting within the scope of employment in committing the predicate offenses and the 18 U.S.C. § 1962 violations. <u>Gruber v. Prudential-Bache Securities, Inc.</u>, 679 F.Supp. 165, 181 (D. Conn. 1987).

**COMPLAINT FOR DAMAGES**

1       ii.  The acts of Aviva Bobb, Mitchell Beckloff, and

2            Brenda Penny were intended to and did benefit the

3            employer. Woods v. Piedmonte, 676 F. Supp. 143,

4            147 (E.D. Mich. 1987).

5      iii.  William MacLaughlin is a perpetrator and is not a

6            victim, prize, or instrument in the violations as

7            per. Haroco, Inc. v. American National Bank and

8            Trust Co., 747 F.2d 384, 402 (7th Cir. 1984).

9       iv.  Aviva Bobb, Mitchell Beckloff, and Brenda Penny

10           hold high level positions in the Los Angeles

11           County Superior Court. Federal Savings & Loan In-

12           surance Corp. v. Shearson-American Express, 658 F.

13           Supp. 1331, 1341 (D.P.R. 1987).

14  3. The plaintiff is informed and believes and thereon alleges

15     that the defendant Mitchell Beckloff is, and at all times

16     herein mentioned was a resident of Los Angeles County, Cali-

17     fornia and is employed as a Superior Court Judge Pro Tem in

18     Department 5 by the County of Los Angeles.

19  4. The plaintiff is informed and believes and thereon alleges

20     that the defendant Brenda Penny is, and at all times herein

21     mentioned was a resident of Los Angeles County, California and

22     is employed as a Los Angeles County Superior Court Commis-

23     sioner by the County of Los Angeles.

24  5. The plaintiff is informed and believes and thereon alleges

25     that the defendant Ronald Berman is, and at all times herein

26     mentioned was a resident of Los Angeles County, California,

27     and is employed by the County of Los Angeles as a Probate Vol-

28     unteer Program attorney.

**COMPLAINT FOR DAMAGES**

6. The plaintiff is informed and believes and thereon alleges that the defendant BERMAN & BERMAN, A Professional Law Corporation, is a legal entity licensed in the practice of law by the State of California and at all times herein mentioned was conducting business in Los Angeles County, California.

   a. The plaintiff is informed and believes and thereon alleges that the defendant BERMAN & BERMAN, A Professional Law Corporation, is subject to derivative action (*respondent superior*) under this action in that:

      i. Ronald Berman was acting within the scope of employment in committing the predicate offenses and the 18 U.S.C. § 1962 violations as per, <u>Gruber</u>, at 181. Ronald Berman is an attorney working as an attorney in the Law Office of BERMAN & BERMAN.

      ii. The acts of Ronald Berman were intended to and did benefit the employer. <u>Woods</u>, at 147. Ronald Berman received compensation as the appointed PVP counsel for Marshall Stern and as such benefited BERMAN & BERMAN.

      iii. BERMAN & BERMAN is a perpetrator and is not a victim, prize, or instrument in the violations as per. <u>Haroco</u>, at 402.

      iv. Ronald Berman holds a high level position in the firm BERMAN & BERMAN. <u>Federal Savings & Loan Insurance Corp. v. Shearson-American Express</u>, at 1341.

**COMPLAINT FOR DAMAGES**

b. In all instances where Ronald Berman is named as a defendant in a Cause of Action that Cause of Action is to include BERMAN & BERMAN as well even if not named.

7. The plaintiff is informed and believes and thereon alleges that the defendant James Schnieders is, and at all times herein mentioned was a resident of Los Angeles County, California, and is hired by the County of Los Angeles as a Professional Conservator.

8. The plaintiff is informed and believes and thereon alleges that the defendant Lisa MacCarley is, and at all times herein mentioned, was a resident of Los Angeles County, California.

9. The plaintiff is informed and believes and thereon alleges that the defendant Christopher Johnson is, and at all times herein mentioned, was a resident of Los Angeles County, California.

10. The plaintiff is informed and believes and thereon alleges that the defendant RUSSAKOW, RYAN, & JOHNSON, A Professional Law Corporation, is a legal entity licensed in the practice of law by the State of California and at all times herein mentioned was conducting business in Los Angeles County, California.

a. The plaintiff is informed and believes and thereon alleges that the defendant RUSSAKOW, RYAN, & JOHNSON, A Professional Law Corporation, is subject to derivative action (*respondent superior*) under this action in that:

i. Christopher Johnson was acting within the scope of employment in committing the predicate offenses and the 18 U.S.C. § 1962 violations. Gruber, at

**COMPLAINT FOR DAMAGES**

181. Christopher Johnson is an attorney working as an attorney in the Law Office of RUSSAKOW, RYAN, & JOHNSON.

    ii.  The acts of Christopher Johnson were intended to and did benefit the employer. <u>Woods</u>, at 147. Christopher Johnson received compensation as the attorney or co-conspirator Andrea Hodges and as such benefited RUSSAKOW, RYAN, & JOHNSON.

    iii.  RUSSAKOW, RYAN, & JOHNSON is a perpetrator and is not a victim, prize, or instrument in the violations. <u>Haroco</u>, at 402.

    iv.  Christopher Johnson holds a high level position in the firm RUSSAKOW, RYAN, & JOHNSON. <u>Federal Savings & Loan Insurance Corp. v. Shearson-American Express</u>, at 1341.

  b. In all instances where Christopher Johnson is named as a defendant in a Cause of Action that Cause of Action is to include RUSSAKOW, RYAN, & JOHNSON as well even if not named.

11. The plaintiff is informed and believes and thereon alleges that the defendant David Coleman is, and at all times herein mentioned was a resident of Los Angeles County, California. David Coleman was appointed by Judge Aviva Bobb to act as a "Special Prosecutor" and as such, David Coleman became a representative of the Los Angeles County Superior Court and was therefore subject to the control and regulations of the Los Angeles County Superior Court.

**COMPLAINT FOR DAMAGES**

12. The plaintiff is informed and believes and thereon alleges that the defendant OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN, A Limited liability Partnership, is a legal entity licensed in the practice of law by the State of California and at all times herein mentioned was conducting business in Los Angeles County, California.

    a. The plaintiff is informed and believes and thereon alleges that the defendant OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN, A Professional Law Corporation, is subject to derivative action (*respondent superior*) under this action in that:

        i. David Coleman was acting within the scope of employment in committing the predicate offenses and the 18 U.S.C. § 1962 violations. <u>Gruber</u>, at 181. David Coleman is an attorney working as an attorney in the Law Office of OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN.

        ii. The acts of David Coleman were intended to and did benefit the employer. <u>Woods</u>, at 147. David Coleman received compensation as the counsel for Howard Stern and as the court appointed "Special Prosecutor" and as such benefited OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN.

        iii. OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN is a perpetrator and is not a victim, prize, or instrument in the violations as per <u>Haroco</u>, at 402.

**COMPLAINT FOR DAMAGES**

iv. David Coleman holds a high level position in the firm OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN. <u>Federal Savings & Loan Insurance Corp. v. Shearson-American Express</u>, at 1341.

b. In all instances where David Coleman is named as a defendant in a Cause of Action that Cause of Action is to include OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN as well even if not named.

13. The plaintiff is informed and believes and thereon alleges that the defendant Claudia L. Kreigenhofer is, and at all times herein mentioned was an employee of the Los Angeles County Superior Court and was assigned as the Official Court Reporter in Department 11, of the Los Angeles Superior Court in Los Angeles County, California.

14. The plaintiff is informed and believes and thereon alleges that the defendant Officer G. Yang is, and at all times herein mentioned was an employee of the Los Angeles Sheriff's Department and was assigned as Bailiff in Department 11, of the Los Angeles Superior Court in Los Angeles County, California.

15. The plaintiff is informed and believes and thereon alleges that the defendant Officer Astorga is, and at all times herein mentioned was an employee of the Los Angeles Sheriff's Department and was assigned to transport Plaintiff Ricky Ritch to the Los Angeles County Jail on January 23, 2006.

16. The plaintiff is informed and believes and thereon alleges that the defendant Sheriff Lee Baca is, and at all times herein mentioned was a resident of Los Angeles County, California and is the Sheriff of Los Angeles County.

**COMPLAINT FOR DAMAGES**

a. The plaintiff is informed and believes and thereon al-
leges that the defendant Sheriff Lee Baca, is subject
to derivative action (*respondent superior*) under this
action in that:

   i. Officers Yang and Astorga, and unidentified offi-
cers at the Jail were acting within the scope of
employment in committing the predicate offenses
and the 18 U.S.C. § 1962 violations. Gruber, at
181. The Officers are employees of the Sheriff's
Office.

   ii. The acts of Officers were intended to and did
benefit the employer. Woods, at 147.

  iii. The Sheriff is a perpetrator and is not a victim,
prize, or instrument in the violations as per
Haroco, at 402.

   iv. The Officers hold a high level position in the
Sheriff's Office. Federal Savings & Loan Insurance
Corp. v. Shearson-American Express, at 1341.

17. The plaintiff is informed and believes and thereon alleges
that the defendant Andre Stern-Hodges (Hereafter Andrea
Hodges) is, and at all times herein mentioned was a resident
of Oregon. Andrea Hodges has voluntarily placed herself within
the jurisdiction of the State Of California and the County of
Los Angeles by her use of the courts and her involvement in
the State matter *BP 091 574*, the Conservatorship of the Person
and Estate of Marshall L. Stern. The agents of Andrea Hodges
are Christopher Johnson and the law firm RUSSAKOW, RYAN, &
JOHNSON.

**COMPLAINT FOR DAMAGES**

18. The plaintiff is informed and believes and thereon alleges that the defendant Herman Stern is, and at all times herein mentioned was a resident of Hawaii. Herman Stern has voluntarily placed himself within the jurisdiction of the State Of California and the County of Los Angeles by his use of the courts and his involvement in and appearance at court for the State matter *BP 091 574*, the Conservatorship of the Person and Estate of Marshall L. Stern.

19. The plaintiff is informed and believes and thereon alleges that the defendant Howard Stern is, and at all times herein mentioned was a resident of Oregon. Howard Stern has voluntarily placed himself within the jurisdiction of the State Of California and the County of Los Angeles by his use of the California Courts and his involvement in the State matter *BP 091 574*, the Conservatorship of the Person and Estate of Marshall L. Stern. Howard Stern's agent in California is David Coleman and the Law firm of OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN.

20. The plaintiff is informed and believes and thereon alleges that the defendant Magnolia Gardens is, and at all times herein mentioned was a company licensed to carry on its business in the State of California, within Los Angeles County, California.

21. The plaintiff is informed and believes and thereon alleges that the defendant Encino-Tarzana Regional Medical Center is, and at all times herein mentioned was a company licensed to carry on its business in the State of California, within Los Angeles County, California. It is a subsidiary of TENET Corp.

**COMPLAINT FOR DAMAGES**

22. The plaintiff is informed and believes and thereon alleges that the defendant Retirement Advisors of America is, and at all times herein mentioned was a company within Houston, Texas. Defendant Retirement Advisors had and has an on going transactional history within the State of California and the County of Los Angeles, through its business relationship to Marshall Stern who was residing in Los Angeles County of the State of California.

23. The plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1-100, inclusive, and thereby sue these defendants by such fictitious names. The plaintiff will amend this complaint to allege their names and capacities when ascertained. The plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that the plaintiff's damages as herein alleged were proximately caused by their conduct.

**CITATIONS**

**Cases**

American Trust Co. v. Dixon, (1938) 26 CA2d 426, 431, 78 P2d 449 ... 39

Antonovich v. Superior Court, (1991) 234 Cal. App. 3d 1041, 1048, 1053, 287 Cal. Rptr. 863 ....................................... 147

Boyich v. Howell, (1963) 221 Cal. App. 2d 801, 802, 34 Cal. Rptr. 794 ................................................... 147

Brady v. Superior Court (1962) 200 Cal. App. 2d 69 [19 Cal. Rptr. 242] ................................................... 160

Draper v. Hellman Commercial Trlst & Sav. Bank, (1928) 263 Cal. 26, 34, 363 P. 240 ............................................. 147

**COMPLAINT FOR DAMAGES**

Estate of Goetz, (1967) 253 CA2d 107, 114, 61 CR 181 .............. 39

Estate of Locknane, (1962) 208 CA2d 505, 25 CR 292 ................. 39

Estate of Mann, (1986) 184 CA3d 593, 604,229 CR 225 ............... 39

Federal Savings & Loan Insurance Corp. v. Shearson-American Express,
   658 F. Supp. 1331, 1341 (D.P.R. 1987) ...................... passim

Fortenbury v. Superior Court (1940) 16 Cal. 2d 405 [106 P.2d 411] . 160

Gagne v. Bertran, (1954) 43 Cal. 2d 481, 488, 275 P.2d 15 ......... 198

Geernaert v. Mitchell, (1995) 31 Cal. App. 4th 601, 605-606, 37 Cal.
   Rptr. 2d 483 ............................................... 194

Grant v. Weatherholt, (1954) 123 Cal. App. 2d 34, 45, 266 P.2d 185 204

Gruber v. Prudential-Bache Securities, Inc., 679 F.Supp. 165, 181 (D.
   Conn. 1987) ............................................... passim

Haroco, Inc. v. American National Bank and Trust Co., 747 F.2d 384,
   402 (7th Cir. 1984) ........................................ passim

In re Joiner (1960) 180 Cal. App. 2d 250, 254-255, 4 Cal. Rptr. 667.)
   ........................................................... 164

In re McKinney (1968) 70 Cal. 2d 8, 13-14, 73 Cal. Rptr. 580, 447
   P.2d 972 .................................................. 164

In re Oliver, 333 U.S. 257 (1948) ................................ 167

Khawar v. Globe Internat., Inc., (1998) 19 Cal. 4th 254, 279, 79 Cal.
   Rptr. 2d 178, 965 P.2d 696 .................................. 147

Los Angeles Metro. Transp. Auth. V. Superior Court (2004) 123 Cal.
   App. 4th 261, 266-76, 20 Cal. Rptr. 3d 92 .................... 203

MacLeod v. Tribune Pub. Co., (1959) 52 Cal. 2d 536, 537-551, 343 P.2d
   36 ......................................................... 147

Malley-Duff & Associates Inc. v. Crown Life Insurance Co., 792 F.2d
   341 (3rd Cir. 1986) ........................... 217, 219, 220, 227

Marshall v. Marshall, 126 S.Ct. 1735 (2006) ........................ 4

**COMPLAINT FOR DAMAGES**

Mitchell v. Superior Court of Los Angeles County, 28 Cal. App. 3d
  759, 104 Cal. Rptr. 921 (Cal.App.Dist.2 11/16/1972) ......... 50, 160

Parkinson Co. v. Bldg. Trades Council, (1908) 154 Cal. 581, 593, 98
  P. 1027 ..................................................... 203

People v. Gonzalez, 32 Cal.App.4th 533, 36 Cal.App.4th 870, 41
  Cal.App.4th 7, 38 Cal.Rptr.2d 235 (Cal.App. Dist.2 02/17/1995) .. 164

People v. McAlister (1976) 54 Cal. App. 3d 918, 927, 126 Cal. Rptr.
  881 ........................................................ 164

People v. Mulholland (1940) 16 Cal. 2d 62, 66, 104 P.2d 1045 ...... 164

People v. Palomino (1940) 41 Cal. App. 2d 155, 156, 106 P.2d 66 ... 164

Peskin v. Squires (1957) 156 Cal. App 2d 240, 246, 319 P.2d 405. .. 203

Seeger v. Odell, (1941) 18 Cal. 2d 409, 115 P.2d 977 ............. 196

Swasey v. de L'Etanche, (1936) 17 Cal. App. 2d 713, 718, 62 P.2d 753
  ............................................................ 204

Taormina v. Antelope Mining Corp., (1952) 110 Cal. App. 2d 314, 320,
  242 P.2d 665 ............................................... 204

Thrifty-Tel, Inc. v. Bezenek, (1996) 46 Cal. App. 4th 1559, 1567, 54
  Cal. Rptr. 2d 468 .......................................... 195

Woods v. Piedmonte, 676 F. Supp. 143, 147 (E.D. Mich. 1987) .... passim

Young V. United States Ex Rel. Vuitton Et Fils S. A. Et Al., 107 S.
  Ct. 2124, 481 U.S. 787 (U.S. 05/26/1987) .................. 167, 174

**Statutes**

18 U.S.C. § 1201 ................................................ 176

18 U.S.C. § 1503 ................................................ 210

18 U.S.C. § 1512 ................................................ 211

18 U.S.C. § 1513 ................................................ 214

18 U.S.C. § 1951 ........................................... 227, 229

18 U.S.C. § 1961(4) ............................................. 219

1    18 U.S.C. § 1962 (a) ................................ 217

2    18 U.S.C. § 1962 (b) ................................ 219

3    18 U.S.C. § 1962 (c) ................................ 220

4    18 U.S.C. § 1962 (d) ................................ 222

5    18 U.S.C. § 1964 ................................. 3, 240

6    18 U.S.C. § 1965 ...................................... 3

7    28 U.S.C. § 1331 ...................................... 3

8    28 U.S.C. § 1332 ...................................... 3

9    28 U.S.C. § 1337 ...................................... 3

10   28 U.S.C. § 1343 ...................................... 3

11   28 U.S.C. § 1391 .................................. 3, 4

12   C.C.P § 170.6 ....................................... 47

13   C.C.P. § 128.5 (d) ................................. 241

14   C.C.P. § 128.5.(a) ................................. 238

15   C.C.P. § 418.10 ................................. 47, 49

16   California C.C.P. § 128.7 .............. 66, 82, 85, 99

17   California C.C.P. § 170.1 ......................... 139

18   California C.C.P. § 170.6 ............. 40, 47, 48, 134

19   California C.C.P. § 418.10 .................... 135, 137

20   California C.C.P. § 418.11 ......................... 49

21   California C.C.P. § 472a(b) ........................ 50

22   *California Civil Code § 1709* ..................... 193

23   California Civil Code § 52.1 -Tom Bane Civil Rights Act ...... 200, 202

24   *California Civil Code §1710* ...................... 193

25   California Penal Code § 118 ................... passim

26   California Penal Code § 125 .................... 51, 60

27   California Penal Code § 236 ............. 176, 178, 182

28   California Penal Code § 240 ............... 188, 203

**COMPLAINT FOR DAMAGES**

California Penal Code § 242 ........................................ 184

California Penal Code § 243 ........................................ 184

California Penal Code § 245 ........................................ 188

California Penal Code § 484 ........................ 190, 193, 194, 199

California Penal Code § 503 ......................................... 53

California Penal Code § 508 ........................................ 173

California Penal Code § 519 ........................................ 173

California Probate Code § 1470 ....................... 128, 195, 196

California Probate Code § 1810 ....................... 34, 131, 136, 183

California Probate Code § 859 ...................................... 241

Probate Code § 17005 ........................................ 50, 72, 132

Probate Law § 17002 ................................................ 72

**Other Authorities**

Jury Instruction No. 1.02 .......................................... 87

<u>**STATEMENT OF CASE**</u>

This is a case where the Plaintiffs have been the victims of a pattern/conspiracy of criminal/racketeering conduct including perjury, extortion, battery (with grave or serious (i.e. life threatening) infliction of bodily injury), assault, kidnapping/false imprisonment, fraud and deceit, obstruction of justice, the violation of their Constitutional Rights, including Due Process, Right Against Self Incrimination, Right to a Fair Trial, and various other criminal and tortuous conduct of the defendants including conspiracy to commit the above acts. Many of the defendants are employees of the State of California (including Judges on the Los Angeles County Superior Court) or are agents of the State of California and were conducting their

**COMPLAINT FOR DAMAGES**

1  of the Trust's assets being managed by Retirement Advisors

2  into a Trust checking account in order to purchase the prop-

3  erty for Marshall Stern. Mr. Ritch had Marshall Stern verbally

4  confirm with Ruthledge Gordon, an employee of Retirement Advi-

5  sors, that he was authorizing Ricky Ritch to use Trust assets

6  to purchase the property in Louisiana.

7  4. In 2005, Marshall Stern was hospitalized for evaluation of his

8  weakened physical condition[2], at Encino-Tarzana Regional Medi-

9  cal Center. Ricky and Donna Ritch flew in from Alabama to be

10  with Marshall Stern in the hospital.

11     a. While he was there, Marshall Stern would awake at vari-

12        ous times and attempted to get out of his hospital bed

13        after which he would fall.

14     b. After this had happened more than once, Mr. Ritch had

15        requested an alarm bed that signaled the hospital staff

16        when the patient attempts to get out of bed for Mar-

17        shall Stern.

18     c. The hospital supplied a defective alarm bed, the alarm

19        did not work.

20  5. One night in March 2005, Marshall Stern attempted to get out

21  of bed. Since the alarm bed was defective it did not alarm and

22  no hospital staff appeared to assist Marshall Stern. As he got

23  out of bed he began to fall and Ricky Ritch attempted to catch

24  him before he fell to the ground. In the process, Marshall

25

26

27  _____

[2] It would latter be determined that Marshall Stern had bleeding polyps, the loss of blood was

28  causing his physical weakness and losses of consciousness, but this was not diagnosed by Tar-
zana Hospital at this time.

COMPLAINT FOR DAMAGES

criminal and tortuous acts under color of their authority as representatives of the State of California.

## STATEMENT OF FACTS

1. In April 2004, Marshall Stern caused to be prepared documents appointing Ricky Ritch as the Trustee of his Living Trust (Exhibit 1) and appointing Ricky Ritch as his General Attorney-in-Fact for his finances and his Attorney-in-Fact for Health Care[1] (Exhibits 2 and 3 respectfully). After the documents were prepared Marshall Stern asked Mr. Ritch to come to California from his residence in Alabama to sign the documents and to assume the duties as Trustee and Attorney in Fact. All of the documents were signed and either properly witnessed by third parties or notarized in accordance with California Law.

2. In January of 2005, Marshall Stern directed Mr. Ritch, as his trustee, to find him a home in Louisiana to move into. Marshall Stern had been released from the Army in Louisiana and decided that he wished to live there with Donna Ritch his daughter and Ricky Ritch his son-in-law.  Ricky Ritch, following the directions of Marshall Stern looked for properties in Louisiana and presented five properties to Marshall Stern for his perusal and selection. Marshall Stern selected the property at 22052 Pat O'Brian Road, Covington, Louisiana.

3. Mr. Ritch contacted the Retirement Advisors of America in Houston (Hereinafter referred to as "Retirement Advisors"), Texas, the financial company managing the finances for the Marshall L. Stern Living Trust, to have money transferred out

---

[1] On page 5 of the Durable Power of Attorney for Health Care, Marshall Stern appointed Ricky Ritch to be his Conservator if one were to become necessary. Exhibit 3.

**COMPLAINT FOR DAMAGES**

fell on top of Mr. Ritch causing Mr. Ritch to fall and injuring his back. (Exhibit 4)

6. Shortly after the accident in the hospital, a member of the staff approached Marshall Stern and informed him that the hospital could no longer treat him unless he had a conservatorship. Until this time, the hospital had treating Marshall Stern under the 2004 Power of Attorney for Health Care (Exhibit 3), a copy of which the hospital had on file.

7. Based on the assertions of Encino-Tarzana Regional Medical Center, Marshall Stern contacted Roger Agajanian to prepare the paperwork for a conservatorship. Mr. Agajanian had been friends with Marshall Stern for over ten-years and agreed to assist Marshall Stern.

8. Roger Agajanian contacted Albert Sterwerf, another attorney in the same office building, with whom he had worked with on other cases. Mr. Agajanian wished for Mr. Sterwerf to represent Marshall Stern as the conservatee to avoid any conflict of interest.  Mr. Agajanian, believing the case would be fairly simple, since all parties apparently were in agreement (Both Marshall Stern and Mr. Ritch), offered $1,000.00 to Mr. Sterwerf for his services.

9. On or about April 13, 2005, Mr. Agajanian called Mr. Sterwerf and put Marshall Stern on the phone.  Mr. Sterwerf and Marshall Stern agreed to a $1,000.00 fee. The agreement was to be reduced to writing for signing at a latter date, because Marshall Stern was about to go into the hospital to have some bleeding polyps removed on April 15, 2005.

**COMPLAINT FOR DAMAGES**

10. On April 20, 2005, Roger Agajanian filed the petitions of conservatorship and temporary conservatorship. (Exhibit 5)

11. On or about April 21, 2005, Judge Bobb on her own initiative appointed Ronald Berman as the counsel for Marshall L. Stern. (Exhibit 6) (Judge Bobb had no authority to appoint a PVP counsel for Marshall Stern since he was represented by privately retained counsel prior to he filing of the Conservatorship petition.)

   a. The appointment of Ronald Berman was a first step in the conspiracy, since it enabled Berman to begin the process of making fraudulent allegations of wrong doing against Mr. Ritch and thus creating an appearance of the necessity for the Probation Court to deny Mr. Ritch's applications and to appoint a "Professional Conservator" desired by Ronald Berman and the court.

12. On April 27, 2005, Judge Bobb dismissed Mr. Ritch's petition for temporary conservator on the grounds it was defective. A review of the document shows no substantive defects which would have made the petition defective and Judge Bobb's determination was intentionally vague.

13. On April 27, 2005, Judge Bobb and Ronald Berman informed Mr. Agajanian that Marshall Stern's privately retained counsel, Albert Sterwerf, could not be Marshall Stern's attorney since he was not a member of the Probate Volunteer Program (PVP) panel of attorneys. As will be discussed below in the Causes of Action for Fraud/Deceit and Judicial Misconduct, this was a fraudulent statement. There is no statutory or court rule that prevents a proposed conservatee from hiring a private attorney

**COMPLAINT FOR DAMAGES**

1    or requiring a PVP panel attorney to represent the conserva-

2    tee.

3  14. Since his petition for temporary conservatorship had been dis-

4    missed, Mr. Ritch had believed that all of the petitions had

5    been dismissed and that the case had ended. Therefore, he

6    failed to appear at the May 26, 2005 hearing.

7  15. Ronald Berman began contacting those members of Marshall

8    Stern's family that would support his actions, such as Mar-

9    shall's daughter Andrea Hodges, who had not seen Mr. Stern in

10   over two-years[3] and his son Howard Stern who had not seen Mr.

11   Stern for several years[4].

12 16. Most significantly, Ronald Berman contacted Marshall Stern's

13   brother Herman Stern in Hawaii. Herman Stern had not seen Mar-

14   shall Stern in 35-years and by his own admission, "I had not

15   been involved with his family until now." (Exhibit 7) It was

16   to Herman Stern that Ronald Berman appealed to to select a

17   "professional conservator" to nominate to take care of Mar-

18   shall Stern and to protect him from Ricky Ritch. (Exhibit 10

19   page 3(89))

20 17. Herman Stern selected Jim Schnieders to be nominated as the

21   conservator of Marshall Stern. On July 6, 2005, Lisa MacCarley

22

_____

23 [3] For a period of the time that Andre Hodges alleges that the Plaintiffs were attempting to isolate her from Marshall Stern, she lived approximately 40-miles from Marshall Stern in Oxnard, Cali-

24 fornia, in a house purchased for her by the Marshall Stern Living Trust. At the same time the plaintiffs were living in Alabama.

25

26 [4] In his pleading Howard Stern states, "Objector (Howard Stern) resides in Oregon and is inca-pable of traveling to California to monitor personally his father's care. As such, he cannot read-

27 ily gainsay Ritch's allegations in regards to the physical treatment of conservatee." (Exhibit 8,

28 page 4 lines 7-9)

**COMPLAINT FOR DAMAGES**

filed a petition for Jim Schnieders to be appointed as the conservator for Marshall Stern based on the recommendation of Herman Stern after prompting from Ronald Berman. (Exhibit 11)

18. In his first report to the court (Exhibit 12), Ronald Berman said that he was repeating the allegations of Herman Stern, Andrea Hodges, Howard Stern, and Victoria Stern-Brewer[5]. Based on the allegations of these parties, who had not visited Marshall Stern for years, decades, or ever before these proceedings.

    a. Ronald Berman claimed that Ricky and Donna Ritch were isolating Marshall Stern from his family.

    b. Ronald Berman asserted that the plaintiffs had used undue influence on Marshall Stern in order for him to sign the Powers-of-Attorney and the Trust documents in April of 2004 or that Ricky and Donna Ritch had forged Marshall Stern's signature on the documents. None of the parties were present at the signing of the documents and have no personal knowledge of the facts they alleged.

    c. Two of the relatives cited by Berman have made statements that confirm that they had no personal knowledge of their alleged facts, Howard Stern in Exhibit 8 and Herman Stern in Exhibit 7.

19. Based on the above and other inadmissible allegations, Ronald Berman presented his judicial co-conspirators with fraudulent

---

[5] She is Marshall Stern's niece, the daughter of his brother Myron Stern. Marshall Stern did not even know her when she suddenly appeared at his home since she had never visited him prior to this action.

**COMPLAINT FOR DAMAGES**

grounds upon which to deny Mr. Ritch's petition to be the con-
servator of Marshall Stern.

20. On July 7, 2005, Commissioner Brenda Penny (a subordinate to
Judge Bobb), in violation of Probate Code § 1810 and lacking
jurisdiction to do so[6], denied Mr. Ritch's petition to be ap-
pointed as the conservator based solely on the false allega-
tions presented by Ronald Berman in his report to the court.

    a. The denial was illegal under Probate Code § 1810, since
Marshall Stern in two separate signed writings, Exhib-
its 3, Page 5(10)) and 13, Page 5(140)), appointed Mr.
Ritch to be his conservator if one were to become nec-
essary.)

21. At the July 7, 2005 hearing, Commissioner Penny appointed Jim
Schnieders as the temporary conservator of Marshall Stern.

22. At the July 13, 2005 hearing, Commissioner Penny restricted
Ricky and Donna Ritch to 4-hours of supervised visitation with
Marshall Stern per day on the recommendation of Ronald Berman.

    a. The allegations which were the basis for the restric-
tion was inadmissible double hearsay and not credible
on their face. At the time of the alleged "badgering"
by the plaintiffs, Marshall Stern had twice nominated

---

[6] "Certiorari, like prohibition, is, of course, a 'jurisdictional' writ. While it cannot be used to at-tack an error of a lower tribunal committed in the exercise of its jurisdiction, it is available when that tribunal has acted in excess of its 'jurisdiction.' . . . The meaning of 'jurisdiction' for the pur-poses of certiorari . . . is different and broader than the meaning of the same term when used in connection with 'jurisdiction' over the person and subject matter." (citation omitted) Our Su-preme Court further has stated (citation omitted): "'. . . it seems well settled (and there appears to be no case holding to the contrary) that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction, and certiorari will lie to correct such excess.'" (citation omitted/emphasis added) Mitchell v. Superior Court of Los Angeles County, 28 Cal. App. 3d 759, 104 Cal. Rptr. 921 (Cal.App.Dist.2 11/16/1972)

COMPLAINT FOR DAMAGES

Ricky Ritch as his conservator in writing. (Exhibit 3 and 13)

b. An uninvolved third party, Los Angeles County Sheriff Officer Christopher Johnson and Donna Ritch, did hear Mr. Berman badgering Marshall Stern on various occasions in an effort to get Marshall Stern to say that he wanted Ronald Berman to represent him. From reports of people present, Marshall Stern consistently said, "No! He wanted Ricky!" or words to that effect.

c. This was the initial isolation of Marshall Stern from his family and friends by the conspiracy. (The Court ordered the isolation of Marshall Stern, which is the very thing that the court's appointed conspirators were accusing Ricky and Donna Ritch of doing.)

23. On or about July 11, 2005, Jim Schnieders approached Bank of America and falsely asserted that he had a right to remove the funds from the accounts that had Trust assets in them. Mr. Schnieders illegally/criminally removed $148,213.00 of Trust assets.

a. The funds in the Bank of America accounts had been frozen by the bank's management on or about July 5, 2005, when she had been informed that there was a conservatorship proceedings in progress. This action by Bank of America caused several checks written by Mr. Ritch, acting as the Trustee of the Trust to be returned for insufficient funds.

b. On July 11, 2005, employees of Bank of America, at a branch other than where Marshall Stern's accounts were

**COMPLAINT FOR DAMAGES**

1       held, overrode the freeze on the accounts and released

2       the Trust's funds to Jim Schnieders.

24. Co-conspirators David Coleman and Christopher Johnson joined
into the conspiracy as the representatives of Howard Stern and
Andrea Hodges respectfully.

25. Each of the "co-conspirator counsels" then began to make
groundless and false assertions against Mr. Ritch (See Causes
of Actions for Perjury, Attorney Misconduct, and Defamation,
discussed below.) Mr. Ritch incurred great expense having his
attorney respond to the false and groundless accusations.

    a. Frequently the plaintiffs had to respond to the same
false allegations numerous times as each opposing coun-
sel would repeat the false allegations of the other
counsels.

26. Despite the efforts of Mr. Ritch's attorney to point out the
false and groundless accusations being made against Mr. Ritch,
Judge Bobb, Brenda Penny, and Mitchell Beckloff have never
reprimanded any of their co-conspirators for their perjurous
and illegal conduct. (See Cause of Action for Judicial Miscon-
duct below.)

27. On or about July 11, 2005, Jim Schnieders illegally moved Mar-
shall Stern to Magnolia Gardens.

28. Once Marshall Stern arrived at Magnolia Gardens, Mr. Schnied-
ers and the Staff of Magnolia Gardens further isolated Mar-
shall Stern by denying that he was there to people who wanted
to visit with him or drugging him so that he was unable to
communicate with them.

**COMPLAINT FOR DAMAGES**

a. Donna Stern-Ritch experienced this personally while visiting Marshall Stern and was talking to him. During her visit, a staff member came into the room and injected a pink fluid into Marshall's IV and suddenly he was no longer able to communicate with her and lost consciousness. (See Exhibit 14, Donna Ritch's declaration)

29. At the July 13, 2005 hearing, Commissioner Penny ordered Mr. Ritch to file an accounting from June 1, 2003 to June 30, 2005. (Exhibit 15)

a. This order is of questionable legality, since Commissioner Penny did not name any statutory basis for ordering an accounting in excess of two years.

b. The order is of questionable legality since it ordered an impossibility and was overly broad. Marshall Stern did not appoint Ricky Ritch as his attorney-in-fact until April 2004, Commissioner Penny was directing Mr. Ritch to provide accounting for a period of time he had no control over or access to Marshall Stern's records.

c. The court never served a written copy of the order on Mr. Ritch as required by California law.

d. The order also became impossible due to the actions of defendant Retirement Advisors of America, who refused to communicate with Mr. Ritch and thus denied him access to the Trust's accounts managed by Retirement Advisors. This action by Retirement Advisors denied Mr. Ritch information required to make an accounting. The conspirators subsequently used Mr. Ritch's lack of in-

**COMPLAINT FOR DAMAGES**

1             formation concerning the Trust, caused by the refusal

2             of defendant Retirement Advisors to attack Mr. Ritch's

3             position as the Trustee of the Trust.

4       e. During the same period during which Retirement Advisors

5             of America was refusing to talk to Mr. Ritch, they were

6             providing confidential communications and records con-

7             cerning the Trust to opposing counsels Ronald Berman

8             and Lisa MacCarley.

9   30. The original attempt at providing an accounting by Mr. Ritch

10   was deficient due to a misunderstanding by Roger Agajanian,

11   who believed the ordered accounting was from June 1, 2005 to

12   June 30, 2005.

13       a. Since the court had failed to serve a copy of the writ-

14             ten order on Mr. Ritch, the assistant was relying on

15             the verbal representations of Mr. Ritch and Mr. Aga-

16             janian and not on the written order and thus the error

17             was at least in part the fault of the court who failed

18             to serve the written order as required by law. The or-

19             der has never been served on Mr. Ritch to this date.

20   31. When the opposing counsel complained in court about the ac-

21   counting, Mr. Ritch's attorney took steps to file a corrected

22   copy. An accounting was filed on November 18, 2005. (Exhibit

23   29)

24   32. In August 2005, attorney Albert Sterwerf was contacted by

25   Roger Agajanian to assist him in the case. During his research

26   for Mr. Agajanian, Albert Sterwerf determined that Judge Bobb

27   had illegally prevented him from representing Marshall Stern

28   through her fraudulent statements to Roger Agajanian in April

**COMPLAINT FOR DAMAGES**

2005. Mr. Sterwerf at that point attempted to reassert his position as the attorney for Marshall Stern.

33. Mr. Sterwerf petitioned for the termination of the Conservatorship process since Marshall Stern had taken all of the required steps necessary to avoid a conservatorship, specifically, he had an existing Trust and an appointed trustee, he had General and Health Care powers of attorney in place, and he was receiving 24/7 personalized medical supervision in his home. With all of these things in place, Marshall Stern did not need a conservator to protect his person or his estate and a petition to terminate the conservatorship was appropriate.

34. At the December 23, 2005 hearing, Judge Bobb ruled that based on a medical report commissioned by Ronald Berman in July of 2005 that Marshall Stern was suffering from dementia in April 2005. (Exhibit 17) No evidence was presented of Marshall Stern's incapacity in April of 2005 and there is no legal basis for this determination. Bobb's determination is contrary to the controlling case law in California at that time[7].

---

[7] The testator is presumed sane and competent and the contestant has the burden of proving by the preponderance of the evidence that the testator lacked testamentary capacity at the time the will was signed.  Estate of Fritschi, (1963) 60 C2d 367, 372, 33 CR 264; Estate of Locknane, (1962) 208 CA2d 505, 25 CR 292.

The same general  presumption of competence exists with respect to the execution of trusts. American Trust Co. v. Dixon, (1938) 26 CA2d 426, 431, 78 P2d 449.

If a testator had a mental disorder but had lucid periods, there is a presumption that the will was executed during a period of lucidity. Estate of Mann, (1986) 184 CA3d 593, 604,229 CR 225; Estate of Goetz, (1967) 253 CA2d 107, 114, 61 CR 181.

COMPLAINT FOR DAMAGES

35. Judge Bobb ruled that Marshall Stern was not competent in April 2005 to hire Albert Sterwerf and therefore Mr. Sterwerf was not hired by Marshall Stern, despite Mr. Sterwerf's testimony that he had been verbally hired by Marshall Stern.

    a. Judge Bobb failed to explain how Marshall Stern was suffering from dementia in April 2005 based on a report filed in July, yet he was competent to have a "conversation[8]" with Ronald Berman in June. (Exhibit 12, Page 5(132) line 22 to page 6(133) line 8)

36. Judge Bobb also ruled that Albert Sterwerf, by assisting Roger Agajanian with legal research on the case was conflicted and thus could not represent Marshall Stern.

    a. Judge Bobb has not ruled similarly regarding David Coleman whom she appointed as a "Special Prosecutor" despite his representation of an opposing party. David Coleman continues to represent Howard Stern. Judge Bobb also has not applied the same standard to herself, in that she illegally retained case # *BP 096 488*, after a motion of prejudice (under C.C.P. § 170.6) had been properly and timely filed by Ricky Ritch.

37. Judge Bobb then asked in open court from the bench for someone to serve as a "Special Prosecutor" and David Coleman "volunteered" to serve in that capacity. Judge Bobb then began the prosecution of Mr. Ritch for contempt for not filing the accounting as ordered by Commissioner Penny in July 2005. The

---

[8] The so called "conversation" consisted on Marshall Stern squeezing Ronald Berman's arm in response to Berman's questions. At least that is what Ronald Berman alleged happened during the communication. (Exhibit 12 page 5(132))

    **COMPLAINT FOR DAMAGES**

1     deprivation of Mr. Ritch's Constitutional Rights was detailed

2     below in the Cause of Action - Civil Action for Deprivation of

3     Rights and Conspiracy against Rights.

4 38. After depriving Ricky Ritch of nearly all of his Constitu-

5     tional Rights and Protections, Judge Bobb found Mr. Ritch in

6     "Criminal" Contempt of Court.

7        a. Judge Bobb twice referred to the contempt as "criminal"

8          in writing, including the order where David Coleman re-

9          ferred to C.C.P. § 1209. (Exhibits 18 and 19) Since

10         Judge Bobb referred to the contempt as "criminal" and

11         the nature of the punishment is "punitive" in nature

12         and not "remedial" the contempt charge was criminal and

13         was thus under Penal Code § 166.

14 39. Judge Bobb ruled that Ricky Ritch could not be Marshall

15     Stern's conservator based solely on the fraudulent allegations

16     of her co-conspirators since no actual evidence of any wrong

17     doing has ever been presented against Mr. Ritch.

18 40. In the courthouse hallway, prior to the sentencing hearing on

19     January 12, 2006, Ronald Berman, Lisa MacCarley, David Cole-

20     man, and Christopher Johnson approached Mr. Agajanian, Mr.

21     Ritch's attorney. They informed Mr. Agajanian that if Mr.

22     Ritch would turn over the position of Trustee to them, "It

23     would go a long ways towards keeping him out of jail." Or

24     words to that effect.

25 41. Judge Bobb, from the bench, told Mr. Ritch that if he turned

26     over the Trust, "It would go a long ways towards keeping him

27     out of jail." Or words to that effect.

28

**COMPLAINT FOR DAMAGES**

42. When Mr. Ritch refused to turn over the Trust, Judge Bobb sentenced him to 5-days in custody and a $1,000.00 fine. She also ordered him to pay Howard Stern $6,640.00 in attorney's fees for David Coleman's preparations to be the "Special Prosecutor". (Exhibits 18 and 19)

43. On January 23, 2006, Mr. Ritch turned himself over to the Court as directed. He paid the $1,000.00 fine plus $1,750.00 in expenses and was turned over to the Los Angeles County Sheriff's Department.

44. On January 23, 2006, Mr. Ritch informed the Officers at the Courthouse that he had a broken back and that he had pins in his left shoulder from previous injuries. Originally, the Officers who first took Mr. Ritch into custody handcuffed him with two pairs off handcuffs so that his shoulder was not further injured by being pulled tightly behind his back.

45. Mr. Ritch was transported to a hospital for evaluation of his injuries. However, he was taken from the hospital and sent to the jail on orders from "The Judge".

46. Officer Astorga was assigned to transport Mr. Ritch to the Twin Towers Jail facility in Los Angeles. Officer Astorga placed Mr. Ritch in a single pair of handcuffs, causing severe pain to Mr. Ritch's shoulder. Then Officer Astorga hit Mr. Ritch's head against the Sheriff car and said, "That's a message from the Judge!" or words to that effect. Then Officer Astorga kicked Mr. Ritch into the car wrenching his broken back as he fell without support or the use of his hands to catch himself.

**COMPLAINT FOR DAMAGES**

47. Officer Astorga threatened to shoot Mr. Ritch and then claim that Mr. Ritch was attempting to escape, if Ritch gave him any trouble.

48. As they were approaching the jail facility, Officer Astorga said to Mr. Ritch, "You know I was just joking back there don't you?" or words to that effect. In light of the physical battery he suffered from Officer Astorga, Mr. Ritch did not believe that Officer Astorga had been joking.

49. At the jail facility, Mr. Ritch was placed in the in process- ing system. Due to his physical conditions, i.e. his broken back and shoulder, and his required medications for them.

50. Mr. Ritch was transferred to the medical clinic in the facil- ity for "evaluation". The "evaluation" was delayed by Mr. Ritch's file being left in the downstairs in-processing sec- tion when he was transferred "up stairs". This "mistake" was not discovered for three-days and delayed his processing.

51. While he was in the facility, Mr. Ritch was harassed and threatened by the Officers on more than one occasion. The Of- ficers informed him that his treatment was for his disrespect- ful behavior to "the Judge" or words to that effect.

52. During his incarceration, Mr. Ritch never received his doctor ordered prescription medications and he never received any medical treatment for the injuries caused by Officer Astorga.

53. Since Mr. Ritch was kept in "in-processing", he was never al- lowed to see or speak to his attorney for his entire incar- ceration. Mr. Agajanian was in trial and unable to take action in Mr. Ritch's behalf. Attorney Albert Sterwerf became active in attempting to communicate with Mr. Ritch and was informed

**COMPLAINT FOR DAMAGES**

1    by the Jail's Watch Captain that "They had bought Mr. Ritch
2    and they could keep him as long as they wanted to." Or words
3    to that effect.

4  54. On the third day of Mr. Ritch's incarceration, the Watch Cap-
5     tain called Mr. Sterwerf to inform him "That Mr. Ritch was
6     ready to be released, but the court had directed that Mr.
7     Ritch could only be released to Marshall Stern," or words to
8     that effect. Since Marshall Stern was the proposed conservatee
9     and was confined to a hospital, due to the actions of the con-
10    spirators, Judge Bobb was obviously attempting to cause Mr.
11    Ritch further delays in his release from incarceration by im-
12    posing an impossible condition on his release.

13 55. Mr. Ritch was eventually released from the jail. During his
14    out processing he was informed that his clothes, which he had
15    turned over to the Sheriff's department when he turned himself
16    in, had been "lost" during his incarceration. This included
17    his $150.00 dress pants, $80.00 dress shirt, his new $150.00
18    shoes, and his underwear. The Officers gave him someone else's
19    clothes and a pair of the jails slippers to wear. Also his
20    medications which he had turned over to the Sheriff's Depart-
21    ment, which he had never been given during his incarceration,
22    were missing in part. The entire set of medications could not
23    be used since they had been obviously tampered with during Mr.
24    Ritch's incarceration. This was a loss in excess of $250.00
25    for the medications alone.

26 56. As he was departing the jail in the Jail's "slippers" one of
27    the Officers told him that, "Those slippers are the jail's,"
28    and that if he took the slippers he would be arrested. Or

44                                            **COMPLAINT FOR DAMAGES**

words to that effect. Since it was January and about 6:00 in the evening it was not reasonable to expect Mr. Ritch to walk barefoot from the jail. This was evidence of further harassment from the Sheriff's Department. Mr. Ritch's attorney returned the slippers to the jail on the following day.

57. After he was released, Mr. Ritch was transported to the Northridge Hospital Emergency Room for evaluation. He was diagnosed with a concussion from the physical message Officer Astorga delivered from Judge Bobb. (Exhibit 20)

58. The next day Ricky and Donna Ritch returned to Louisiana.

59. On January 26, 2006, defendant Lisa MacCarley, while representing defendant Jim Schnieders, contacted Roger Agajanian to inform him that she was filing a Petition for a Restraining Order against Mr. Ritch for actions he had taken prior to his departure from the State of California as Trustee of the Trust. There was no discussion that a new action naming Ricky Ritch, Trustee as the Respondent in that action would be filed.

60. On January 27, 2006, defendant Lisa MacCarley, while representing defendant Jim Schnieders, filed an "EX PARTE PETITION TO SUSPEND POWERS OF RICKY RITCH AS TRUSTEE AND APPOINT SUCCESSOR TRUSTEE PENDING HEARING ON SUBSTITUTED JUDGMENT PETITION." (Exhibit 48)

61. On January 27, 2006, defendant Lisa MacCarley, while representing defendant Jim Schnieders, handed Mr. Agajanian a copy of the Petition without an attached SUMMONS or affidavit of personal jurisdiction. Mr. Agajanian was appearing in court for the matter *BP 091 574*, the Conservatorship of the Estate

**COMPLAINT FOR DAMAGES**

and Person of Marshall L. Stern. An Ex Parte Temporary Re-
straining Order (TRO) was filed on January 27, 2006 in that
matter concerning the Trust and Mr. Agajanian filed an opposi-
tion to the TRO on the grounds that the TRO was being filed in
the wrong venue and that the court did not have subject matter
jurisdiction of the matter. The Ex Parte TRO was filed by a
beneficiary of the Trust under case # *BP 091 574*. Neither the
Beneficiary nor her attorney provided the required twenty-four
(24) hour notice for an ex parte motion for the petition.

62. Despite the presence of Mr. Agajanian in the hall outside of
the courtroom, Judge Bobb presiding over case *BP 091 574* and
ruled on both ex parte petitions (the new case and the TRO)
presented to her while she was sitting at trial, without hear-
ing. (Exhibits 22 and 23 respectfully)

63. The Court, without hearing and based on allegations lacking
any evidentiary support, removed Ricky Ritch as Trustee under
the new case, *BP 096 488*, despite the Court's lack of juris-
diction of the Trust under California Probate Law.

   a. The Petitioner, in a convoluted argument, argued that
      Mr. Ritch was no longer the Trustee of the Trust so
      that the Court would have jurisdiction over the Trust.
      The Petitioner argued that Mr. Ritch had abandoned his
      position as Trustee because he had kept the profes-
      sional money management company (Defendant Retirement
      Advisors) originally hired by Marshall Stern to manage
      the Trust. The Petitioner claimed that the use of the
      professional money management company terminated Mr.
      Ritch's position as the trustee of the Trust. (By the

COMPLAINT FOR DAMAGES

1    Petitioner's argument, Marshall Stern also could not

2    have been the trustee of the Trust since he had hired

3    Retirement Advisors.)

4    b. The Court also granted the TRO of the Beneficiary, de-

5    spite lacking jurisdiction and wrong venue arguments,

6    and ordered that service of the TRO be mailed to the

7    Respondent in Louisiana by February 6, 2006.

8   64. On February 8, 2006, the Mr. Ritch, filed a Petition of Preju-

9    dice under C.C.P. § 170.6 to have Judge Bobb disqualified to

10   hear this case due to her previous prejudice in case *BP 091*

11   *574*. (Exhibit 24) The petition was timely and correctly filed

12   on case # *BP 096 488*. On February 10, 2006, Judge Bobb granted

13   the motion. (Exhibit 25)

14  65. On February 14, 2006, Mr. Ritch filed motion a Motion to Dis-

15   miss the action for lack of Subject Matter Jurisdiction and

16   Improper Venue (Exhibit 26) and a Motion to Quash for Lack of

17   Personal Jurisdiction over the Respondent (Exhibit 27).  Both

18   motions were made under California C.C.P. § 418.10. Under

19   C.C.P. § 418.10, the presentation of the motions is not a gen-

20   eral appearance and jurisdiction does not occur by the filing

21   of those motion.

22  66. On or about February 14, 2006, Lisa MacCarley filed an "EX

23   PARTE MOTION TO VACATE AND/OR RECONSIDER COURT'S ORDER OF FEB-

24   RUARY 9, 2006 GRANTING PREEMPTORY CHALLENGE" in an effort to

25   have Judge Bobb regain control over case # *BP 096 488* and to

26   ignore the lawful disqualification under C.C.P. § 170.6 which

27   she had already granted. Judge Bobb granted the ex parte mo-

28   tion without hearing.

**COMPLAINT FOR DAMAGES**

67. On February 18, 2006, James Schnieders called Ricky Ritch and during the conversation informed Mr. Ritch that, "He should just turn everything over to him, since on the 21st he was going to get everything anyway." Or words to that effect.

68. On February 21, 2006, Ricky Ritch filed a petition to the Federal District Court for the Central District of California to have case # BP 096 488 removed from State Court due to Diversity of Citizenship. Judge Bobb conveniently ignored this action in her subsequent actions.

69. On February 21, 2006, defendant William Beckloff, Judge Pro Tem in Department 5 of the Los Angeles County Superior Court, a Probate Court Department, made an order, apparently at the direction of Judge Bobb the senior Judge in the Probate Section of the court, sending the case back to the Judge Aviva Bobb, stating that "Court finds C.C.P. 170.6 filed against Judge Aviva Bobb was untimely." (Exhibit 28) Judge Beckloff, in making the order, acted without jurisdiction in that his order contains a finding, unsupported by substantial evidence. Mr. Ritch has never made an appearance on matter *BP 096 488*, and under C.C.P. § 170.6 until he does make an appearance the C.C.P. § 170.6[9] is timely.

    a. Mr. Ritch had not appeared in that case. The Ex Parte action of Judge Bobb on January 27, 2005 was not an ap-

---

[9] C.C.P. § 170.6(a)(2) - If directed to the trial of a cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance. (emphasis added)

COMPLAINT FOR DAMAGES

pearance under C.C.P. § 418.11[10] and he filed a Motion
to Dismiss and a Motion to Quash the matter under
C.C.P. § 418.10[11], which are not general appearances. If
the C.C.P. § 418.10 motions are denied, the first ap-
pearance of Mr. Ritch in order for the court to obtain
jurisdiction over Mr. Ritch would be the filing of the
C.C.P. § 170.6 petition. Therefore, the petition was
timely filed and Judge Pro Tem Beckloff exceeded his
jurisdiction by returning the matter to Judge Bobb in
violation of C.C.P. § 170.6.(See Footnote 6)

70. Once the matter was returned to her court on February 21,
2005, Judge Bobb granted all of the Jim Schnieders' motions
and denied all of the Ricky Ritch's motions. Since the Respon-
dent's motions were based on C.C.P. § 418.10, Judge Bobb ig-
nored the 15-days under C.C.P. § 418.10 in which the Plaintiff
had to file a response the petition and the ten-day window to
file a writ of mandate.

    a. To date, no written order denying the Motion to Dismiss
      or the Motion to Quash has been served on the plain-
      tiffs.

---

[10] C.C.P. § 418.11. An appearance at a hearing at which ex parte relief is sought, or an appear-
ance at a hearing for which an ex parte application for a provisional remedy is made, is not a
general appearance and does not constitute a waiver of the right to make a motion under Section
418.10.

[11] C.C.P. § 418.10(d) No motion under this section, or under Section 473 or 473.5 when joined
with a motion under this section, or application to the court or stipulation of the parties for an
extension of the time to plead, shall be deemed a general appearance by the defendant.

COMPLAINT FOR DAMAGES

71. Judge Bobb ruled that she had jurisdiction over the Trust since a portion of the Trust's assets are in Los Angeles County. Again this is an unlawful reading of the California Probate Code since Probate Code § 17005 only gives the court jurisdiction over a trust via the presence of trust property in the court's jurisdiction only "IF" there were no appointed trustee. Since there is an appointed trustee in the current case, the court is prohibited from exercising jurisdiction based only on property in the jurisdiction.

72. A writ was filed with in ten-days of the Judge's verbal rulings and a Demurrer (Exhibit 29A) was filed on that same day. Therefore, Judge Bobb's action of removing Mr. Ritch and appointing Jim Schnieders as the Trustee on February 21, 2006 was unlawful since Judge Bobb did not have jurisdiction to take those actions on that date[12].

73. The Demurrer for the case was heard on April 4, 2006 and was denied by defendant Beckloff. (Exhibit 30)

74. On April 6, 2006 defendant Mitchell Beckloff signed  final order on the case granting Mr. Schnieders control over Marshall Stern's living trust. (Exhibit 47) The order was signed during the period of time during which Mr. Ritch was entitled to file an Answer to the initial complaint under California C.C.P. § 472a(b)[13]. The order has never been served on Mr. Ritch or his attorney.

---

[12] <u>Mitchell v. Superior Court of Los Angeles County</u>, 28 Cal. App. 3d 759, 104 Cal. Rptr. 921 (Cal.App.Dist.2 11/16/1972)

[13] C.C.P. § 472(A)(B) - Except as otherwise provided by rule adopted by the Judicial Council, when a demurrer **to a complaint or to a cross-complaint is <u>overruled</u>** and there is no answer

**COMPLAINT FOR DAMAGES**

75. On April 14, 2006, a representative of Mr. Agajanian's law office attempted to file an Answer to the action. The Los Angeles Superior Court Probate Section refused to accept the Answer.

### FIRST CAUSE OF ACTION - PERJURY

### First Count - Ronald Berman
**(18 U.S.C. § 1621[14] & California Penal Code §§ 118[15] through 125[16])**

---

filed, the court shall allow an answer to be filed upon such terms as may be just. (emphasis added)

[14] 18 U.S.C. § 1621 – Whoever—
(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

[15] Penal Code § 118 - **Every person who, having taken an oath that he or they will** . . . certify truly before any competent tribunal . . . in any of the cases in which the oath may be administered by law of the State of California, willfully and contrary to the oath, states as true any material matter which he or they knows to be false, and every person who testifies, declares, deposes, or **certifies under penalty of** perjury **in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of** perjury **and willfully states as true any material matter which he or they knows to be false, is guilty of perjury.**
This subdivision is applicable whether the statement, or the testimony, declaration, deposition, or certification is **made or subscribed within or without the State of California**. (emphasis added)

[16] Penal Code § 125 states: "An **unqualified statement** of that which **one does not know to be true** is **equivalent** to a statement of that **which one knows to be false**." (emphasis added)

**COMPLAINT FOR DAMAGES**

76. Plaintiff incorporates each of the above allegations.

77. Ronald Berman was appointed by Aviva Bobb, on her own initia-
tive, to represent Marshall Stern the proposed conservatee in
the conservatorship proceedings. Ronald Berman is a member of
the Probate Volunteer Program and as such he is a representa-
tive of the Los Angles County Superior Court and thereby sub-
ject to their control and regulations.

78. In his first Report and Declaration to the Court filed on July
6, 2005, Berman stated, "STERN[17] has signed two powers of at-
torney, naming RICKY[18] as agent . . . a General Power of At-
torney dated April 27, 2004." (Exhibit 12 page 6(133) lines 9-
11) This is a true statement.

79. In his Second Report and Declaration to the Court signed on
August 30, 2005, Berman stated, "On **April 27, 2005**, RICKY had
STERN sign a "General Power of Attorney" (hereafter "POA"),
eight (8) days after RICKY swore under penalty of perjury that
STERN was '. . . unable to complete even a simple check trans-
action . . . .'" (emphasis in original) (Exhibit 31, Page
5(296) line 26 to page 6(297) line 1) The Report to the Court
was made under penalty of perjury by Ronald Berman.

80. THERE IS NO APRIL 27, 2005 POWER OF ATTORNEY SIGNED BY MAR-
SHALL L. STERN.

81. The alleged "April 27, 2005 Power of Attorney" is a fictional
creation of Ronald Berman in order to make false accusation of
wrong doing, i.e. illegal acts, against Plaintiff Ricky Ritch.

---

[17] Marshall L. Stern, the conservatee/trustor
[18] Plaintiff Ricky Ritch

**COMPLAINT FOR DAMAGES**

82. Based on the false 2005 date of the power of attorney created by Ronald Berman, Berman then proceeded to accuse Ricky Ritch of using the unlawfully obtained power of attorney to steal money from Marshall Stern's estate.

    a. Exhibit 31, Page 6(297) line 3 – "On **May 9, 2005**, twelve (12) days after having STERN sign the POA and nineteen (19) days after RICKY and DONNA swore STERN was incapable of managing his own affairs, RICKY signed STERN's name to a check." IF THIS HAD BEEN TRUE, I.E. THE POA HAD BEEN SIGNED IN 2005 – Then Ronald Berman was accusing the plaintiffs of committing embezzlement, a crime.[19].

    b. Exhibit 31, Page 6(297) line 18 – "On **June 30, 2005**, RICKY caused $100,000[20] to be removed from STERN's retirement account, presumably by use of a POA created after RICKY and DONNA swore that STERN was incapable of managing his own affairs." IF THIS HAD BEEN TRUE, I.E. THE POA HAD BEEN SIGNED IN 2005 – Then Ronald Berman was accusing the plaintiffs of committing embezzlement, a crime.

    c. Exhibit 31, Page 6(297) line 27 – "On **August 2, 2005**, RICKY caused $25,000 to be removed from STERN's retirement account, by use of a POA created after RICKY and DONNA swore that STERN was incapable of managing his

---

[19] California Penal Code § 503 - Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted.

[20] This is the same $100,000 discussed as the "missing $100,000" in the Second Count of Perjury below.

COMPLAINT FOR DAMAGES

1    own affairs." IF THIS HAD BEEN TRUE, I.E. THE POA HAD

2    BEEN SIGNED IN 2005 - Then Ronald Berman was accusing

3    the plaintiffs of committing embezzlement, a crime.

4    d. In this one pleading, Ronald Berman accused Ricky and

5    Donna Ritch three times of criminal conduct based on

6    the false date of the POA that he illegally created.

7    Therefore, it appears that the new date created by Ber-

8    man was part of a scheme to discredit the plaintiffs

9    AND NOT A MISTAKE OR ERROR.

10   83. In response to a motion to remove him as the court appointed

11   counsel for Marshall Stern, on October 6, 2005 Ronald Berman

12   filed an "Objections to Petition for Removal . . . ", under

13   penalty of perjury. Ronald Berman stated, "On April 27, 2005,

14   only eight (8) days following RICKY's sworn statements about

15   the lack of capacity of his father-in-law, STERN, RICKY had

16   STERN sign a General Power of Attorney. In addition to the

17   timing of this Power of Attorney making the said document in-

18   valid. . . . ." (Exhibit 10, Page 2(88) lines 9 to 12)

19   a. Berman then repeated the allegations of wrong doing

20   against Ricky Ritch based on Berman's false "2005"

21   statement of the date upon which the Power of attorney

22   was signed.

23   b. Exhibit 10 page 2(88) line 14 - "May 9, 2005, only

24   nineteen (19) days after declaring that STERN was not

25   competent, and twelve (12) days after obtaining an in-

26   valid Power of Attorney, RICKY signed STERN's name to a

27   check." IF THIS HAD BEEN TRUE, I.E. THE POA HAD BEEN

28

54                                    **COMPLAINT FOR DAMAGES**

1    SIGNED IN 2005 — Then Ronald Berman was accusing the

2    plaintiffs of committing embezzlement, a crime.

3    c. Exhibit 10 page 3(89) line 9 — "On June 30, 2005, less

4    than 60 days following RICKY's statements about STERN's

5    lack of capacity, RICKY caused $100,000.00 to be re-

6    moved from STERN's Retirement Account." IF THIS HAD

7    BEEN TRUE, I.E. THE POA HAD BEEN SIGNED IN 2005 — Then

8    Ronald Berman was accusing the plaintiffs of committing

9    embezzlement, a crime.

10   d. In this one pleading, Ronald Berman accused Ricky and

11   Donna Ritch two times of criminal conduct based on the

12   false date of the POA that he illegally created. There-

13   fore, it appears that the new date created by Berman

14   was part of a scheme to discredit the plaintiffs AND

15   NOT A MISTAKE OR ERROR.

16   e. This pleading was filed in October 2005 and the previ-

17   ously discussed pleading was filed in August 2005.

18   Therefore, Berman had over a month to correct his

19   original error which he failed to do.

20   84. Ronald Berman, under penalty of perjury, twice falsely stated

21   the date of the signature of the General Power of Attorney as

22   being April 27, 2005.

23   85. Ronald Berman made these false statements after he had cor-

24   rectly reported the date the General Power of Attorney was

25   signed in his initial report. Therefore, Ronald Berman made

26   knowingly false statements under penalty of perjury to the

27   Court.

28

**COMPLAINT FOR DAMAGES**

86. Ronald Berman's false representations were made as part of scheme to accuse Ricky Ritch of illegal acts. The incorrect date manufactured by Ronald Berman is not likely to have been an error, but was instead an intentional falsehood made up in an effort to harm Mr. Ritch.

87. Even if Ronald Berman did not know of the truthfulness of his allegations, his unqualified statements of that which he does not know to be true is equivalent to a statement of that which he knows to be false.

88. The false representations were material, in that they were the basis for numerous allegations of wrong doing against Mr. Ritch and were likely a large factor in the Court's denial of Mr. Ritch's petition to be the Conservator of Marshall L. Stern.

89. Ricky Ritch's attorney has repeatedly informed the Court and Ronald Berman of the above perjury, neither party has taken any steps to correct the situation and the perjury has gone uncorrected by the Court (Judge Bobb) and Ronald Berman.

90. Presiding Judge MacLaughlin was informed of the improper actions of Ronald Berman (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit perjury with no adverse consequences.

91. In doing the things herein alleged, defendant acted willfully and with intent to cause injury to the plaintiff. The defen-

**COMPLAINT FOR DAMAGES**

1   dant was therefore guilty of malice, oppression, and fraud in

2   conscious disregard of plaintiff's rights, thereby warranting

3   an assessment of punitive damages in an amount appropriate to

4   punish defendants and deter others from engaging in similar

5   misconduct.

6

7                    **Second Count – Ronald Berman**

8   **(18 U.S.C. § 1621 & California Penal Code §§ 118 through 125)**

9   92. Plaintiff incorporates each of the above allegations.

10  93. In his Second Report and Declaration to the Court signed on

11     August 30, 2005, Berman stated, "On **June 30, 2005**, RICKY

12     caused $100,000 to be removed from STERN's retirement account,

13     presumably by use of the POA[21] created after RICKY and DONNA[22]

14     swore that STERN was incapable of managing his own affairs. .

15     . . The intended use and whereabouts of these funds is un-

16     known." (emphasis in original) (Exhibit 31, Page 6(297)  lines

17     18 to 23)

18         a. The Report to the Court was made under penalty of per-

19            jury by Ronald Berman. Berman's statement concerning

20            the lack of knowledge of the whereabouts of the money

21            was intended to imply that Mr. Ritch had illegally em-

22            bezzled the money.

23  94. In the "Objections to Petition for Removal . . . " filed on

24     October 6, 2005, Ronald Berman, under penalty of perjury, "On

25     June 30, 2005, less than 60 days following RICKY's statements

26

27  ---

    [21] This is the Power of Attorney discussed in Count 1 of the Perjury Cause of Action above.

28  [22] Donna Ritch, the daughter of Marshall Stern and wife of Ricky Ritch.

1    about STERN lacking capacity[23], RICKY caused $100,000 to be

2    removed from STERN's Retirement Account. As of this date, the

3    use of these funds has not been disclosed." (Exhibit 10, Page

4    3(89) lines 9 to 12)

5         a. Berman's statement concerning the lack of knowledge of

6            the use of the money was intended to imply that Mr.

7            Ritch had illegally embezzled the money.

8    95. The $100,000 at issue was transferred by Ricky Ritch, trustee

9    of the Marshall L. Stern Trust to two Trust checking accounts,

10   Bank of America Checking Accounts # 04294-02800 and # 04293-

11   02797, on June 30, 2005, for the maintenance of Marshall

12   Stern. The evidence of this transfer was documented in "EX-

13   HIBIT C" of Ronald Berman's Second Report to the Court. Note

14   it is Mr. Berman's own evidence that is being referenced. (Ex-

15   hibit 32)

16   96. On or about July 5, 2005, Bank of America froze the accounts

17   due to rumors of a conservatorship proceeding. Mr. Ritch was

18   unable to access or use the funds transferred in on June 30,

19   2005.

20   97. On July 11, 2005, defendant James Schnieders, the temporary

21   conservator appointed by defendant Brenda Penny, removed the

22   $148,213.00, including the "missing $100,000.00", from the

23   Trust's Bank of America accounts. (Exhibit 33)

24   98. In a pleading served on Ronald Berman on September 29, 2005 by

25   James Schnieders, defendant Schnieders admitted taking the

26   $148,213 out of Bank of America Accounts #04294-02800 and

27

28   [23] This is a reference to the non-existent 2005 General Power of Attorney created by Ronald
     Berman discussed above.

1  #04293-02797. (Exhibit 33) Therefore, Ronald Berman was on no-

2  tice as of September 29, 2005 that James Schnieders was in

3  possession of the $100,000. Berman's assertions, under oath,

4  on October 6, 2005 were knowingly false since he had been in-

5  formed on September 29, 2005 that Schnieders had the money.

6  99. The plaintiff does not have affirmative knowledge, but alleges

7  that due to their relationship, it is reasonable to believe

8  Schnieders would have informed Berman of his removal of the

9  funds from the account on or about July 11, 2005. Therefore

10  based on his belief of the relationship between Berman and

11  Schnieders, Ricky Ritch alleges that Berman's assertions on

12  August 30, 2005 that he had no knowledge of the whereabouts of

13  the $100,000.00 were knowingly and intentionally false.

14  100.  Ronald Berman, under penalty of perjury, twice falsely

15  stated that he had no knowledge of the whereabouts of the

16  $100,000 transferred on June 30, 2005 by Ricky Ritch. There-

17  fore, Ronald Berman made two knowingly false statements under

18  penalty of perjury to the Court.

19  101.  Even if Ronald Berman did not know of the truthfulness of

20  his allegations, his unqualified statements of that which he

21  does not know to be true is equivalent to a statement of that

22  which he knows to be false.

23  102.  The false representations were material, in that they were

24  the basis for allegations of wrong doing against Mr. Ritch and

25  were likely a large factor in the Court's denial of Mr.

26  Ritch's petition to be the Conservator of Marshall L. Stern.

27  103.  Ricky Ritch's attorney has repeatedly informed the Court

28  and Ronald Berman of the above perjury, neither party has

**COMPLAINT FOR DAMAGES**

1    taken any steps to correct the situation and the perjury has

2    gone uncorrected by the Court (Judge Bobb) and Ronald Berman.

3    104.  Presiding Judge MacLaughlin was informed of the improper

4    actions of Ronald Berman (who was acting as a representative

5    of the court) and Judge Bobb and he has to date apparently

6    taken no action to prevent their improper actions. Therefore,

7    it appears to be a custom, practice, or policy within the Los

8    Angeles County Superior Court for the judges to allow those

9    attorneys and parties they have a preference for to commit

10   perjury with no adverse consequences.

11   105.  In doing the things herein alleged, defendant acted will-

12   fully and with intent to cause injury to the plaintiff. The

13   defendant was therefore guilty of malice, oppression, and

14   fraud in conscious disregard of plaintiff's rights, thereby

15   warranting an assessment of punitive damages in an amount ap-

16   propriate to punish defendants and deter others from engaging

17   in similar misconduct.

**Third Count – Ronald Berman**
**(18 U.S.C. § 1621 & California Penal Code §§ 118 through 125)**

18

19

20   106.  Plaintiff incorporates each of the above allegations.

21   107.  In the "Objections to Petition for Removal . . . " filed on

22   October 6, 2005, Ronald Berman, under penalty of perjury,

23   stated numerous times that he had no knowledge of any money

24   removed from the Marshall L. Stern Trust checking accounts.[24]

25   (Exhibit 10)

26

27   [24] Berman's pleading page 7 line 19-20, "However, each and everyone of these allegations are
untrue and as such, cannot be substantiated." Pleading page 8 lines 7-9, "The Court is expected

28   to accept the fabricated statement of the moving parties and their counsel without any further
proof, documentary or otherwise that the underlying facts are true." Pleading page 8 lines 15-16,

**COMPLAINT FOR DAMAGES**

108.  In the Petition of Removal, filed by Ricky Ritch, it was alleged, based on the information available at that time that either Ronald Berman or Jim Schnieders had removed approximately $130,000.00[25] from two Trust checking accounts on or about July 5, 2005. These allegations were made on the information available at that time, specifically that several checks written on those accounts for the benefit of Marshall Stern, including the payment of his State and Federal Taxes, had failed to pay due to insufficient funds on July 5, 2005 after a deposit of $100,000.00 into the accounts on June 30, 2005. (Exhibit 32) (Berman's Exhibit "C")

109.  By the time Mr. Ritch learned of the insufficient funds issue, Jim Schnieders had removed $148,213.00 from the account on July 11, 2005 (Exhibit 33) and thus Mr. Ritch reached the incorrect conclusion that the money had been removed on July 5, 2005.

---

"It is reasonable to deduce that the lacking evidence is demonstrative of the fabrication of such allegations." Pleading page 11 line 27 to page 12 line 1, "There are no specific facts to support this allegation. The only support of this allegation is the hearsay statement of petitioners and their counsel." Pleading page 12 lines 17-21," As the Court is well aware such assertions are ludicrous, offensive and far beyond the bounds of zealously advocating ones position. These statements constitute slanderous lies against whom they are made." Pleading page 13 lines 11-13, "Again there is no basis, documentation or facts provided to support the allegation. It seems that the basis is that if they say it enough, eventually it will sound plausible. It is not." Pleading page 15 lines 18-23, "Again in support of this claim Petitioners and their counsel refer to the undocumented, unsubstantiated and untrue allegations of the removal of $130,000 from STERN'S account. Each of these allegations is untrue and moving party has failed to make any showing."

[25] The $130,000.00 was an estimate by Mr. Ritch of the amount of money in the accounts on July 5, 2005. The exact amount was unknown because the bank statements for July 5, 2005 were not delivered to Mr. Ritch. The pleading made clear that the amount was an estimate and not the exact amount for this reason.

**COMPLAINT FOR DAMAGES**

110.   In a pleading served on Ronald Berman on September 29, 2005 by James Schnieders, defendant Schnieders admitted taking $148,213 out of Bank of America Accounts #04294-02800 and #04293-02797. (Exhibit 34) Therefore, Ronald Berman was on notice as of September 29, 2005 that James Schnieders was in possession of the $148,213.00. Berman's assertions, under oath, on October 6, 2005 were knowingly false since he had been informed that Schnieders had taken the money on September 29, 2005.

111.   Ronald Berman, under penalty of perjury, falsely stated that he had no knowledge of the removal of the money from the Trust checking accounts. Therefore, Ronald Berman made knowingly false statements under penalty of perjury to the Court.

112.   Even if Ronald Berman did not know of the truthfulness of his allegations, his unqualified statements of that which he does not know to be true is equivalent to a statement of that which he knows to be false.

113.   The false representations were material, in that they were the basis for allegations of wrong doing against Mr. Ritch and were likely a large factor in the Court's denial of Mr. Ritch's petition to be the Conservator of Marshall L. Stern.

114.   Ricky Ritch's attorney has repeatedly informed the Court and Ronald Berman of the above perjury, neither party has taken any steps to correct the situation and the perjury has gone uncorrected by the Court (Judge Bobb) and Ronald Berman.

115.   Presiding Judge MacLaughlin was informed of the improper actions of Ronald Berman (who was acting as a representative of the court) and Judge Bobb and he has to date apparently

**COMPLAINT FOR DAMAGES**

1    taken no action to prevent their improper conduct. Therefore,

2    it appears to be a custom, practice, or policy within the Los

3    Angeles County Superior Court for the judges to allow those

4    attorneys and parties they have a preference for to commit

5    perjury with no adverse consequences.

6  116.   In doing the things herein alleged, defendants acted will-

7    fully and with intent to cause injury to the plaintiff. The

8    defendants was therefore guilty of malice, oppression, and

9    fraud in conscious disregard of plaintiff's rights, thereby

10   warranting an assessment of punitive damages in an amount ap-

11   propriate to punish defendants and deter others from engaging

12   in similar misconduct.

13            **Fourth Count – Jim Schnieders and Lisa MacCarley**
            **(18 U.S.C. §§ 1621 & 1622[26] & California Penal Code §§ 118**
14                           **through 127[27])**

15  117.   Plaintiff incorporates each of the above allegations.

16  118.   On July 7, 2005, Jim Schnieders was appointed as Conserva-

17   tor for the estate and person of Marshall L. Stern by Judge

18   Bobb on February 21, 2006 over the objections of the Plain-

19   tiffs. As a Court Appointed Professional Conservator for the

20   Person and Estate of Marshall Stern, Jim Schnieders is a rep-

21   resentative of the Los Angeles County Superior Court and is

22

23

24

25  [26] 18 U.S.C. § 1622 - Whoever procures another to commit any perjury is guilty of subornation
    of perjury, and shall be fined under this title or imprisoned not more than five years, or both.

26

27  [27] Penal Code § 127 - Every person who willfully procures another person to commit perjury is
    guilty of subornation of perjury, and is punishable in the same manner as he would be if person-
28  ally guilty of the perjury so procured.

**COMPLAINT FOR DAMAGES**

1   thereby subject to their control and regulations. Lisa MacCar-
2   ley was his attorney at that time.
3   119. On or about December 12, 2005, James Schnieders swore under
4   penalty of perjury that, "On **April 27, 2005**, RITCH had the
5   Conservatee sign a "General Power of Attorney" (hereafter
6   **"POA"**), a mere eight (8) days after RITCH swore under penalty
7   of perjury that the Conservatee was 'unable to complete a
8   voter registration form.'" (Exhibit 35, Page 1(344) lines 28
9   to page 2(345) line 2)

a. Following this assertion, Schnieders makes numerous al-
   legations of wrong doing against Ricky Ritch based on
   the alleged April 27, 2005 power of attorney. (The al-
   legations are nearly word for word the same ones used
   by Ronald Berman in his pleadings. See Perjury Count
   1.)

b. Exhibit 35, Page 2(342) line 5 – "4. On **May 9, 2005**,
   twelve (12) days after having STERN sign the POA and
   nineteen (19) days after RICKY and DONNA STERN RITCH
   (hereinafter referred to as "DONNA") swore that the
   Conservatee was incapable of managing his own affairs,
   RITCH signed the Conservatee's name to a check." (Un-
   derline emphasis added) IF THIS HAD BEEN TRUE, I.E. THE
   POA HAD BEEN SIGNED IN 2005 – Then James Schnieders and
   Lisa MacCarley were accusing the plaintiffs of commit-
   ting embezzlement, a crime.

   i. A reference to Exhibit 31, Page 6(297)  line 3,
      will show that the above paragraph is word for
      word the same paragraph as in defendant Ronald

1      Berman's pleading, except for the underlined por-

2      tions of the above paragraph. This is evidence of

3      the conspiracy to harm the plaintiffs.

4  c. Exhibit 35, Page 2(342) Line 12 – "5. Attached hereto

5      marked **Exhibit "A"** is a true and correct copy of can-

6      celled Check #301, dated May 9, 2005 . . . written by

7      RICKY RITCH (pursuant to the invalid Power of Attor-

8      ney)." IF THIS HAD BEEN TRUE, I.E. THE POA HAD BEEN

9      SIGNED IN 2005 – Then James Schnieders and Lisa MacCar-

10      ley were accusing the plaintiffs of committing embez-

11      zlement, a crime.

12  d. Exhibit 35, Page 3(343)  Line 3 – "9. On **June 2, 2005,**

13      approximately 5-6 weeks after having the Conservatee

14      sign the POA, and after RITCH and DONNA swore that the

15      Conservatee was incapable of managing his own affairs,

16      RITCH signed the Conservatee's name to a check." IF

17      THIS HAD BEEN TRUE, I.E. THE POA HAD BEEN SIGNED IN

18      2005 – Then James Schnieders and Lisa MacCarley were

19      accusing the plaintiffs of committing embezzlement, a

20      crime.

21  e. Exhibit 35, Page 3(343)  Line 9 – "10. Attached hereto

22      marked **Exhibit "D"** is a true and correct copy of can-

23      celled Check #302, dated June 2, 2005 . . . written by

24      RICKY RITCH (pursuant to the invalid Power of Attor-

25      ney)." IF THIS HAD BEEN TRUE, I.E. THE POA HAD BEEN

26      SIGNED IN 2005 – Then James Schnieders and Lisa MacCar-

27      ley were accusing the plaintiffs of committing embez-

28      zlement, a crime.

**COMPLAINT FOR DAMAGES**

f. Exhibit 35, Page 3(343)  line 12 – "On **June 30, 2005,** RITCH withdrew $100,000.00[28] from the Conservatee's re-tirement account presumably by use of a POA created af-ter RITCH and DONNA swore under penalty of perjury that the Conservatee was incapable of managing his own af-fairs." IF THIS HAD BEEN TRUE, I.E. THE POA HAD BEEN SIGNED IN 2005 – Then James Schnieders and Lisa MacCar-ley were accusing the plaintiffs of committing embez-zlement, a crime.

    i. A reference to Exhibit 31, Page 6(297) line 18, will show that the above paragraph is word for word the same paragraph as in defendant Ronald Berman's pleading, except for the underlined por-tions of the above paragraph. This is evidence of the conspiracy to harm the plaintiffs.

g. In this one pleading, James Schnieders and Lisa MacCar-ley accused Ricky and Donna Ritch five times of crimi-nal conduct based on the false date of the POA that they illegally created. Therefore, it appears that the new date created by James Schnieders and Lisa MacCarley was part of a scheme to discredit the plaintiffs AND NOT A MISTAKE OR ERROR.

120. Lisa MacCarley signed the document as well, thereby assert-ing the truthfulness of the allegation in the document.[29]

---

[28] This is the same $100,000 discussed as the "missing $100,000" in the Second and Fifth Counts of Perjury.

[29] California C.C.P. § 128.7(b) By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an at-torney or unrepresented party is certifying that to the best of the person's knowledge, informa-

121.   There is no April 27, 2005 General Power of Attorney. As
was discussed in Count 1 against Ronald Berman above, the
April 27, 2005 power of attorney is a creation to make false
allegations of wrong doing against the plaintiffs. Since the
correct date and a copy of the power of attorney were in the
Court's file, Schnieders and Lisa MacCarley knew that the 2005
date was incorrect.

122.   Even if James Schnieders and Lisa MacCarley did not know of
the truthfulness of their allegations, their unqualified
statements of that which they do not know to be true is
equivalent to a statement of that which they know to be false.

123.   Since Lisa MacCarley prepared the pleading for James
Schnieders, MacCarley has procured perjury from James Schnied-
ers in violation of California Penal Code § 127.

124.   The false representations were material, in that they were
the basis for allegations of wrong doing against Mr. Ritch and
were likely a large factor in the Court's denial of Mr.
Ritch's petition to be the Conservator of Marshall L. Stern.

125.   Ricky Ritch's attorney has repeatedly informed the Court
and James Schnieders and Lisa MacCarley of the above perjury,
neither party has taken any steps to correct the situation and
the perjury has gone uncorrected by the Court (Judge Bobb) and
James Schnieders and Lisa MacCarley.

---

tion, and belief, formed after an inquiry reasonable under the circumstances, all of the following
conditions are met:
   (3) The allegations and other factual contentions have evidentiary support.

Note: C.C.P. § 128.7 is the State equivalent to Fed. Rule of Civil Procedure # 11.

COMPLAINT FOR DAMAGES

126.  Presiding Judge MacLaughlin was informed of the improper actions of James Schnieders (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper conduct. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit perjury with no adverse consequences.

127.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Fifth Count – Jim Schnieders and Lisa MacCarley
### (18 U.S.C. §§ 1621 & 1622 & California Penal Code §§ 118 through 127)

128.  Plaintiff incorporates each of the above allegations.

129.  On or about December 12, 2005, James Schnieders swore under penalty of perjury that, ""On **June 30, 2005**, RITCH withdrew $100,000 from the Conservatee's retirement account presumably by use of the POA created after RITCH and DONNA swore under penalty of perjury that the Conservatee was incapable of managing his own affairs. The intended use and whereabouts of these funds is presently unknown to Objector[30]." (emphasis in original) (Exhibit 35, Page 3(343)  lines 18 to 21)

---

[30] James Schnieders.

**COMPLAINT FOR DAMAGES**

    a. James Schnieders's and Lisa MacCarley's statement concerning the lack of knowledge of the whereabouts and use of the money was intended to imply that Mr. Ritch had illegally embezzled the money.

    b. The allegation is nearly word for word the same allegation used by Ronald Berman in his pleadings to the court. (Exhibit 31 Page 6(297)) The underlined sections are the changes.

130. The $100,000 at issue was transferred by Ricky Ritch, trustee of the Marshall L. Stern Trust to two Trust checking accounts[31] on June 30, 2005, for the maintenance of Marshall Stern. This transfer was documented in "EXHIBIT F" of James Schnieders's pleading. (Exhibit 32) This is the same document used by Ronald Berman when he was making allegations of wrong doing against Mr. Ritch discussed above in Perjury Count 2.

131. James Schnieders' knew the location of the "missing $100,000.00" because he was in possession of the money.

132. On July 11, 2005, James Schnieders removed $148,213 from the Trust's checking accounts. (Exhibits 32 and 33) This $148,213 and included the $100,000 defendant James Schnieders denied having knowledge of in his pleadings. Schnieders and MacCarley presented the evidence of their knowledge of the location of the funds in the same pleading in which they denied any knowledge of the whereabouts of the money.

133. Since the documentation to prove the statement was false was presented to the Court by James Schnieders and Lisa Mac-

---

[31] Bank of America Checking Accounts # 04294-02800 and # 04293-02797.

COMPLAINT FOR DAMAGES

1    Carley, Schnieders and Lisa MacCarley knew that the allegation

2    was not true when they made the statement.

3    134.  Even if James Schnieders and Lisa MacCarley did not know of

4    the truthfulness of their allegations, their unqualified

5    statements of that which they do not know to be true is

6    equivalent to a statement of that which they know to be false.

7    135.  Since Lisa MacCarley prepared the pleading for James

8    Schnieders, MacCarley has procured perjury from James Schnied-

9    ers in violation of California Penal Code § 127. Therefore,

10   Lisa MacCarley has also committed perjury.

11   136.  The false representations were material, in that they were

12   the basis for allegations of wrong doing against Mr. Ritch and

13   were likely a large factor in the Court's denial of Mr.

14   Ritch's petition to be the Conservator of Marshall L. Stern.

15   137.  Ricky Ritch's attorney has repeatedly informed the Court

16   and James Schnieders and Lisa MacCarley of the above perjury,

17   neither party has taken any steps to correct the situation and

18   the perjury has gone uncorrected by the Court (Judge Bobb) and

19   James Schnieders and Lisa MacCarley.

20   138.  Presiding Judge MacLaughlin was informed of the improper

21   actions of James Schnieders (who was acting as a representa-

22   tive of the court) and Judge Bobb and he has to date appar-

23   ently taken no action to prevent their improper actions.

24   Therefore, it appears to be a custom, practice, or policy

25   within the Los Angeles County Superior Court for the judges to

26   allow those attorneys and parties they have a preference for

27   to commit perjury with no adverse consequences.

28

**COMPLAINT FOR DAMAGES**

139.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Sixth Count – Jim Schnieders and Lisa MacCarley
### (18 U.S.C. §§ 1621 & 1622 & California Penal Code §§ 118 through 127)

140.  Plaintiff incorporates each of the above allegations.

141.  On or about December 12, 2005, James Schnieders swore under penalty of perjury that:

> On **July 13, 2005**, this Court entered an order requiring RITCH to file (1) an account of the Administration of the Trust Estate and (2) to account for any property of the Conservatee that came into his possession for the period from June 1, 2003 and up to and including June 30, 2005 in the form that satisfies the requirements of *Probate Code § 10900*, and that RITCH file this account on or before August 25, 2005.
>
> RITCH has not filed the required account." (emphasis in original) (Exhibit 35, Page 3(343) line 25 to page 4(344) line 2)

142.  On or about February 14, 2006, James Schnieders swore under penalty of perjury that:

> On July 13, 2005, in the Conservatorship proceeding, the Respondent[32] was ordered to file (1) an account of the Administration of the Trust Estate and (2) to account for any other property of the Conservatee that

---

[32] Ricky Ritch

**COMPLAINT FOR DAMAGES**

came into his possession for the period from June 1, 2003 and up to and including June 30, 2005, and that the Respondent file the account on or before August 25, 2005. Attached hereto marked **Exhibit "A"**[33] is a true and correct of the Court's Minute Order of July 13, 2005.

To date, Respondent, as Trustee or otherwise, has failed to ever file an accounting with the Court in the Conservatorship proceedings.
(Exhibit 37 page 3(405) line 10)

143. The actual order of the Court reads, "Ricky Ritch to file accounting from 6/1/03 to 6/1/05." (Exhibit 15)

144. The first false statements of James Schnieders and Lisa MacCarley that the Court ordered an accounting of the Trust is not true. The written order does not contain any reference to the trust.

145. The Court did not and does not have jurisdiction over the Trust under California Probate Law and therefore the Court could not order an accounting of the Trust as alleged by Schnieders and MacCarley. By California Probate Code §§ 17002 and 17005, an action on a trust must be brought in the county where the day to day activity of the trust is conducted, i.e. in the case of the Marshall L. Stern Living Trust, Louisiana or Alabama, where the Trustee Ricky Ritch lives. Therefore, the court had no jurisdiction to give such an order.

146. The second false statements in the above paragraphs is that the Court did not order, via the minute order, any date for the completion of the accounting. The assertion of Schnieders and MacCarley is not true.

---

[33] Exhibit 15.

**COMPLAINT FOR DAMAGES**

147.  The third false statement concerns the filing of the ac-
counting, Plaintiff Ricky Ritch's attorney attempted to file
an accounting in August as part of the Petition for the re-
moval of James Schnieders as temporary conservator and Ronald
Berman as appointed counsel. (See Exhibit 16)

148.  Plaintiff Ricky Ritch did file a corrected accounting on
November 18, 2005 which complied with Probate Code § 10900.
(Exhibit 29) An accounting was filed with the court, there-
fore, James Schnieders and Lisa MacCarley made false state-
ments to the court.

149.  In a pleading filed on or about December 12, 2005, James
Schnieders and Lisa MacCarley acknowledged that Mr. Ritch had
filed the accounting. "Objector objects to the Account filed
on November 18, 2005." (Exhibit 43 page 1(523) line 28.

150.  Even if James Schnieders and Lisa MacCarley did not know of
the truthfulness of their allegations, their unqualified
statements of that which they do not know to be true is
equivalent to a statement of that which they know to be false.

151.  Since Lisa MacCarley prepared the pleading for James
Schnieders, MacCarley has procured perjury from James Schnied-
ers in violation of California Penal Code § 127.

152.  The false representations were material, in that they were
the basis for allegations of wrong doing against Mr. Ritch and
were likely a large factor in the Court's denial of Mr.
Ritch's petition to be the Conservator of Marshall L. Stern
and resulted in a criminal contempt proceeding against Ricky
Ritch.

**COMPLAINT FOR DAMAGES**

153.  Ricky Ritch's attorney has repeatedly informed the Court and James Schnieders and Lisa MacCarley of the above perjury, neither party has taken any steps to correct the situation and the perjury has gone uncorrected by the Court (Judge Bobb) and James Schnieders and Lisa MacCarley.

154.  Presiding Judge MacLaughlin was informed of the improper actions of James Schnieders (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit perjury with no adverse consequences.

155.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Seventh Count – Christopher Johnson, Andrea Hodges, & Herman Stern against Ricky Ritch and Donna Ritch**
**(18 U.S.C. §§ 1621 & 1622 & California Penal Code §§ 118 through 127)**

156.  Plaintiffs incorporate each of the above allegations.

157.  On or about September 6, 2005, Attorney Christopher B. Johnson filed the pleading, "OBJECTIONS OF ANDRÉA HODGES TO PETITION FOR CONSERVATORSHIP FILED BY RICKY RITCH AND DONNA STERN RITCH." The pleading was signed by Christopher Johnson

**COMPLAINT FOR DAMAGES**

1    on or about September 6, 2005. Andrea Hodges and Herman Stern

2    both signed verification documents on the second and first of

3    September respectfully. The Verification asserted, under pen-

4    alty of perjury, that the signers had read the pleading and

5    that it was "true of my own knowledge." (Exhibit 36)

6  158.  In a letter to Ronald Berman dated July 1, 2005, which was

7    submitted to the Court by James Schnieders and Lisa MacCarley,

8    Herman Stern stated, under penalty of perjury, "I had not been

9    involved with his family until now. In fact I had not been in

10   communication with my niece and nephew, Andrea and her brother

11   Howard until this situation occurred." (Exhibit 7) By this

12   statement and other statements in the letter, it becomes clear

13   that Herman Stern did not have personal knowledge of the

14   statements he made in that letter or in the pleading submitted

15   by Christopher Johnson.

16 159.  Andrea Hodges was not present at the events that she makes

17   allegations concerning. She was not present when Marshall

18   Stern signed, in the presence of a licensed notary public the

19   General Power of Attorney and Amendment to the Trust making

20   Ricky Ritch the Trustee in April 2004.

21 160.  Of the 15 allegations in the Objections Pleading, neither

22   Herman Stern nor Andrea Hodges was competent under either

23   California or Federal Evidence Laws to testify to any of them.

24 161.  The allegation in the OBJECTIONS filed with the court are

25   discussed by paragraph below, stating the basis for their na-

26   ture as perjurous:

27 162.  OBJECTION Paragraph 1: Petitioner believes that neither An-

28   drea Hodges nor Herman Stern had ever met James Schnieders and

**COMPLAINT FOR DAMAGES**

1   that they have no personal knowledge of his capabilities

2   and/or performance as temporary conservator for the person and

3   estate of Marshall Stern, the conservatee. Therefore, due to

4   their lack of personal knowledge the defendants committed per-

5   jury by asserting under penalty of perjury that they had per-

6   sonal knowledge of the facts they alleged.

7   163.  OBJECTION Paragraph 2: Petitioner believes that neither An-

8   drea Hodges nor Herman Stern has presented any evidence of any

9   intent to conceal or that they had knowledge of any such in-

10   tent.[34] Herman Stern has no personal knowledge of this allega-

11   tion. Therefore, due to their lack of personal knowledge the

12   defendants committed perjury by asserting under penalty of

13   perjury that they had personal knowledge of the facts they al-

14   leged.

15   164.  OBJECTION Paragraph 3: Petitioner believes that neither An-

16   drea Hodges nor Herman Stern have any personal knowledge of

17   the facts that they allege. Based on information and knowledge

18   and therefore believed to be true, the objecting parties had

19   not seen Mr. Stern for over two-years and thirty-five years

20   respectfully at the time the conservatorship petition were

21   prepared and filed. Therefore, due to their lack of personal

22   knowledge the defendants committed perjury by asserting under

23   penalty of perjury that they had personal knowledge of the

24   facts they alleged.

25

26

27

28

---

[34] Under California Probate Code § 1460, notice to Andrea Hodges was not a requirement since she is not one of the required parties to be placed on notice of the petition. Additionally, Andrea Hodges has taken active steps to keep her actual address secret.

COMPLAINT FOR DAMAGES

165.  OBJECTION Paragraph 4: Petitioner believes that neither An-
drea Hodges nor Herman Stern have presented any evidence of
their capacity to make legal and medical determinations of
medical capacity or the legal capacity to determine the cor-
rectness of the legal actions of the court. The objectors lack
personal knowledge of the facts they allege to testify as a
lay person. Therefore, due to their lack of personal knowledge
the defendants committed perjury by asserting under penalty of
perjury that they had personal knowledge of the facts they al-
leged.

166.  OBJECTION Paragraph 5: Petitioner believes that neither An-
drea Hodges nor Herman Stern, nor the appointed PVP counsel
(Ronald Berman), had any personal knowledge for the purpose
for the transfers. All of the transfers referred to by the ob-
jectors were personally authorized by Marshall Stern and were
trust assets over which the court has no jurisdiction. There-
fore, due to their lack of personal knowledge the defendants
committed perjury by asserting under penalty of perjury that
they had personal knowledge of the facts they alleged.

167.  OBJECTION Paragraph 6: Petitioner believes that Andrea
Hodges committed perjury since she has personal knowledge that
no restraining order was ever filed against her. Herman Stern
has no personal knowledge of the events. Therefore, due to his
lack of personal knowledge Herman Stern committed perjury by
asserting under penalty of perjury that he had personal knowl-
edge of the facts they alleged.

168.  OBJECTION Paragraph 7: Petitioner believes that Andrea
Hodges has committed perjury. Adult Protective Services in-

1   formed Mr. Ritch that Andrea Hodges was the party who initi-
2   ated the investigation. Again Andrea Hodges, who denied being
3   the party to contact the Adult Protective Services (APS) in
4   her objections, has committed perjury. Herman Stern had no
5   personal knowledge of the facts alleged. Therefore, due to his
6   lack of personal knowledge Herman Stern committed perjury by
7   asserting under penalty of perjury that he had personal knowl-
8   edge of the facts they alleged.

9   169.  OBJECTION Paragraph 8: Petitioner believes that neither An-
10  drea Hodges nor Herman Stern had personal knowledge of the
11  state of Mr. Stern's finances and they have no basis for their
12  accusations. Therefore, due to their lack of personal knowl-
13  edge the defendants committed perjury by asserting under pen-
14  alty of perjury that they had personal knowledge of the facts
15  they alleged.

16  170.  OBJECTION Paragraph 9: Petitioner believes that neither An-
17  drea Hodges nor Herman Stern have presented any evidence of
18  their capacity to make legal and medical determinations of ca-
19  pacity and in that they lack personal knowledge of the facts
20  they would require to make an expert determination. Both Andre
21  Hodges and Herman Stern lack personal knowledge of the facts
22  that they allege for lay person testimony. Therefore, due to
23  their lack of personal knowledge the defendants committed per-
24  jury by asserting under penalty of perjury that they had per-
25  sonal knowledge of the facts they alleged.

26  171.  OBJECTION Paragraph 10: Petitioner believes that Andrea
27  Hodges and Herman Stern have committed perjury. Mr. Stern's
28  family and friends had free access to visit him prior to his

78                                    COMPLAINT FOR DAMAGES

1   isolation ordered by Commissioner Penny and the court ap-
2   pointed conservator who obtained restraining orders to limit
3   access to Marshall Stern. Marshall Stern was visited by his
4   sister Ilene Wold, who lives in Chicago, early in 2005. Mar-
5   shall Stern spent time with Ricky and Donna Ritch and his
6   cousin Roger Stern, an attorney in Los Angeles County and a
7   member of the PVP panel of attorneys, in 2005. These visits by
8   family members are in direct controversy with the allegations
9   of Andrea Hodges and Herman Stern. Therefore, Andrea Hodges
10  and Herman Stern have again committed perjury by making false
11  statements. Based on information and knowledge it is believed
12  and thereby alleged to be true, that neither Andrea Hodges nor
13  Herman Stern have personal knowledge of the accessibility to
14  Mr. Stern since they have not visited him for over two years
15  and thirty-five years respectfully. Neither Andrea Hodges nor
16  Herman Stern have personal knowledge of Mr. Stern's current
17  condition and they have failed to present any evidence of
18  their capacity to make medical determinations. Therefore, due
19  to their lack of personal knowledge the defendants committed
20  perjury by asserting under penalty of perjury that they had
21  personal knowledge of the facts they alleged.
22  172.  OBJECTION Paragraph 11: Petitioner believes that neither
23  Andrea Hodges nor Herman Stern have personal knowledge if
24  Ricky and Donna Ritch were at the last hearing since they were
25  not present at the September 8, 2005 hearing. Therefore, due
26  to their lack of personal knowledge the defendants committed
27  perjury by asserting under penalty of perjury that they had
28  personal knowledge of the facts they alleged.

**COMPLAINT FOR DAMAGES**

173.   OBJECTION Paragraph 12: Petitioner believes that Andrea
Hodges and Herman Stern have committed direct perjury. Neither
Andrea Hodges nor Herman Stern knows the thoughts and beliefs
of all of Mr. Stern's family. Therefore, due to their lack of
personal knowledge the defendants committed perjury by assert-
ing under penalty of perjury that they had personal knowledge
of the facts they alleged.

174.   OBJECTION Paragraph 13: Petitioner believes that Andrea
Hodges and Herman Stern have committed perjury. Neither Andrea
Hodges nor Herman Stern have shown any concern for the medical
condition of Mr. Stern in the past and had not on the date
they signed the OBJECTIONS pleading seen Mr. Stern to the best
of the Petitioners' knowledge. Andrea Hodges or Herman Stern's
only apparent concern to date is the estate of Mr. Stern and
their access to it.[35] As for Andrea Hodges or Herman Stern's
statement of their concern for the safety of Mr. Stern and his
estate under the care of Ricky and Donna Ritch, they have no
personal knowledge of the care Mr. Stern received or how his
estate was managed by Ricky and Donna Ritch. Therefore, due to
their lack of personal knowledge the defendants committed per-
jury by asserting under penalty of perjury that they had per-
sonal knowledge of the facts they alleged.

---

[35] The bias of the objectors is demonstrated in the OBJECTIONS pleading itself. Six of fifteen objections deal directly with Andrea Hodges' and Herman Stern's concern for the estate, its management and their access to the estate. (Objections 3, 5, 8, 9, 13, 14) Only two of the objections express any concern for Marshall Stern's physical well being. (Objections 10 (with a very generous reading to Andrea and Herman) and 13) By a ratio of three to one (really 6 to 1) the Objectors indicated concerns for the estate as opposed to Marshall Stern's physical well being.

COMPLAINT FOR DAMAGES

175. OBJECTION Paragraph 14: Petitioner believes that neither Andrea Hodges nor Herman Stern have presented any evidence of their capacity to make legal determinations and in that they lack personal knowledge of the facts they allege. Neither Andrea Hodges nor Herman Stern could have, on the date that their OBJECTION pleading was filed, point to any court order that was violated by Ricky and Donna Ritch. The only court order that Ricky and Donna Ritch had violated was the failure to appear at the September 8, 2005 hearing. That failure was due to Hurricane Katrina which hit New Orleans where they lived on September 2, 2005 and which prevented them from being at the hearing. The court (Not Judge Bobb for this hearing or a contempt citation probably would have been issued.) recognized during the September 8, 2005 hearing on that matter of Ricky and Donna Ritch not being present, "That if there were ever a justification to miss a hearing Hurricane Katrina was that justification," or words to that effect. Therefore, due to their lack of personal knowledge the defendants committed perjury by asserting under penalty of perjury that they had personal knowledge of the facts they alleged.

176. OBJECTION Paragraph 15: Petitioner believes that neither Andrea Hodges nor Herman Stern have personal knowledge of the care Mr. Stern is receiving and thus has no basis upon which to make any assertions concerning the care he is receiving. Therefore, due to their lack of personal knowledge the defendants committed perjury by asserting under penalty of perjury that they had personal knowledge of the facts they alleged.

**COMPLAINT FOR DAMAGES**

177.  Since Christopher Johnson prepared the pleading for Andrea Hodges and Herman Stern, Johnson has procured perjury from Andrea Hodges and Herman Stern in violation of California Penal Code § 127. Therefore, Christopher Johnson has also committed perjury.

178.  As Andrea Hodges' attorney, Christopher Johnson signed the pleading as the preparing attorney. As such he was asserting the truth of the statements and allegations in the pleading. Therefore, Christopher Johnson is in violation of California C.C.P. § 128.7 for signing and filing the pleading filled with allegations lacking any evidentiary support. (See Footnote # 29)

179.  Even if Christopher Johnson, Andrea Hodges and Herman Stern did not know of the truthfulness of their allegations, their unqualified statements of that which they do not know to be true is equivalent to a statement of that which they know to be false.

180.  The false representations were material, in that they were the basis for allegations of wrong doing against Mr. Ritch and were likely a large factor in the Court's denial of Mr. Ritch's petition to be the Conservator of Marshall L. Stern.

181.  Ricky Ritch's attorney has repeatedly informed the Court and Christopher Johnson, Andrea Hodges, & Herman Stern of the above perjury, neither party has taken any steps to correct the situation and the perjury has gone uncorrected by the Court (Judge Bobb) and Christopher Johnson, Andrea Hodges, & Herman Stern.

**COMPLAINT FOR DAMAGES**

182.   Presiding Judge MacLaughlin was informed of the improper actions of Judge Bobb and he has to date apparently taken no action to prevent her improper conduct. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit perjury with no adverse consequences.

183.   In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Eighth Count – Christopher Johnson against Ricky Ritch
### (18 U.S.C. §§ 1621 & 1622 & California Penal Code §§ 118 through 127)

184.   Plaintiffs incorporate each of the above allegations.

185.   On or about January 27, 2006, Attorney Christopher B. Johnson filed the pleading, "APPLICATION FOR PRELIMINARY INJUNCTION." The pleading was signed by Christopher Johnson on or about January 27, 2006 on behalf of Andrea Hodges and verified it himself on that date. The Verification asserted, under penalty of perjury, that the "matters were true". (Exhibit 36B)

186.   Christopher Johnson criminally made the following false statements and allegations:

187.   Exhibit 36B Page 2(394) lines 11-13 – "Subsequently, the court ordered an account of RICKY RITCH's action as trustee of the Trust and as Conservatee's agent under a power of attorney

**COMPLAINT FOR DAMAGES**

1    (over a period of several years prior to and during the con-
2    servatorship)."

    a. The court never ordered an accounting of the trust (See
       Exhibit 15) and had no authority to do so in that the
       court had no jurisdiction over the trust under Califor-
       nia Probate Law. Therefore, Christopher Johnson made a
       false statement in the pleading.

    b. As has been discussed above, Mr. Ritch was not ap-
       pointed as Marshall Stern's attorney in fact via a
       power of attorney until April 27, 2004. Christopher
       Johnson knew this because numerous briefs had been
       filed and served on Mr. Johnson informing him of the
       correct date of the power of attorney.

188.  Exhibit 36B Page 2(394) line 14 - "RITCH has not provided
such an account."

    a. An accounting of the estate assets was filed in Novem-
       ber of 2005. See Exhibit 29. Christopher Johnson was
       served with a copy of the Accounting and therefore made
       a knowingly false statement.

    b. Concerning the contempt charge Mr. Johnson refers to in
       Exhibit 36B Page 2(394) lines 14-16, as will be dis-
       cussed below, that conviction was part of the ongoing
       criminal conspiracy which is the heart of this matter
       and includes Christopher Johnson.

189.  Exhibit 36B Page 2(394) lines 11-13 - "The Conservator[36] has
been charged by this court[37] with the duty to marshall not

---

[36] James Schnieders, who was the "Temporary Conservator" at the time the pleading was filed.

**COMPLAINT FOR DAMAGES**

only the Conservatee's assets, but the assets of the Trust as well, and to take all steps necessary to return assets taken from the Conservatee or the Trust to the Conservatee."

    a. There is no such order and if there were it would be illegal since "the court" did not have jurisdiction over the Trust and could not make such an order.

190. As Andrea Hodges' attorney, Christopher Johnson signed the pleading as the preparing attorney. As such he was asserting the truth of the statements and allegations in the pleading. Therefore, Christopher Johnson is in violation of California C.C.P. § 128.7 for signing and filing the pleading filled with allegations lacking any evidentiary support. (See Footnote # 29).

191. Even if Christopher Johnson did not know of the truthful-ness of his allegations, his unqualified statements of that which they do not know to be true is equivalent to a statement of that which he know to be false.

192. The false representations were material, in that they were the basis for allegations of wrong doing against Mr. Ritch and were likely a large factor in the Court's grant of an injunc-tive order against Mr. Ritch.

193. Ricky Ritch's attorney has repeatedly informed the Court, i.e. Judge Bobb and Christopher Johnson of the above perjury, neither party has taken any steps to correct the situation and the perjury has gone uncorrected by the Court (Judge Bobb) and Christopher Johnson.

---

[37] The "court" is also a defendant in this matter and was involved in the criminal conspiracy.

**COMPLAINT FOR DAMAGES**

194. . Presiding Judge MacLaughlin was informed of the improper actions of Judge Bobb and he has to date apparently taken no action to prevent her improper conduct. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit perjury with no adverse consequences.

195. In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### SECOND CAUSE OF ACTION – ATTORNEY MISCONDUCT

#### First Count – Ronald Berman
#### (California B. & P. C. § 6068(c)&(g))[38]

196. Plaintiff incorporates each of the above allegations.

197. Once he was appointed as counsel for Marshall Stern in State Case # *BP091574*, Ronald Berman has initiated actions and proceedings to prevent the appointment of Ricky Ritch as the conservator of Marshall Stern. This included contacting Mar-

---

[38] Business & Professions Code § 6068 - It is the duty of an attorney to do all of the following:
   (c) To counsel or maintain those actions, proceedings, or defenses only as appear to him or their legal or just, except the defense of a person charged with a public offense.
   (g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest.

**COMPLAINT FOR DAMAGES**

shall Stern's brother Herman Stern, who by his own admission
had not had anything to do with Marshall or his family (for
over 35 years) to nominate a professional conservator, James
Schnieders, who Herman Stern had never met, to be the conser-
vator for Marshall Stern.

198.  Ronald Berman has yet to present any admissible evidence to
justify his opposition to the appointment of Ricky Ritch as
the conservator for Marshall Stern.

199.  Ronald Berman has made repeated false statements to the
Court, discussed above in the Cause of Action for Perjury, al-
leging wrong doing and illegal actions against the Plain-
tiffs[39].

200.  Ronald Berman initiated his actions against Mr. Ritch after
he had a conversation with Marshall Stern on June 30, 2005.
The communication consisted of Ronald Berman asking questions,
and Marshall Stern "responding" with arm squeezes to indicate
yes or no.

   a. At the time of this "conversation", Marshall Stern had
      already been "diagnosed" with dementia and was on a
      drug treatment for moderate to sever Alzheimer's. See
      the PROBATE INVESTIGATOR'S PETITION REPORT (Exhibit 45
      Page 2(554)). Therefore, the "conversation" would have
      no legal authority since Marshall Stern was not compe-
      tent to answer Berman's questions and by relying on
      this "conversation" as a basis for the actions being
      brought, made the actions frivolous and without merit.

[39]Jury Instruction No. 1.02 reads in part, "Statements of counsel are not evidence."

**COMPLAINT FOR DAMAGES**

b. At the time of Berman's "conversation" with Marshall
Stern, Robert Nigro, who completed the PROBATE INVESTI-
GATOR'S PETITION REPORT, (Exhibit 45 page 2(554)) had
already stated, "Mr. Stern was asked to squeeze the un-
dersigned's hand one time to communicate a 'yes' re-
sponse and to squeeze two times to indicate 'no' to
questions related to the proposed conservatorship. It
could not be positively determined that Mr. Stern was
able to appropriately respond. It appears that he was
unable to respond effectively to questions directed to
him regarding the proposed conservatorship and his
rights as conveyed to him."

c. Ronald Berman's alleged "conversation" with Marshall
Stern was inadmissible hearsay. The form of the ques-
tioning, arm squeezes that only Berman can testify to,
is prone to inaccuracy and in this case is self serving
in nature. Therefore, the actions initiated by Berman
and his co-conspirators arising from this "conversa-
tion" were frivolous and without merit.

201.  Ronald Berman's actions to prevent the appointment of Ricky
Ritch have been frivolous and not in the best interest of Mar-
shall Stern or Marshall Stern's estate.

202.  The only parties to benefit from the continuance and com-
mencement of the actions by Ronald Berman and his co-
conspirators who have been attempting to fleece Marshall
Stern's estate.

203.  Ricky Ritch's attorney has repeatedly informed the Court
and Ronald Berman of the above improper conduct, neither party

**COMPLAINT FOR DAMAGES**

1    has taken any steps to correct the situation and the improper

2    conduct has gone uncorrected by the Court (Judge Bobb) and

3    Ronald Berman.

4    204.  Presiding Judge MacLaughlin was informed of the improper

5    actions of Ronald Berman (who was acting as a representative

6    of the court) and Judge Bobb and he has to date apparently

7    taken no action to prevent their improper conduct. Therefore,

8    it appears to be a custom, practice, or policy within the Los

9    Angeles County Superior Court for the judges to allow those

10   attorneys and parties they have a preference for to commit at-

11   torney misconduct with no adverse consequences.

12   205.  In doing the things herein alleged, defendant acted will-

13   fully and with intent to cause injury to the plaintiff. The

14   defendant was therefore guilty of malice, oppression, and

15   fraud in conscious disregard of plaintiff's rights, thereby

16   warranting an assessment of punitive damages in an amount ap-

17   propriate to punish defendants and deter others from engaging

18   in similar misconduct.

19                    **Second Count - Ronald Berman**

20            **(California B. & P. C. § 6068(d)&(f))**[40]

21   206.  Plaintiff incorporates each of the above allegations.

22   207.  As discussed above, Ronald Berman has committed numerous

23   counts of perjury in his efforts to prevent the court not ap-

24   

---

25   [40] Business & Professions Code § 6068 - It is the duty of an attorney to do all of the following:

26   (d) To employ, for the purpose of maintaining the causes confided to him or their those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.

27   (f) To advance no fact prejudicial to the honor or reputation of a party or wit-

28   ness, unless required by the justice of the cause with which he or they is charged.

pointing Ricky Ritch as the conservator of Marshall Stern.
These false allegations included:

    a. The false allegation that Ricky Ritch had illegally ob-
       tained Marshall Stern's signature on a General Power of
       Attorney in April of 2005 after the petition for con-
       servatorship had been filed, when in reality the Power
       of Attorney was actually signed in 2004. (Exhibits 10
       and 31)

    b. Based on the false allegation concerning the general
       power of attorney discussed above, Ronald Berman other
       allegations of wrong doing based on the falsified 2005
       date he created. These false allegations were clearly
       an effort to damage the reputation of Ricky Ritch and
       to influence the Court against Mr. Ritch. (Exhibits 10
       and 31)

    c. The second charge of perjury (discussed in the Cause of
       Action for Perjury above) involved the so called "miss-
       ing $100,000". The missing $100,000 that Berman alleged
       was taken by Ricky Ritch was actually taken by the tem-
       porary conservator nominated by Ronald Berman, James
       Schnieders. Berman made false allegations, in two sepa-
       rate pleadings that alleged that Ricky Ritch had ille-
       gally appropriated the $100,000, when in reality it was
       James Schnieders, who had no authority to take Trust
       assets and had criminally taken the money. These false
       allegations were clearly an effort to damage the repu-
       tation of Ricky Ritch and to influence the Court
       against Mr. Ritch. (Exhibits 10 and 31)

**COMPLAINT FOR DAMAGES**

208.  In addition to the perjury committed by Berman, he pre-
sented inadmissible hearsay and double hearsay evidence as
well as statements of parties with no knowledge of the facts
they alleged in his efforts to discredit Ricky and Donna
Ritch. Based on this questionable evidence, Ronald Berman made
the allegations of wrong doing and criminal conduct against
Ricky and Donna Ritch which were clearly an effort to damage
their reputations and to influence the Court against Mr.
Ritch. (Exhibits 10, 12, and 31)

    a. In his first report to the Court, Berman stated, "All
four (Howard Stern[41], Andrea Hodges, Herman Stern and
Victoria Brewer) have told me essentially the same
story. RICKY and DONNA *systematically isolating* STERN
from other family members. RICKY is neither allowing
them to talk to or see STERN." (Exhibit 12 page 5(132)
lines 3-6) Neither Ronald Berman nor any of his co-
conspirators have ever clarified how Ricky Ritch was
isolating Marshall Stern from Howard, Herman, or An-
drea, when he was living in Alabama at the time. Ronald
Berman made the allegations of wrong doing against
Ricky and Donna Ritch in an effort to damage their
reputations and to influence the Court against Mr.
Ritch.

---

[41] In his October 19, 2005 pleading, Howard Stern admitted that he was unable to travel to Cali-
fornia and therefore could have no personal knowledge of these allegations. (See Exhibit 8)
Since the statements were consistent with the statements of Herman Stern, who has also admit-
ted that he did not have personal knowledge of these facts, this is evidence of a conspiracy of
these four parties to mislead the court or of defendant Berman's use of the parties in the conspir-
acy.

**COMPLAINT FOR DAMAGES**

b. In his first report to the Court, Berman stated, "All four (Howard Stern[42], Andrea Hodges, Herman Stern and Victoria Brewer) have told me essentially the same story. . . RICKY has caused documents to be drafted allowing them (RICKY and DONNA) to manage STERN's estate. Said documents may or may not have been signed by STERN. If STERN did sign the documents, he did so while he was incapable of understanding what he was signing." (Exhibit 12 page 5(132) lines 3-10) Ronald Berman never has clarified how Howard, Herman, or Andrea, had such detailed knowledge of Marshall Stern's physical and mental condition in April 2004, when they were not present at that time and they had not seen him in years. Based on this inadmissible evidence[43] Ronald Berman made the allegations of wrong doing against Ricky and Donna Ritch which in an effort to damage their reputations and to influence the Court against Mr. Ritch.

c. In his first report to the Court, Berman stated, "Several family members told me that STERN detested his son-in-law, RICKY, and didn't want him anywhere near him, going to the point of paying him to leave California, several years ago." (Exhibit 12 page 5(132) lines 3-10) Ronald Berman failed to name these "several family members." The accusations can be found in the statements of Herman Stern and Andrea Hodges. Since

---

[42] See previous footnote.
[43] The allegations are inadmissible since none of these "witnesses" were present or are qualified to make the statements they made concerning Marshall Stern's competency to sign the documents in April 2004.

COMPLAINT FOR DAMAGES

neither of them was in any position to make the allega-
tions, Berman's use of their statements but not naming
them is an obvious effort to sway the Court into be-
lieving that other family members believed the worst of
Ricky and Donna Ritch.

    d. Ronald Berman claimed that he was able to communicate
with Marshall Stern on June 30, 2005 via arm squeezes.
(See page 5(296) of Exhibit 31)

        i. Via this "questionable form of communication"
Ronald Berman was informed by Marshall Stern that
he did not want Ricky Ritch to be his conservator.

       ii. This statement flies in the face of all evidence
prior to the filing of the petition for conserva-
torship, including two writings naming Ricky Ritch
as Marshall Stern's proposed conservator.

      iii. Ronald Berman stated, "It was clear to me that, at
least at that moment in time, STERN was capable of
understanding what I asked. He wanted nothing to
do with RICKY RITCH." (Exhibit 31 page 6(297)
lines 5-7)

          1. As discussed in the First Count of Attorney
Misconduct above, the probate investigator had
already attempted this form of communication
and failed (Exhibit 45 page 2(554)).

          2. In addition Marshall Stern had already been
diagnosed with Dementia at this time.

    e. Since Judge Aviva Bobb ruled at the December 23, 2005
hearing that Marshall Stern was suffering from dementia

           **COMPLAINT FOR DAMAGES**

1                 as of April 2005, based on a medical report filed in

2                 July 2005 by Ronald Berman, Marshall Stern could not

3                 have been competent on June 30, 2005 when he had his

4                 "conversation" with Ronald Berman. Ronald Berman made

5                 the allegations that Marshall Stern had told him that

6                 he did not want Ricky Ritch to be his conservator in an

7                 effort to damage the reputation of Ricky Ritch and to

8                 influence the Court against Mr. Ritch.

9    209.  As can be seen from the above examples, Ronald Berman has

10       made false, misleading, and inadmissible statements to the

11       court in an effort to harm the reputation of Ricky and Donna

12       Ritch and to sway the Court against them[44].

13   210.  Ricky Ritch's attorney has repeatedly informed the Court

14       and Ronald Berman of the above improper conduct, neither party

15       has taken any steps to correct the situation and the improper

16       conduct has gone uncorrected by the Court (Judge Bobb) and

17       Ronald Berman.

18   211.  Presiding Judge MacLaughlin was informed of the improper

19       actions of Ronald Berman (who was acting as a representative

20       of the court) and Judge Bobb and he has to date apparently

21       taken no action to prevent their improper conduct. Therefore,

22

---

23   [44] While B.&P.C. § 6068 refers to improper actions to sway the court, in the current case this

24   wording is slightly inaccurate. In this case Judge Bobb, as a co-conspirator, did not require "swaying" to be in favor of Ronald Berman, Jim Schnieders, et. al. It is clear from her conduct

25   in this case that Judge Bobb and her subordinates in the court were already biased in their favor and was part of the on going conspiracy to harm Ricky and Donna Ritch and fleece the estate

26   and Trust of Marshall Stern. So whenever there is a reference concerning "swaying the court",

27   in reality the actions were to give some justification, no matter how weak, inadmissible, or perjurious so that Judge Bobb and the conspiring judges and commissioners could claim some basis

28   to deny Mr. Ritch's petition to be the conservator of Marshall Stern and gain access to the assets in the Marshall L. Stern Living Trust.

**COMPLAINT FOR DAMAGES**

it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit attorney misconduct with no adverse consequences.

212. In doing the things herein alleged, defendant acted willfully and with intent to cause injury to the plaintiff. The defendant was therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Third Count – Lisa MacCarley**
**(California B. & P. C. § 6068(c)&(g))**

213. Plaintiff incorporates each of the above allegations.

214. Lisa MacCarley and her client James Schnieders initiated an action against Ricky Ritch the trustee of the Marshall L. Stern Living Trust. (State Case # BP 096488) (Exhibit 48) The action was improperly filed in the Los Angeles Superior Court since under the California Probate Law; any action concerning a trust must be brought in the county where the Trustee conducts the day to day activity of the trust. (Probate Code §§ 17002 and 17005). Since Mr. Ritch is the trustee named in the action, the action must be brought where he lives, which at that time was Louisiana. Therefore, Lisa MacCarley intentionally filed the action in an unlawful venue.

215. Lisa MacCarley raised the argument that Mr. Ritch had waived his position as Trustee by maintaining the financial management company originally hired by Marshall Stern to man-

**COMPLAINT FOR DAMAGES**

1  age the finances of the Trust, i.e. defendant Retirement Advi-
2  sors of America. There is no basis for this argument in fact
3  or law. Lisa MacCarley raised this argument solely so that the
4  conspiring judges in the Los Angeles Superior Court could il-
5  legally claim jurisdiction over the Trust.

6  216.  The sole purpose for this new action was an attempt to gain
7  control over the Trust for their own benefit, which has been
8  the objective of Judge Bobb, Lisa MacCarley, James Schnieders,
9  and Ronald Berman since their initial involvement in the con-
10 servatorship proceeding for Marshall Stern.

11      a. Taking control of the Trust was the objective of the
12         conspiracy, since the Estate of Marshall Stern has no
13         assets in it. All of the assets had been transferred
14         into the Trust in 1992. Therefore, as conservator of
15         Marshall Stern, James Schnieders had no access to or
16         control over the assets the conspiracy hoped to have
17         access to through the conservatorship. Thus the con-
18         spiracy had to gain control over the Trust.

19 217.  The filing of the action by Lisa MacCarley is frivolous.
20 Either the action was filed in the wrong venue under Califor-
21 nia Law if Ricky Ritch is trustee as named in the case, or Mr.
22 Ritch is not the trustee as argued in the initial ex parte pe-
23 tition and therefore Lisa MacCarley filed a frivolous case
24 against Mr. Ritch.  Lisa MacCarley's filing of this new ac-
25 tion, has was frivolous and not in the best interest of Mar-
26 shall Stern or Marshall Stern's estate. The only parties to
27 benefit have been Lisa MacCarley and her associates who have
28 been attempting to milk the estate for all they can get.

**COMPLAINT FOR DAMAGES**

218.  Ricky Ritch's attorney has repeatedly informed the Court and Lisa MacCarley of the above improper conduct, neither party has taken any steps to correct the situation and the improper conduct has gone uncorrected by the Court (Judge Bobb) and Lisa MacCarley.

219.  Presiding Judge MacLaughlin was informed of the improper actions of James Schnieders (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit attorney misconduct with no adverse consequences.

220.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Fourth Count - Lisa MacCarley
### (California B. & P. C. § 6068(d)&(f))

221.  Plaintiff incorporates each of the above allegations.

222.  In her "EX PARTE PLEADING BP 096 488" After arguing that Mr. Ritch was not the Trustee of the Trust, Lisa MacCarley then makes allegations of wrong doing against Mr. Ritch as the Trustee. (Exhibit 48)

**COMPLAINT FOR DAMAGES**

a. Exhibit 48 Page 4(570) line 20-22 – "On April 22, 2004, MR. STERN purportedly executed the LIVING TRUST. Respondent RICKY ALLEN RITCH is named as initial trustee of the LIVING TRUST." The key words are "purportedly executed". MacCarley was attempting to raise a question of the legitimacy of the naming of Ricky Ritch as trustee. The trust document was signed by Marshall Stern on April 22, 2004 before a licensed Notary Public in compliance with State Law. Therefore, MacCarley's implied allegation is completely unfounded, lacks any evidentiary support, and is prejudicial to Mr. Ritch and was made solely to adversely influence the Court, i.e. Judge Bobb.

b. Exhibit 48 Page 4(570) line 23 – 27 – **"Since April, 2004, RICKY RITCH has utterly failed to manage the Trust responsibly.** For example, RICKY RITCH has misappropriated at least $405,000 of Trust assets in order to buy himself and Donna a residence in Louisiana." (Emphasis in original) Mr. Ritch has testified and presented corroborating documentation and evidence that Marshall Stern directed that Trust assets be used to purchase him a home in Louisiana.

   i. Under California Probate Law, a trustor can direct the disbursement of assets of the trust as they wish and thereby Mr. Ritch was properly performing his duty as Trustee by following the wishes of Marshall Stern. Similarly defendant Andrea Hodges

98

**COMPLAINT FOR DAMAGES**

1  received a residence from the Trust at the direc-
2  tion of Marshall Stern.

3     ii.  Neither Lisa MacCarley, James Schnieders, nor any
4  of the co-conspirators have presented any evidence
5  that contradicts Mr. Ritch's testimony. The only
6  evidence presented by the defendants is the alle-
7  gations of wrong doing made by the opposing coun-
8  sels, but statements of counsels IS NOT EVIDENCE.
9  (See Footnote # 39)

10    iii.  No admissible evidence has ever been presented of
11  any mismanagement or wrong doing by Mr. Ritch. The
12  allegation is completely fabricated in an effort
13  to harm Mr. Ritch's reputation and to influence
14  the court, i.e. Judge Bobb. (Schnieders and Mac-
15  Carley have committed perjury again, since they
16  allege facts, under penalty of perjury, of which
17  they have no knowledge, specifically, Mr. Ritch's
18  conduct during 2004.)

19  c. Exhibit 48 Page 5(571) lines 3-5 - "Petitioner
20  (Schnieders) believes Ricky Ritch has made other trans-
21  actions against the LIVING TRUST assets for his own
22  benefit, but has not been able to verify those transac-
23  tion to date." This is clearly a prejudicial allegation
24  against Mr. Ritch, which is by MacCarley's own admis-
25  sion has no evidentiary support. (A violation of C.C.P.
26  § 128.7.) The allegation was made for the improper rea-
27  son to sway the Court that Mr. Ritch had performed
28  wrongful acts in the past.

**COMPLAINT FOR DAMAGES**

d. Exhibit 48 Page 5(571) line 28 to page 6(572) line 2 –
"In that action (BP 091 574 the conservatorship pro-
ceedings), RICKY RITCH was ordered in July, 2005 to
file an accounting of his handling of the Trust assets;
but to date, he has failed to do so." This is a per-
jurous statement by Lisa MacCarley.

　　i. There was no written order in July requiring an
accounting of the Trust. The Court did not have
jurisdiction over the Trust and thus had no legal
authority to order an accounting of the Trust.

　ii. Mr. Ritch did attempt to comply with the written
order to file an accounting, twice, as was dis-
cussed above.

e. Exhibit 48 Page 8(574) line 2-5 – "He (Mr. Ritch) has
NOT administered the Trust according to the Trust pro-
visions. The Trust provides that the assets of the
Trust are to be used for Mr. STERN's care while he is
living; and then distributed among his three children
after his death. RICKY RITCH has not applied Trust as-
sets for Mr. STERN's care; but rather has diverted
funds to himself and his wife (who is one of the three
beneficiaries), prior to Mr. STERN's death." MacCarley
presented no facts in support of this allegation. If
MacCarley was referring to the $405,000 used to pur-
chase the property in Louisiana, that expenditure was
initiated and authorized by Marshall Stern prior to the
commencement of the conservatorship proceedings. Mar-
shall Stern is allowed, as Trustor of the Trust, to di-

**COMPLAINT FOR DAMAGES**

1      rect disbursement of the Trust assets as he wished.

2      Therefore, the purchase was consistent with the trust

3      provisions in that Mr. Ritch was following the direc-

4      tions of the Trustor, Marshall Stern. Mr. Ritch has

5      provided testimony and evidence that he had managed the

6      Trust for Marshall Stern's benefit and this testimony

7      has never been contradicted by any evidence by those

8      parties opposing him.

9    f. Exhibit 48 Page 8(574) Lines 10-12 – "RICKY RITCH has

10     NOT administered the Trust solely in the interest of

11     the beneficiaries; but has instead has diverted funds

12     for his own benefit." MacCarley presented no facts in

13     support of this allegation. This is clearly a prejudi-

14     cial allegation against Mr. Ritch, which by MacCarley's

15     own admission has no evidentiary support. The allega-

16     tion was made for the improper reason to sway the Court

17     that Mr. Ritch had performed wrongful acts in the past.

18   g. Exhibit 48 Page 8(574) lines 16-17 – "RICKY RITCH HAS

19     DEALT WITH Trust assets for his own profit." This is

20     clearly a prejudicial allegation against Mr. Ritch,

21     which has no evidentiary support. The allegation was

22     made for the improper reason to sway the Court that Mr.

23     Ritch had performed wrongful acts in the past.

24   h. Exhibit 48 Page 8(574) lines 18-19 – "RICKY RITCH has

25     not acted to preserve trust assets; but instead has de-

26     pleted trust assets at whim." This is clearly a preju-

27     dicial allegation against Mr. Ritch, which has no evi-

28     dentiary support. The allegation was made for the im-

COMPLAINT FOR DAMAGES

1  proper reason to sway the Court that Mr. Ritch had per-

2  formed wrongful acts in the past.

3  i. Exhibit 48 Page 8(574) lines 13-15 "RICKY RITCH has NOT

4  dealt impartially with the three beneficiaries; but in-

5  stead has favored his wife over the other two benefici-

6  aries." This is clearly a prejudicial allegation

7  against Mr. Ritch, which has no evidentiary support.

8  The allegation was made for the improper reason to sway

9  the Court that Mr. Ritch had performed wrongful acts in

10  the past.

11  j. Exhibit 48 Page 8(574) lines 21-25 - "RICKY RITCH has

12  NOT acted to make the Trust assets productive [such as,

13  for example, placing cash in interest-bearing accounts;

14  or renting out the residence while it stands empty];

15  but again has depleted the trust assets for his own

16  benefit."  This is clearly a prejudicial allegation

17  against Mr. Ritch, which has no evidentiary support.

18  i. As for the "cash in interest-bearing accounts" the

19  trust assets are managed by a professional money

20  management company, which according to MacCarley

21  means that Mr. Ritch has waived his position as

22  Trustee of the Trust.

23  ii. As for the house standing empty, Mr. Ritch has

24  been trying to return Marshall Stern to his home,

25  from which he was criminally removed by Schnied-

26  ers.

27

28

**COMPLAINT FOR DAMAGES**

iii. The allegation was made for the improper reason to sway the Court that Mr. Ritch had performed wrongful acts in the past.

k. Exhibit 48 Page 8(574) lines 26-28 – "Furthermore, RICKY RITCH has failed to make full disclosure to the beneficiaries of his dealings with the assets of the Trust, in direct violation of an order of the court." This is clearly a prejudicial allegation against Mr. Ritch, which in addition to not having evidentiary support is perjurous as was discussed above. There was no such written court order and the Court did not have the authority to order such a disclosure, such an action had to be initiated in Louisiana by California Probate Law. The allegations were made for the improper reason to sway the Court that Mr. Ritch had performed wrongful acts in the past.

223.  The sole purpose for this new action was an attempt to criminally gain control over the Trust for their own benefit, which has been the objective of the Court, Lisa MacCarley, James Schnieders, Ronald Berman and the rest of the conspiracy since their initial involvement in the conservatorship proceeding for Marshall Stern.

224.  Ricky Ritch's attorney has repeatedly informed the Court and Lisa MacCarley of the above improper conduct, neither party has taken any steps to correct the situation and the improper conduct has gone uncorrected by the Court (Judge Bobb) and Lisa MacCarley.

**COMPLAINT FOR DAMAGES**

225.  Presiding Judge MacLaughlin was informed of the improper actions of James Schnieders (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit attorney misconduct with no adverse consequences.

226.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Fifth Count – Lisa MacCarley
### (California B. & P. C. § 6068(d)&(f))

227.  Plaintiff incorporates each of the above allegations.

228.  In her pleading, "OBJECTIONS TO PREEMPTORY CHALLENGE OF RICKY RITCH AND REQUEST FOR CONSIDERATION OF COURT'S MINUTE ORDER OF FEBRUARY 9, 2006 RECUSING THE HONORABLE AVIVA BOBB" Lisa MacCarley made the following knowingly false allegations of wrongdoing against Mr. Ritch: (Exhibit 37)

    a. On Page 2 lines 21-24 - "On April 22, 2004, MR. STERN purportedly executed the MARSHALL L. STERN LIVING TRUST Under Declaration of Trust of Marshall L. Stern Dated April 22, 2004 (hereinafter referred to as the **"LIVING TRUST"**). Respondent is named as initial Trustee of the

**COMPLAINT FOR DAMAGES**

LIVING TRUST." As discussed above, the Trust document was notarized by a licensed Notary Public. (Exhibit 1) The "purportedly" allegation is again a false allegation of wrong doing to harm Mr. Ritch. The repetition of a lie is still a lie. The allegation was made for the improper reason to sway the Court that Mr. Ritch had performed wrongful acts in the past.

b. On Page 2 lines 25-26 - "Since April, 2004, Respondent has utterly failed to manage the LIVING TRUST responsibly." As discussed above, there has been no evidence presented that Mr. Ritch abused Trust assets in 2004 or at any time. Again a repeated lie remains a lie. The allegation was made for the improper reason to sway the Court that Mr. Ritch had performed wrongful acts in the past.

c. On Page 2 lines 26-28 - "For example, Respondent has misappropriated at least $435,000 of Trust assets in order to buy himself and Donna Stern Ritch a residence in Louisiana." The only change from the previous false statements concerning the $405,000 used, at Marshall Stern's direction to purchase the property is now the amount has changed to $435,000. Again a repeated lie remains a lie. The allegation was made for the improper reason to sway the Court that Mr. Ritch had performed wrongful acts in the past.

d. On Page 3 lines 2-4 - "Petitioner believes Respondent has made other transactions against the LIVING TRUST assets for his own benefit, but has not been able to

**COMPLAINT FOR DAMAGES**

1    verify those transaction to date." Again allegations of

2    wrong doing are not evidence of wrong doing, unless of

3    course there is some "special arraignment" between the

4    court and the party making the fraudulent and prejudi-

5    cial allegations. The lack of any knowledge of any

6    facts supporting the allegation makes them inadmissible

7    in any court of law except before Judge Bobb and her

8    cohorts. The allegation was made for the improper rea-

9    son to sway the Court that Mr. Ritch had performed

10   wrongful acts in the past.

11   e. On Page 3 lines 20-23 – "On July 13, 2005, in the Con-

12      servatorship proceeding, the Respondent was ordered to

13      file (1) an account of the Administration of the Trust

14      Estate and (2) to account for any other property of the

15      Conservatee that came into his possession for the pe-

16      riod from June 1, 2003 and up to and including June 30,

17      2005." As has been discussed above, the order never re-

18      ferred to the Trust and the Court had no authority to

19      order an accounting of the Trust. Lisa MacCarley simply

20      lied, again, about the court order.

21   f. On Page 3 lines 27-28 – "To date, Respondent, as Trus-

22      tee or otherwise, has failed to ever file an accounting

23      with the Court in the Conservatorship proceedings." As

24      previously discussed this is another lie by Lisa Mac-

25      Carley. The Respondent has attempted to comply on two

26      separate occasions with the court's order. The Account-

27      ings are in the court's record. Lisa MacCarley knew

28      that this allegation was a false statement since she

**COMPLAINT FOR DAMAGES**

1                 stated in her pleading filed with the court on or about

2                 December 12, 2005, "Objector objects to the Account

3                 filed herein on November 18, 2005." (Exhibit 43 page

4                 1.(523) line 28)

5 229. The above allegations are perjurous since Lisa MacCarley

6     signed the pleading subject to C.C.P. § 128.7, which means

7     that she was asserting the truth of the statements and allega-

8     tions made the pleading. Therefore, the allegations and state-

9     ments were made under oath.

10 230. The allegations prejudicial to conduct of the proceedings

11     and violated B.&P.C. § 6068(d)&(f).

12 231. Ricky Ritch's attorney has repeatedly informed the Court

13     and Lisa MacCarley of the above improper conduct, neither

14     party has taken any steps to correct the situation and the im-

15     proper conduct has gone uncorrected by the Court (Judge Bobb)

16     and Lisa MacCarley.

17 232. Presiding Judge MacLaughlin was informed of the improper

18     actions of James Schnieders (who was acting as a representa-

19     tive of the court) and Judge Bobb and he has to date appar-

20     ently taken no action to prevent their improper actions.

21     Therefore, it appears to be a custom, practice, or policy

22     within the Los Angeles County Superior Court for the judges to

23     allow those attorneys and parties they have a preference for

24     to commit attorney misconduct with no adverse consequences.

25 233. In doing the things herein alleged, defendants acted will-

26     fully and with intent to cause injury to the plaintiff. The

27     defendants were therefore guilty of malice, oppression, and

28     fraud in conscious disregard of plaintiff's rights, thereby

**COMPLAINT FOR DAMAGES**

1  warranting an assessment of punitive damages in an amount ap-

2  propriate to punish defendants and deter others from engaging

3  in similar misconduct.

### Sixth Count – David Coleman
### (California B. & P. C. § 6068(d)&(f))

6  234.  Plaintiff incorporates each of the above allegations.

7  235.  During the December 23, 2005 hearing, after he was ap-

8  pointed as "Special Counsel" by Judge Aviva Bobb to prosecute

9  Ricky Ritch, David Coleman made allegations that Ricky Ritch

10  was convicted of a Third Degree Felony in Florida, specifi-

11  cally "Impersonating a Police Officer."

12  236.  When Mr. Ritch denied that he had been convicted of any

13  felony in Florida, David Coleman produced a document from

14  "Westlaw Court Express" which stated that Mr. Ritch had plead

15  "NOLO-CONTENDERE" to the charged felony. (Exhibit 38)

16  237.  The document presented by David Coleman states, "The pre-

17  ceding record is for information purposes only and is not the

18  official record. This information is not warranted for accu-

19  racy or completeness. For copies of the official record (of

20  conviction or incarceration), contact the agency or court."

21  (Exhibit 38)

22  238.  Mr. Ritch denied that the "Conviction Report" provided by

23  David Coleman was accurate. Judge Bobb allowed the document in

24  over the objections of Mr. Ritch's attorney, who pointed out

25  the preceding statement raised questions of the accuracy of

26  the document as well as its prejudicial effect.

27  239.  At the January 12, 2006 sentencing hearing, Mr. Ritch pro-

28  vided the original acquittal document showing that all felony

**COMPLAINT FOR DAMAGES**

1  charges had been dismissed (Exhibit 39) and that the Attorney

2  General for Florida had directed, via a letter (Exhibit 40),

3  that Ricky Ritch had not committed any crime and that the

4  charges should be dismissed.

5  240.  After Mr. Ritch pointed out that he had not been convicted

6  of the felony alleged by Coleman, Coleman then stated words to

7  the effect of, "I did some more research and it was actually a

8  misdemeanor." To which Mr., Ritch stated that, "No, he had

9  been completely acquitted and all charges had been dismissed."

10  241.  The actions of Davis Coleman, acting as a "Special Prosecu-

11  tor", of presenting inadmissible allegations of a felony con-

12  viction that were false is an obvious attempt to sway the

13  court and to harm the reputation of Mr. Ritch.

14  242.  Ricky Ritch's attorney has repeatedly informed the Court

15  and David Coleman of the above improper conduct, neither party

16  has taken any steps to correct the situation and the improper

17  conduct has gone uncorrected by the Court (Judge Bobb) and

18  David Coleman.

19  243.  Presiding Judge MacLaughlin was informed of the improper

20  actions of David Coleman (who was acting as a representative

21  of the court) and Judge Bobb and he has to date apparently

22  taken no action to prevent their improper actions. Therefore,

23  it appears to be a custom, practice, or policy within the Los

24  Angeles County Superior Court for the judges to allow those

25  attorneys and parties they have a preference for to commit at-

26  torney misconduct with no adverse consequences.

27  244.  In doing the things herein alleged, defendants acted will-

28  fully and with intent to cause injury to the plaintiff. The

**COMPLAINT FOR DAMAGES**

defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Seventh Count — David Coleman
### (California B. & P. C. § 6068(d)&(f))

245. Plaintiff incorporates each of the above allegations.

246. In his pleading, OBJECTION TO PETITION TO REMOVE TEMPORARY CONSERVATOR AND TO REMOVE APPOINTED COUNSEL, signed by David Coleman on October 19, 2005, the following false or misleading allegations were made by defendant David Coleman. (Exhibit 8)

247. David Coleman alleged financial mismanagement against Ricky Ritch: (Exhibit 8)

   a. False Allegation on Exhibit 8 Page 2(37) lines 23-25 – "Ritch's own evidence gainsays this argument. Instead his evidence shows that it was Ritch, himself, who had bounced the checks before Schnieders was appointed. In short, it was *Ritch who breached hi duty to protect the conservatee*." (Emphasis in original)

   b. False Allegation on Exhibit 8 Page 3(38) lines 16-18 – "If Ritch had been a responsible fiduciary, then there would have been adequate funds to pay the checks and there would not have been a need for overdraft protection."

   c. False Allegation on Exhibit 8 Page 6(41) lines 16-17 – "In addition, Ritch's own evidence shows that he failed

**COMPLAINT FOR DAMAGES**

1   to maintain a balance sufficient to cover conservatee's
2   expenses."

3   d. The Truth – In fact it is evidence presented by defen-
4   dants Berman, Schnieders, MacCarley and Coleman, spe-
5   cifically Exhibit G of Coleman's pleading, which was
6   served on the court by those defendants, that shows
7   that Mr. Ritch did take action in a proper fiduciary
8   manner by transferring $100,000.00 into the two Trust
9   checking accounts. Therefore there was more than suffi-
10   cient money in the accounts to prevent the bounced
11   checks except for the hold put on the accounts by Bank
12   of America when it was informed of the conservatorship
13   proceedings. Defendant James Schnieders subsequently
14   illegally removed those funds via fraudulent statements
15   to the bank. Since Mr. Coleman had Exhibit 32 (His Ex-
16   hibit G) in his possession at the time he prepared the
17   pleading he knowingly made a false allegation of fidu-
18   ciary misconduct against Mr. Ritch.

19   248. David Coleman falsely alleged that Ricky Ritch claimed
20   credit for setting up an overdraft protection for checking ac-
21   counts in Marshall Stern's Trust:

22   a. False Allegation on Exhibit 8 Page 1(36) line 21-23 –
23   ""He (Ricky Ritch) claims that the estate would have
24   bounced two estimated tax payments but for Ritch's
25   creation of overdraft protection for the account."

26   b. False Allegation Exhibit 8 Page 3(38) lines 7-8 " Yet,
27   Ritch tries to take credit for saving the estate from
28   loss by creating overdraft protection"

**COMPLAINT FOR DAMAGES**

c. False Allegation on Exhibit 8 Page 3(38) lines 19-21 – "In short, Ritch's entire argument pertaining to the late payment of taxes and overdraft protection is an attempt to shift blame to Schnieders and then take credit for saving the day."

d. The Truth – David Coleman cannot show any evidence of Ricky Ritch claiming to have established the overdraft protection on the Trust's checking accounts. Mr. Ritch consistently stated the Marshall Stern had set-up the overdraft protection on the accounts and that Mr. Ritch had simply kept them in place. The "alleged statements of Mr. Ritch" referred to by defendant Coleman were the perjurous creations of Mr. Coleman in an effort to mis-lead the court.[45]

249. David Coleman attempted to mislead the court by stating that his client could not see his father, but then implying that Mr. Ritch had mistreated the conservatee due to the find-ings of the co-conspirator Judges whose rulings were in part based on the false allegations of Howard Stern.

a. False Allegation Exhibit 8 Page 4(39) lines 6-15 –

*"Failure to Care for Conservatee's Person.*

Objector (defendant Howard Stern) resides in Ore-gon and is incapable of traveling to California to monitor personally his father's care. As such, he can-

---

[45] Ricky Ritch's PETITION FOR THE REMOVAL OF THE TEMPORARY CONSERVATOR AND APPOINTED COUNSEL page 2 line 28 to page 3 line 1 – "[E]xcept for the preparedness of the Conservatee and Ricky Ritch, his son-in-law, who had set up a credit card to protect against overdrafts on those accounts."

COMPLAINT FOR DAMAGES

not readily gainsay Ritch's allegations in regards to the physical treatment of conservatee.

However, objector can express his desire that this Court not lose sight of the reasons for this appointment of the temporary conservator[46]. Simply, there are serious questions about Ritch's treatment of his father-in-law and of his father-in-law's finances. These questions made the appointment of a private professional conservator[47] absolutely necessary to prevent even greater harm."

b. The Truth – David Coleman first states, truthfully for once, that his client cannot make any statements concerning Mr. Ritch's treatment of Marshall Stern due to a lack of personal knowledge. Defendant Coleman then turns around and points to the Court's appointment of a professional conservator instead of Mr. Ritch as evidence of Mr. Ritch's wrong doing. In so doing defendant Coleman is misleading the court, since it was statements of Howard Stern that were involved in the appointment of James Schnieders as the temporary conservator. The statements at issue include:

i. In his first report to the Court, defendant Berman stated, "All four (Howard Stern, Andrea Hodges, Herman Stern and Victoria Brewer) have told me essentially the same story. RICKY and DONNA *systematically isolating* STERN from other family members. RICKY is neither allowing them to talk to or see STERN." (Exhibit 12 page 5(132) lines 3-6)(emphasis added)

---

[46] Defendant James Schnieders.

[47] Defendant James Schnieders.

**COMPLAINT FOR DAMAGES**

1         ii.  In his first report to the Court, defendant Berman

2              stated, "All four (<u>Howard Stern</u>, Andrea Hodges,

3              Herman Stern and Victoria Brewer) have told me es-

4              sentially the same story. . . RICKY has caused

5              documents to be drafted allowing them (RICKY and

6              DONNA) to manage STERN's estate. Said documents

7              may or may not have been signed by STERN. If STERN

8              did sign the documents, he did so while he was in-

9              capable of understanding what he was signing."

10              (Exhibit 12 page 5(132) lines 3-10)(emphasis

11              added)

12      c. The statements of Howard Stern were at least partially

13         responsible for the appointment of James Schnieders as

14         the temporary conservator. In this pleading, defendant

15         Coleman is admitted the previous statements of Howard

16         Stern, relied on by the court, were NOT TRUE since the

17         allegations were made without any basis of fact or per-

18         sonal knowledge necessary to make them true statements.

19         Therefore the statements are false under California

20         perjury laws.

21      d. It is also significant that the section of the pleading

22         is entitled, "*Failure to Care for Conservatee's Per-*

23         *son.*" Yet at no point in the pleading does defendant

24         Coleman state any allegations of any improper conduct

25         by Ricky Ritch. It is an obvious effort to mislead the

26         court by stating an allegation in the title and then

27

28

**COMPLAINT FOR DAMAGES**

failing to support the allegation with any facts or evidence.[48]

250.  Defendant Coleman has alleged that Mr. Ritch failed to timely file the taxes for the Trust:

    a. False Allegation Exhibit 8 on page 2(37) lines 27-28 – "Ritch's own evidence shows that he paid estimated taxes on or about June 30, 2005, *fifteen days late.*" (emphasis in original)

    b. False Allegation Exhibit 8 on page 5(40) line 13 – "Ritch has shown himself unable to pay taxes in a timely manner."

    c. False Allegation Exhibit 8 on page 5(40) line 15 – "Ritch's own actions have needlessly exposed the estate to potential tax penalties."

    d. The Truth – Mr. Ritch timely paid the state and federal taxes. The accounting firm that handled Mr. Stern's accounts for taxes prepared the accounting and bill for Mr. Ritch who promptly wrote them the check for mailing. Defendant Coleman was attempting to mislead the court by alleging improper or illegal actions against Mr. Ritch without evidentiary support.

251.  The actions of David Coleman of presenting false and misleading allegations against Mr. Ritch are an obvious attempt to sway the court, i.e. Judge Bobb and to harm the reputation of Mr. Ritch.

---

[48] A possible example of "Yellow Journalism", i.e. false misleading title and no facts to support it.

**COMPLAINT FOR DAMAGES**

252.  Ricky Ritch's attorney has repeatedly informed the Court and David Coleman of the above improper conduct, neither party has taken any steps to correct the situation and the improper conduct has gone uncorrected by the Court (Judge Bobb) and David Coleman.

253.  Presiding Judge MacLaughlin was informed of the improper actions of David Coleman (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit attorney misconduct with no adverse consequences.

254.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Eighth Count – David Coleman
### (California B. & P. C. § 6068(c)&(g))

255.  Plaintiff incorporates each of the above allegations.

256.  David Coleman and his client Howard Stern made an objection to the appointment of Ricky Ritch as the conservator of Marshall Stern. (Exhibit 51) This was a continuation of the proceedings against the Plaintiffs.

**COMPLAINT FOR DAMAGES**

257.  The filing of the objection by David Coleman is frivolous. All of the allegations discussed in detail in the next Count were either false and/or completely unsupported by any evidence.

258.  Ricky Ritch's attorney has repeatedly informed the Court and David Coleman of the above improper conduct, neither party has taken any steps to correct the situation and the improper conduct has gone uncorrected by the Court (Judge Bobb) and David Coleman.

259.  Presiding Judge MacLaughlin was informed of the improper actions of Howard Stern (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit attorney misconduct with no adverse consequences.

260.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Ninth Count - David Coleman
### (California B. & P. C. § 6068(d)&(f))

261.  Plaintiff incorporates each of the above allegations.

**COMPLAINT FOR DAMAGES**

262.   In his "OBJECTIONS TO APPOINTMENT OF RICKY RITCH AS CONSER-VATOR" (Exhibit 51), David Coleman made false statements of law to the court in an effort to mislead the court. Specifically:

    a. Exhibit 51 Page 1(689) line 22 – "Objector has standing to nominate a conservator pursuant to Probate Code § 1810." This is a false statement of law. Probate Code § 1810 states that a proposed conservatee can nominate a proposed conservatee, either before or after the petition is filed, and that the court shall appoint the conservator so nominated[49]. Probate Code § 1810 does not say anything about objectors having standing.

    b. Exhibit 51 Page 1(689) Line 26 – "The selection of the conservator is solely in the discretion of the Court. (Probate Code § 1812.)" This is a "half-truth" which is a false statement of law. Probate Code § 1812 reads, "a. Subject to Sections 1810 and 1813, the selection of a conservator of the person or estate, or both, is solely in the discretion of the court." Since Probate Code § 1810 has precedence over § 1812, M. Stern's nomination of Ricky Ritch has precedence over the discretion of the court in this matter.

    c. Subsection "b" of § 1812 sets an order of preferences for the court to use in determining who to appoint as the conservatee. Contrary to the assertion of Coleman,

---

[49] This is a code section violated by Commissioner Penny and Judge Bobb, since Marshall Stern in two writings nominated Mr. Ritch to be his conservator.

**COMPLAINT FOR DAMAGES**

the appointment of a conservator IS NOT THE SOLE DIS-CRETION OF THE COURT.

d. David Coleman has thus twice misstated the law in an effort to mislead the court. At $400.00 an hour, which Mr. Ritch was ordered to pay to Mr. Coleman by Judge Bobb, he expects a better knowledge of the law than was demonstrated by Mr. Coleman

263. David Coleman made the following allegations of wrong doing against Mr. Ritch as the Trustee. (Exhibit 51)

a. Exhibit 51 Page 2(690) line 1 – "a. Ritch claims to be in possession of a valid power of attorney empowering him to act as the proposed conservatee's agent."

i. Mr. Ritch is in possession of a valid power of attorney, a copy of which is Exhibit 2. David Coleman is attempting to mislead the court by implying that Mr. Ritch has lied to the court about the existence of the Power of Attorney. Coleman has thus accused Mr. Ritch of perjury.

b. Exhibit 51 Page 2(690) line 2 – "a. . . . Objector inspected proposed conservatee's signature on the documents and believes that proposed conservatee did not execute the power of attorney."

i. Howard Stern has not seen his father, Marshall Stern in years and he was not present when the Power of Attorney was signed in 2005.

ii. Howard Stern failed to state any basis for his assertion that the signature was forged. He has

**COMPLAINT FOR DAMAGES**

not seen his father for years and he failed to as-
sert any expertise for his opinion.

   iii. Since the document was properly executed and wit-
nessed by two witnesses in compliance with Cali-
fornia Law, Davis Coleman's use statement of his
client's assertion is completely lacking in any
basis to overcome the presumption that the wit-
nessed signature is valid. Therefore, David Cole-
man has attempted to mislead the court.

   iv. Coleman falsely accused Mr. Ritch of forgery.

c. Exhibit 51 Page 2(690) line 5 – "b. Pursuant to the
power of attorney, Ritch has written himself checks in
an amount exceeding $400,000.00. There is no justifica-
tion for the transfer of assets of this magnitude to
Ritch. Ritch has breached his fiduciary duties to pro-
posed conservatee."

   i. As has been discussed above, the $405,000.00
transfer, which was not to Mr. Ritch, was to pur-
chase a house for the Trustor Marshall Stern, who
affirmed the transfer for that purpose to Retire-
ment Advisors of America, Mr. Coleman's co-
conspirator. Neither Coleman nor any other party
has ever presented any evidence contrary to Mr.
Ritch's testimony that the purchase of the prop-
erty in Louisiana was for and at the direction of
Marshall Stern.

**COMPLAINT FOR DAMAGES**

ii. If Mr. Coleman is referring to the "missing $100,000.00", his co-conspirator James Schnieders was in possession of that money.

iii. Coleman has falsely accused Mr. Ritch of embezzlement but has presented no evidence, only allegations which is not evidence (Jury Instruction 1.02)

d. Exhibit 51 Page 2(690) line 9 – "c. Ritch has made it difficult, if not impossible, for objector to communicate with his father. Further, objector has been blocked from communicating with his father's caregiver, so that he can at least be advised of his father's health."

i. As discussed above, the plaintiffs live in Alabama, nearly 3,000 miles from Los Angeles and Howard Stern lives about 800 miles away in Oregon. Other than his self imposed imprisonment in Oregon[50], there has been no restrictions from the plaintiffs on his visitation or communication with Marshall Stern.

ii. Coleman has made an allegation of wrong doing against the Mr. Ritch which has no basis in fact, Howard Stern does not even explain how he is being prevented from communicating with Marshall Stern. Mere presenting an allegation does not make it

---

[50] Howard Stern is a financial conservatee in Oregon. The plaintiffs believe that there are no medical reasons that prohibit his travel.

**COMPLAINT FOR DAMAGES**

1     true and thus it is a false allegation to mislead

2     the court.

3     e. Exhibit 51 Page 2(690) line 13 - "d. Ritch has borrowed

4        money from proposed conservatee and has not paid it

5        back. There is an inherent conflict of interest if

6        Ritch will now be called upon to recover the debt."

7        i. This is a false statement, Mr. Ritch has not bor-

8           rowed money from Marshall Stern and failed to pay

9           it back.

10    f. Exhibit 51 Page 2(690) line 16 - "e. Ritch intends to

11       move proposed conservatee from the state. Moving pro-

12       posed conservatee would be contrary to his previously

13       expressed wishes. In addition, it would deprive this

14       Court of jurisdiction over proposed conservatee[51]."

15       i. David Coleman, Howard Stern, and their co-

16          conspirators have never presented any evidence of

17          Marshall Stern expressing any wishes to remain in

18          California. This is a blatant false statement by

19          Coleman and Howard Stern in an effort to mislead

20          the court.

21

22    _____

      [51] So in an effort to maintain the "Court's Jurisdiction" over Marshall Stern, Coleman is assert-
23    ing that the court should deny Marshall Stern his Constitutional Right to Interstate Travel.

24    Additionally, according to the representatives of the court, specifically Commissioner Brenda
25    Penny, the Los Angeles County Superior Court's Probate Section is so overloaded with cases
      now, that it cannot properly perform its duties. (See Exhibit 42A, Page 9(498)) "BURIED IN
26    PAPERWORK: Brenda Penny, a Los Angeles County probate attorney, sits next to a cart full of
      files. Court officials can barely keep up with the financial reports in which conservators must
27    account for wards' money." Therefore, allowing Marshall Stern to move to Louisiana, as he
28    wished to do, would relieve the court of one more burden on it and ensure that Marshall Stern
      received better treatment by the courts in Louisiana.

**COMPLAINT FOR DAMAGES**

264.   Ricky Ritch's attorney has repeatedly informed the Court and David Coleman of the above improper conduct, neither party has taken any steps to correct the situation and the improper conduct has gone uncorrected by the Court (Judge Bobb) and David Coleman.

265.   Presiding Judge MacLaughlin was informed of the improper actions of Howard Stern (who was acting as a representative of the court) and Judge Bobb and he has to date apparently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit attorney misconduct with no adverse consequences.

266.   In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### Tenth Count – Christopher Johnson
### (California B. & P. C. § 6068(d)&(f))

267.   Plaintiff incorporates each of the above allegations.

268.   In a pleading filed on January 27, 2006 by Christopher Johnson (Exhibit 36B), Mr. Johnson made false statements and allegations of wrongdoing against Ricky Ritch.

269.   Christopher Johnson criminally made the following false statements and allegations under penalty of C.C.P. § 128.7:

**COMPLAINT FOR DAMAGES**

270. Exhibit 36B Page 2(394) lines 11-13 - "Subsequently, the court ordered an account of RICKY RITCH's action as trustee of the Trust and as Conservatee's agent under a power of attorney (over a period of several years prior to and during the conservatorship)."

    a. The court never ordered an accounting of the trust (See Exhibit 15) and had no authority to do so in that the court had no jurisdiction over the trust under California Probate Law. Therefore, Christopher Johnson made a false statement in the pleading.

    b. As has been discussed above, Mr. Ritch was not appointed as Marshall Stern's attorney in fact via a power of attorney until April 27, 2004. Christopher Johnson knew this because numerous briefs had been filed and served on Mr. Johnson informing him of the correct date of the power of attorney.

271. Exhibit 36B Page 2(394) line 14 - "RITCH has not provided such an account."

    a. An accounting of the estate assets was filed in November of 2005. See Exhibit 29. Christopher Johnson was served with a copy of the Accounting and therefore made a knowingly false statement.

    b. Concerning the contempt charge Mr. Johnson refers to in Exhibit 36B Page 2(394) lines 14-16, as will be discussed below, that conviction was part of the ongoing criminal conspiracy which is the heart of this matter and includes Christopher Johnson.

**COMPLAINT FOR DAMAGES**

272.  Exhibit 36B Page 2(394) lines 11-13 – "The Conservator[52] has been charged by this court[53] with the duty to marshall (sic.) not only the Conservatee's assets, but the assets of the Trust as well, and to take all steps necessary to return assets taken from the Conservatee or the Trust to the Conservatee."

    a. There is no such order and if there were it would be illegal since "the court" did not have jurisdiction over the Trust and could not make such an order.

273.  The false statements and allegations of Christopher Johnson are an obvious attempt to sway the court and to harm the repu-tation of Mr. Ritch.

274.  Ricky Ritch's attorney has repeatedly informed the Court, i.e. Judge Bobb and Christopher Johnson of the above improper conduct, neither party has taken any steps to correct the situation and the improper conduct has gone uncorrected by the Court (Judge Bobb) and Christopher Johnson.

275.  Presiding Judge MacLaughlin was informed of the improper actions of Christopher Johnson (who was acting as a represen-tative of the court) and Judge Bobb and he has to date appar-ently taken no action to prevent their improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to allow those attorneys and parties they have a preference for to commit attorney misconduct with no adverse consequences.

---

[52] James Schnieders, who was the "Temporary Conservator" at the time the pleading was filed.

[53] The "court" is also a defendant in this matter and was involved in the criminal conspiracy.

**COMPLAINT FOR DAMAGES**

276. In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

## Eleventh Count – Christopher Johnson
### (California B. & P. C. § 6068(c)&(g))

277. Plaintiff incorporates each of the above allegations.

278. In a pleading filed on January 27, 2006 by Christopher Johnson (Exhibit 36B), Mr. Johnson initiated an action against Mr. Ritch which was frivolous and unwarranted as well as being based on false statements.

279. As has been previously discussed, the "court" referenced by Mr. Johnson had no jurisdiction over the Trust under Probate Code §§ 17000-17005. The court's previous and subsequent efforts to criminally take control of the Trust not withstanding, the "court" had no authority to grant Mr. Johnson's application.

280. The application of Christopher Johnson was only another step in the criminal conspiracy which is the heart of this matter and has no other legal basis. Lacking any legal or factual basis, the Application was frivolous and without merit.

281. Ricky Ritch's attorney has repeatedly informed the Court and Christopher Johnson of the above improper conduct, neither party has taken any steps to correct the situation and the im-

**COMPLAINT FOR DAMAGES**

1    proper conduct has gone uncorrected by the Court (Judge Bobb)

2    and Christopher Johnson.

3   282.   Presiding Judge MacLaughlin was informed of the improper

4    actions of Christopher Johnson (who was acting as a represen-

5    tative of the court) and Judge Bobb and he has to date appar-

6    ently taken no action to prevent their improper actions.

7    Therefore, it appears to be a custom, practice, or policy

8    within the Los Angeles County Superior Court for the judges to

9    allow those attorneys and parties they have a preference for

10    to commit attorney misconduct with no adverse consequences.

11   283.   In doing the things herein alleged, defendants acted will-

12    fully and with intent to cause injury to the plaintiff. The

13    defendants were therefore guilty of malice, oppression, and

14    fraud in conscious disregard of plaintiff's rights, thereby

15    warranting an assessment of punitive damages in an amount ap-

16    propriate to punish defendants and deter others from engaging

17    in similar misconduct.

18

19            **THIRD CAUSE OF ACTION – JUDICIAL MISCONDUCT**

       **(California Constitution Article VI, Section 18 and C.C.P. §§**

20                      **170-170.6)**

21   **Count One – Aviva Bobb - On-Bench Abuse of Authority in the Per-**

22   **formance of Judicial Duties (Unlawful Appointment of PVP Coun-**

                        **sel).**

23   284.   Plaintiff incorporates each of the above allegations.

24   285.   Prior to the onset of this case, Marshall Stern hired a

25    private attorney, Albert Sterwerf, to represent him in these

26    proceedings.

27

28

                                         127                        **COMPLAINT FOR DAMAGES**

286. On the day after the Petition for conservatorship was filed, Judge Bobb on her own initiative appointed Ronald Berman as the PVP counsel for Marshall Stern. (Exhibit 6)

287. Judge Bobb appointed the PVP counsel in this case in violation of Probate Code § 1470[54]. Since Marshall Stern had hired an attorney to represent him, Judge Bobb had no authority, either by Probate Code § 1470 or the Rules of the Court, to appoint a PVP counsel.

288. Judge Bobb fraudulently informed Albert Sterwerf (By informing Roger Agajanian) that he could not represent Mr. Stern since he was not on the PVP panel. This is a false statement since there is no such requirement by statute or by the court rules. The speed of Judge Bobb's appointment and the lack of any investigation into the needs for an appointed PVP Counsel by Judge Bobb precluded the appointment of Ronald Berman.

289. By appointing Ronald Berman, Judge Bobb exceeded her statutory authority and thus had no jurisdiction to appoint Ronald Berman as counsel for Marshall Stern.

290. In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount ap-

---

[54] Probate Code § 1470 (a) reads: **The court may appoint private legal counsel** for a ward, a proposed ward, a conservatee, or a proposed conservatee in any proceeding under this division **if the court determines the person is not otherwise represented by legal counsel _and_ that the appointment would be helpful to the resolution of the matter or is necessary to protect the person's interests.** (emphasis added) The Court Rules read essentially the same.

**COMPLAINT FOR DAMAGES**

1   propriate to punish defendants and deter others from engaging

2   in similar misconduct.

3   **Count Two – Aviva Bobb – On-Bench Abuse of Authority in the Per-**

4   **formance of Judicial Duties (Unlawful Competency Determination).**

5   291.  Plaintiff incorporates each of the above allegations.

6   292.  At the December 12, 2005 hearing, based on a medical report

7   prepared in July 2005, Judge Bobb determined that Marshall

8   Stern was suffering from dementia in April 2005 and he could

9   not have hired his private attorney, Albert Sterwerf.

10  293.  Judge Bobb's determination is contrary to California Law.

11  Under California law, the presumption is that a party is com-

12  petent unless there is evidence to the contrary. (See Footnote

13  # 7.) No evidence was presented that Mr. Stern lacked capacity

14  at the time he hired his private counsel.

15  294.  The medical report relied on by Judge Bobb was prepared by

16  a doctor hired by the PVP counsel and has never been confirmed

17  by any other doctors since Judge Bobb has assisted in the iso-

18  lation of Marshall Stern from nearly all outside contacts.

19  295.  During the three months between when Marshall Stern hired

20  Albert Sterwerf and the report was completed, Marshall Stern

21  was living in his home without any assistance or involvement

22  from the court and Ronald Berman. It was only after he re-

23  turned to Encino-Tarzana Regional Medical Center that he was

24  suddenly diagnosed with dementia and Ronald Berman became ac-

25  tive in the case.

26  296.  Additionally, people who know Marshall and who have seen

27  him at Magnolia Gardens Nursing Home stated that he appears to

28  be heavily drugged. This is supported by the declaration of

COMPLAINT FOR DAMAGES

1  Donna Ritch, who saw the staff at Magnolia Gardens inject a

2  pink substance into Marshall Stern's IV and shortly thereafter

3  he was comatose and no longer able to speak. (Exhibit 14)

4  297.  Judge Bobb again ignored the inconvenient law (California

5  Supreme Court Decision specifically on point in this case[55].)

6  in order to protect the PVP counsel she had unlawfully ap-

7  pointed.

8  298.  In doing the things herein alleged, defendants acted will-

9  fully and with intent to cause injury to the plaintiff. The

10  defendants were therefore guilty of malice, oppression, and

11  fraud in conscious disregard of plaintiff's rights, thereby

12  warranting an assessment of punitive damages in an amount ap-

13  propriate to punish defendants and deter others from engaging

14  in similar misconduct.

**Count Three - Aviva Bobb - On-Bench Abuse of Authority in the Performance of Judicial Duties (Allowed Unlawful Movement of Conservatee).**

299.  Plaintiff incorporates each of the above allegations.

300.  Defendant Jim Schnieders moved Marshall Stern to Magnolia Gardens without any authorization of the court as required by California Probate Code § 2253[56].

301.  This violation of law has been repeatedly reported to Judge Bobb and she has taken no action against this blatant viola- tion of the law by defendant Jim Schnieders.

---

[55] See footnote #7.

[56] Probate Code § 2253. (a) If a temporary conservator of the person proposes to fix the resi- dence of the conservatee at a place other than that where the conservatee resided prior to the commencement of the proceedings, such power shall be requested of the court in writing, unless such change of residence is required of the conservatee by a prior court order.

**Count Four - Aviva Bobb - On-Bench Abuse of Authority in the Performance of Judicial Duties (Unlawful Appointment of Conservator).**

302. Plaintiff incorporates each of the above allegations.

303. Under Probate Code § 1810[57], Judge Bobb was directed by the legislature to appoint Mr. Ritch as conservator since Marshall Stern had appointed Mr. Ritch as his conservator in two separate writings. Yet Judge Bobb ignored the law and refused to appoint Mr. Ritch and has failed to state any basis for not appointing Mr. Ritch.

304. By failing to follow the directives of the legislature, Judge Bobb exceeded her jurisdiction and therefore did not have the authority to take the actions she took[58].

305. In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Count Five - Aviva Bobb - On-Bench Abuse of Authority in the Performance of Judicial Duties (Unlawful Jurisdiction Over Trust).**

---

[57] Probate Code § 1810. - If the proposed conservatee has sufficient capacity at the time to form an intelligent preference, the proposed conservatee may nominate a conservator in the petition or in a writing signed either before or after the petition is filed. The <u>court shall appoint the nominee</u> as conservator unless the court finds that the appointment of the nominee is not in the best interests of the proposed conservatee. (emphasis added)

[58] Mitchell v. Superior Court of Los Angeles County, 28 Cal. App. 3d 759, 104 Cal. Rptr. 921 (Cal.App.Dist.2 11/16/1972)

131                                    COMPLAINT FOR DAMAGES

306.   Plaintiff incorporates each of the above allegations.

307.   Judge Bobb, in an improperly noticed Ex Parte petition on January 27, 2006 appointed Jim Schnieders as the temporary trustee of the Marshall L. Stern Trust.

308.   Judge Bobb granted the ex parte petition without any hearing.

309.   Judge Bobb ruled that she had jurisdiction over the Trust since a portion of the Trust's assets are in Los Angeles County. Again this is an unlawful reading of the California Probate Code § 17005:

> 17005.   (a) The proper county for commencement of a proceeding pursuant to this division is either of the following:
> (1) In the case of a living trust, the county where the principal place of administration of the trust is located.
> (b) If a living trust has no trustee, the proper county for commencement of a proceeding for appointing a trustee is the county where the trust property, or some portion of the trust property, is located.

310.   Since the did and does have a trustee, Mr. Ritch, then Judge Bobb's ruling that she does have jurisdiction over the trust is prohibited by the word "if" in section 17005(b). Since there is a trustee section 17005(a) applies and the proper venue for any trust actions is in the county where the trustee resided.

311.   The action was a new action and the court did not have jurisdiction over Ricky Ritch since he is a citizen of another state and Jim Schnieders and Lisa MacCarley failed to follow the California Long Arm Statute requirements.

**COMPLAINT FOR DAMAGES**

312. Judge Bobb granted the petition despite her lack of jurisdiction over either Rick Ritch or the trust.

313. Jim Schnieders and Lisa MacCarley failed to serve a summons on Ricky Ritch and therefore the court did not obtain jurisdiction over Mr. Ritch.

314. Despite the lack of jurisdiction over either the person of Mr. Ritch or the subject matter of the action, the fraudulent, perjurous and defamatory nature of the allegations, made against Mr. Ritch in the petition, Judge Bobb ruled in favor of Jim Schnieders and made him the temporary trustee.

315. None of the allegations made against Mr. Ritch had any evidentiary support necessary to make them admissible in an unbiased court of law. Yet Judge Bobb ruled positively for Lisa MacCarley and Jim Schnieders based solely on their unsupported, inadmissible and fraudulent allegations.

316. In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Count Six – Aviva Bobb - On-Bench Abuse of Authority in the Performance of Judicial Duties (Unlawfully Retained a Case After Motion of Prejudice was Filed).**

317. Plaintiff incorporates each of the above allegations.

318. On February 21, 2006, Judge Bobb unlawfully retained the case in her court after a motion of prejudice (C.C.P. § 170.6) on case # *BP 096 488* filed by the Ricky Ritch. (Exhibit 22)

**COMPLAINT FOR DAMAGES**

1   319.  Judge Bobb initially granted the motion on February 9,

2      2006. (Exhibit 23)

3   320.  Lisa MacCarley filed an ex parte motion the day after the

4      notice of the grant of the removal was received. Judge Bobb

5      considered that ex parte motion, without hearing and decided

6      to take the case back into her court in violation of C.C.P. §

7      170.6.

8   321.  On February 21, 2006, Judge Bobb sent the mater to her sub-

9      ordinate Judge Pro Tem Beckloff in Department 5, to rule on

10     the 170.6 petition. Defendant Beckloff summarily ruled against

11     the petition and sent the case back to Judge Bobb. Thereby,

12     Judge Bobb pulled Judge Pro Tem Beckloff into the conspiracy

13     to harm Mr. Ritch.

14         a. Beckloff ruled that the Petition was untimely which is

15           not supported by the facts or applicable law. A 170.6

16           petition can be filed anytime there is prejudice in a

17           matter and here there clearly is prejudice.

18         b. Normal practice is that a 170.6 Petition can be filed

19           only as a first action in a matter. Since Mr. Ritch and

20           his counsel had never appeared in this case (# *BP 096*

21           *488)* prior to the filing of the 170.6 petition there

22           was no timeliness issue. The 170.6 petition was timely

23           filed.

24   322.  By sending the matter to her subordinate judge, Aviva Bobb

25     violated both the letter and the intent of the law. Specifi-

26     cally, upon receipt of the 170.6 petition, Judge Bobb should

27     have sent the matter to the presiding judge for reassignment

28     and not reassigned it herself.

**COMPLAINT FOR DAMAGES**

323.   In doing the things herein alleged, defendants acted will-
fully and with intent to cause injury to the plaintiff. The
defendants were therefore guilty of malice, oppression, and
fraud in conscious disregard of plaintiff's rights, thereby
warranting an assessment of punitive damages in an amount ap-
propriate to punish defendants and deter others from engaging
in similar misconduct.

**Count Seven — Aviva Bobb - Count Seven — Aviva Bobb - On-Bench Abuse Of Authority In Performance Of Judicial Duties (Unlawfully Ruled on a Case When The Petitioner was Still in His Response Time).**

324.   Plaintiff incorporates each of the above allegations.

325.   On February 21, 2006, Judge Bobb dismissed a Motion to
Quash the action for Lack of Personal Jurisdiction and a Mo-
tion to Dismiss for Improper Venue and Lack of Subject Mater
Jurisdiction. Both motions were made under California Code of
Civil Procedure § 418.10.

326.   Under C.C.P. § 418.10 (c)[59] Mr. Ritch had 10-days from the
courts ruling on the motions filed under C.C.P. § 418.10 from
the service of the written court order on him to file a RE-
SPONSE to the action.

---

[59] Code of Civil Procedure 418.10 – (c) If the motion is denied by the trial court, <u>the defendant, within 10 days after service upon him or her of a written notice of entry of an order of the court denying his or her motion</u>, or within any further time not exceeding 20 days that the trial court may for good cause allow, and before pleading, <u>may petition an appropriate reviewing court for a writ of mandate to require the trial court to enter its order quashing the service of summons or staying or dismissing the action.</u>  The defendant shall file or enter his or her responsive pleading in the trial court within the time prescribed by subdivision (b) unless, on or before the last day of the defendant's time to plead, he or she serves upon the adverse party and files with the trial court a notice that he or she has petitioned for a writ of mandate.  <u>The service and filing of the notice shall extend the defendant's time to plead until 10 days after service upon him or her of a written notice of the final judgment in the mandate proceeding.</u> (emphasis added)

COMPLAINT FOR DAMAGES

327.   Judge Bobb in her "rush" to give control of the Trust to Jim Schnieders and the rest of their co-conspirators did not give Mr. Ritch his due process rights by denying him the ten days he was entitled to respond to the action. Instead Judge Bobb, again ignoring the law, proceeded with the hearing and granted Schnieders' petitions.

328.   In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Count Eight – Brenda Penny – On-Bench Abuse of Authority in the Performance of Judicial Duties (Unlawful Appointment of a Temporary Conservator).**

329.   Plaintiff incorporates each of the above allegations.

330.   Under Probate Code § 1810, Commissioner Brenda Penny was directed by the legislature to appoint Mr. Ritch as conservator since Marshall Stern had appointed Mr. Ritch as his conservator in two separate writings. Yet Commissioner Penny ignored the law and refused to appoint Mr. Ritch and has failed to state any basis for not appointing Mr. Ritch.

331.   By failing to follow the statutory laws established by the legislature, Commissioner Penny exceeded her jurisdiction in the case and had no authority to deny Mr. Ritch's appointment as the conservator of Marshall Stern.

332.   In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The

**COMPLAINT FOR DAMAGES**

defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Count Nine - Mitchell Beckloff - On-Bench Abuse Of Authority In Performance Of Judicial Duties (Unlawfully Ruled on a Case When The Petitioner was Still in His Response Time).**

333.  Plaintiff incorporates each of the above allegations.

334.  On April 4, 2006, Judge Pro Tem Beckloff denied the Plaintiff's motions to quash and dismiss the action against the Trust filed by James Schnieders.

335.  Allegedly on April 6, 2006, Judge Pro Tem Beckloff signed an order granting James Schnieders' petition to be appointed as the trustee of the Trust. (Since the Order has never been served on either Mr. Ritch or his counsel, the existence of this Order is in question.)

336.  Under C.C.P. § 418.10 (c) Mr. Ritch had 10-days from the courts ruling on the motions filed under C.C.P. § 418.10 from the service of the written court order on him to file a RESPONSE to the action.

337.  Judge Pro Tem Beckloff in his "rush" to give control of the Trust to Jim Schnieders and the rest of their co-conspirators did not give Mr. Ritch his due process rights by denying him the ten days he was entitled to respond to the action. Instead Judge Pro Tem Beckloff, ignoring the law, proceeded with the hearing and granted Schnieders' petitions.

338.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The

**COMPLAINT FOR DAMAGES**

1  defendants were therefore guilty of malice, oppression, and

2  fraud in conscious disregard of plaintiff's rights, thereby

3  warranting an assessment of punitive damages in an amount ap-

4  propriate to punish defendants and deter others from engaging

5  in similar misconduct.

6  **Count Ten - Aviva Bobb - Abuse of Contempt Power and Failure to**

7  **Ensure Rights (Unlawful Prosecution of Plaintiff)**

8  339.  Plaintiff incorporates each of the above allegations.

9  340.  During a hearing on December 23, 2005, Judge Aviva Bobb

10  stated words to the effect, "Someone is going to be prosecuted

11  today." In light of the numerous perjuries committed by the

12  opposing parties and their counsels, this could have been any

13  of them. Instead it was Mr. Ritch who had the Judge's contempt

14  power directed at him.

15      a. Exhibit 16, the Minute Order from the court which ini-

16         tiated the Contempt action was never served on Mr.

17         Ritch or his attorney.

18  341.  In the Cause of Action - Civil Action For Deprivation Of

19  Rights And Conspiracy Against Rights below, the numerous vio-

20  lations of Mr. Ritch's Civil Right and the lack of Due Process

21  are fully discussed.

22  342.  As will be discussed in the Cause of Action for Extortion

23  below, Judge Bobb's abuse of her contempt power was part of an

24  ongoing conspiracy to extort Mr. Ritch into conceding control

25  of the Trust over to the conspiracy for the benefit of the

26  conspirators and to the detriment of Marshall Stern and his

27  heirs.

28

138

**COMPLAINT FOR DAMAGES**

343.   The abuse of the contempt power by Judge Bobb in light of her other actions and statements and the actions and statements of the other counsels make it obvious that the abuse of the contempt power by Judge Bobb was for nefarious reasons, i.e. to attempt to gain control over the Trust which she could not do legally.

344.   In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Count Eleven - Aviva Bobb - Bias or Appearance of Bias[60]**

345.   Plaintiff incorporates each of the above allegations.

346.   Judge Bobb has allowed Jim Schnieders to perform unlawful acts with impunity.

347.   Jim Schnieders unlawfully moved Marshall Stern from his home and placed him in a nursing home with out prior court authorization as required by Probate Code § 2253.

348.   Once James Schnieders had unlawfully moved Marshall Stern to a new location, i.e. Magnolia Gardens, James Schnieders, Lisa MacCarley, Brenda Penny, and the employees of Magnolia

---

[60] C.C.P. § 170.1. (a) A judge shall be disqualified if any one or more of the following is true: (6) For any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification.

COMPLAINT FOR DAMAGES

Gardens were allowed to forward the conspiracy by kidnapping via isolating Marshall Stern from his family and friends.

349. Jim Schnieders was allowed to criminally defraud Bank of America into allowing his to take Trust assets out of two Trust checking accounts, over which he had no authority as a temporary conservator.

350. Jim Schnieders was ordered, by Aviva Bobb, to move Marshall Stern from the inferior nursing home, Magnolia Gardens to a superior facility. This order has never been carried out by James Schnieders. Therefore, James Schnieders has violated the Courts order and has continued to enrich his co-conspirator, Magnolia Gardens, at the expense of Marshall Stern and his beneficiaries, which includes the plaintiffs.

351. Jim Schnieders has committed numerous perjuries throughout the proceedings, discussed above in the Cause of Action for Perjury. Judge Bobb has taken no action against Mr. Schnieders for his illegal actions, despite the efforts of Mr. Ritch's attorney to point out the deceptions.

352. Court Appointed PVP counsel Ronald Berman has committed numerous perjuries, as discussed above, and has made defamatory, inadmissible allegations of wrong doing against Mr. Ritch. Despite the efforts of Mr. Ritch's attorney to point out the deceptions of Ronald Berman Judge Bobb has never reprimanded Mr. Berman for his criminal conduct.

353. David Coleman has made defamatory, inadmissible allegations of wrong doing against Mr. Ritch. Despite the efforts of Mr. Ritch's attorney to point out the deceptions of David Coleman

**COMPLAINT FOR DAMAGES**

1  Judge Bobb has never reprimanded Mr. Coleman for his criminal

2  conduct.

3  354.  Christopher Johnson has committed numerous perjuries, as

4  discussed above, and has made defamatory, inadmissible allega-

5  tions of wrong doing against Mr. Ritch. Despite the efforts of

6  Mr. Ritch's attorney to point out the deceptions of Christo-

7  pher Johnson Judge Bobb has never reprimanded Mr. Johnson for

8  his criminal conduct.

9  355.  On the other hand, Mr. Ritch filed an accounting in August

10  of 2005 in response to a court order of questionable legality

11  which was never served on him in accordance with California

12  Civil Procedure. Mr. Ritch filed another accounting in Novem-

13  ber of 2005 in an effort to comply with the court's order. Yet

14  despite his obvious attempts to comply with a court order of

15  questionable legality, he was found in "criminal contempt"[61]

16  of court. The contempt of court proceeding completely lacked

17  in any Constitutional Protections and resulted in a $1,000.00

18  fine, an order to pay an opposing counsel $6,640.00 to be the

19  "Special Prosecutor" to prosecute him, and was sentenced to 5-

20  days in jail. While he was incarcerated, at defendant Bobb's

21  order, Mr. Ritch was given a message from "The Judge", spe-

22  cifically the smashing of his head against a sheriff's car

23  (See Cause of Action for Battery, below.) All of this punish-

24  ment was based on Mr. Ritch's alleged non-compliance with a

25  court order, i.e. the filing an accounting, which was in the

26  court's record at the time he was convicted.

27

28

---

[61]  See Exhibits 18, 19, 44, and 46 page 1 line 27.

**COMPLAINT FOR DAMAGES**

356.  The bias of Judge Bobb can be seen from her complete lack of action concerning the criminal actions of James Schnieders, Ronald Berman, Christopher Johnson, David Coleman, Lisa Mac-Carley, et. al., which Judge Bobb failed to take any action on. Compare that lack of action against her co-conspirators to the excessive prosecution of Mr. Ritch for failing to file an accounting, which was in the Court's record in front of Judge Bobb at the time Mr. Ritch was found in contempt court.

357.  As further evidence of Judge Bobb's and the Los Angeles County Superior Court's bias, Lisa MacCarley sent a letter to Mr. Ritch's attorney which stated, "[P]lease explain to Mr. Ritch that there is no judge in the Los Angeles Superior Court building which will appoint him as conservator and allow him to remain as Trustee of Mr. Stern's trust." (Exhibit 41 – page 3(470) next to last paragraph.) Apparently Ms. MacCarley has some inside information or connection inside the Los Angeles Superior Court so that she can make this pronouncement. It is more disturbing that her predictions, as were those of James Schnieders, turned out to be true. (See the next paragraph.)

358.  On February 18, 2006, Jim Schnieders had a phone conversation with Mr. Ritch. During the conversation, Mr. Schnieders told Mr. Ritch he might as well turn everything over to him, "Since on February 21st he was going to get everything anyway." Or words to that effect.

359.  On February 21, 2006, Judge Bobb has ruled that Jim Schnieders would be the conservator of Marshall Stern and in an unprecedented move (and totally unsupported by any legal basis) removed Mr. Ritch as the Trustee and appointed Mr.

**COMPLAINT FOR DAMAGES**

1   Schnieders as trustee, just as he said would happen on Febru-

2   ary 18th. All of this despite the fact that Judge Bobb does

3   not have jurisdiction over the trust.

4   360.  The evidence of bias is overwhelming in this case. Judge

5   Bobb has repeatedly displayed a prejudice against Ricky and

6   Donna Ritch and a bias towards her co-conspirators.

7   361.  The bias demonstrated by Aviva Bobb unlawfully denied Mr.

8   Ritch of his Fourteenth Amendment Rights to Due Process and

9   denied him a full and fair hearing.

10  362.  In doing the things herein alleged, defendants acted will-

11  fully and with intent to cause injury to the plaintiff. The

12  defendants were therefore guilty of malice, oppression, and

13  fraud in conscious disregard of plaintiff's rights, thereby

14  warranting an assessment of punitive damages in an amount ap-

15  propriate to punish defendants and deter others from engaging

16  in similar misconduct.

17  **Count Twelve – Aviva Bobb – Ex Parte Communications ("Special
18  Prosecutor" Informed of His Appointment Prior to the Hearing)**

19  363.  Plaintiff incorporates each of the above allegations.

20  364.  Mr. Ritch has no direct evidence of ex parte communica-

21  tions. However events in the courtroom appear to have been or-

22  chestrated prior to the beginning of the hearings in ex parte

23  meeting(s) of the counsels and Judge Bobb without Mr. Ritch's

24  attorney present.

25  365.  The David Coleman was "prepared" to be a "Special Prosecu-

26  tor" at the December 23, 2005 hearing. He was ready to act in

27  that capacity and volunteered to do so when Judge Bobb appar-

28  ently spontaneously asked for someone to act in that capacity.

143                                    **COMPLAINT FOR DAMAGES**

366.   Since the U.S. Supreme Court has held that the appointment of an opposing counsel as a "Special Prosecutor" is a violation of U.S. Constitutional Protections, there is no basis for Mr. Coleman to have prepared to be a "Special Prosecutor" prior to the hearing.

367.   Mr. Coleman's "preparation to be the Special Prosecutor" is evidenced by David Coleman's "SENTENCING MEMORANDUM" and Judge Bobb's order that Mr. Ritch pay Howard Stern $6,640 for attorney's fees for Mr. Coleman's preparation to prosecute Mr. Ritch. Aviva Bobb's own statements in her minute order state that the "Special Prosecutor" had spent 16.6 hours "preparing" to be the "Special Prosecutor."

   a. See Exhibit 44 page 3(546) lines 10-11 - "However, objector did have to review and study the evidence to be completely ready for the contempt hearing."

368.   There is no way that David Coleman could have been preparing to volunteer to be a "Special Prosecutor" prior to the hearing unless he had been informed by Judge Bobb that he would be needed in that capacity.

369.   There were no hearings/meetings with Mr. Ritch's attorney on the appointment of a "Special Prosecutor" prior to the hearing. Therefore, the communication between Mr. Coleman and Judge Bobb had to have been ex parte in nature.

370.   Since Mr. Ritch and his attorney were not privy to the unlawful communications between Judge Bobb and David Coleman, Judge Bobb and David Coleman participated in an illegal ex parte communication to the detriment of Mr. Ritch.

**COMPLAINT FOR DAMAGES**

371.  The unlawful ex parte communication between Judge Bobb and David Coleman denied Mr. Ritch of his Due Process Rights under the Fourteenth Amendment.

372.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Count Thirteen – Aviva Bobb – Ex Parte Communications (Communication with Attorney Christopher Johnson)**

373.  Plaintiff incorporates each of the above allegations.

374.  On December 23, 2005 another Judge-Counsel communication appeared to be preplanned. Judge Bobb ruled against a Motion to Strike file by Mr. Ritch against the OBJECTIONS of Andre Hodges and Herman Stern, discussed above.

375.  Judge Bobb only referred to a "motion to strike" in her comment, of which there were several scheduled for that day. There were about twenty matters scheduled for that day in this case alone. Judge Bobb did not refer to the motion by name or party or in any other way identify it by party or docket number.

376.  Despite the total lack of any identification of which Motion to Strike Judge Bobb was referring to, Christopher Johnson, the counsel for Andrea Hodges, was able to identify the Motion Judge Bobb's was referring to as his.

**COMPLAINT FOR DAMAGES**

377.   The Christopher Johnson asked Judge Bobb, "Are you refer-
ring to the motion to strike the objections of my client your
honor?" or words to that effect.

378.   Judge Bobb immediately identified the pleadings as being
related to Christopher Johnson without any reference to the
document or the calendar.

379.   Judge Bobb made no ruling as to why the Objections prepared
by Christopher Johnson (which were inadmissible for lack of
personal knowledge and filled with perjurous allegations – See
Cause of Action for Perjury above) would not be struck in a
process which took less time than counsel had to turn to the
documents at issue. (This still had not been identified by the
court, other than to Christopher Johnson and anyone else in-
volved in the special meetings for this case.)

380.   Attorney Johnson then referred to the portion of the Motion
to Strike which requested sanctions for the perjurous allega-
tions in the OBJECTIONS filed by Mr. Johnson, and Judge Bobb
waived them off as if she and Mr. Johnson had already dis-
cussed the matter.

381.   From the way the Christopher Johnson and Judge Bobb spoke
on the issues it was apparent that the outcome on the motion
to strike had been previously discussed between them. This
could only have occurred in an ex parte communication since
neither Mr. Ritch nor his attorney was informed of any hear-
ings or meetings prior to the scheduled hearing to discuss
these issues.

382.   Since Mr. Ritch and his attorney were not privy to the com-
munications between Judge Bobb and Christopher Johnson, Judge

**COMPLAINT FOR DAMAGES**

1    Bobb and Christopher Johnson participated in an illegal ex

2    parte communication to the detriment of Mr. Ritch.

3    383.   In doing the things herein alleged, defendants acted will-

4    fully and with intent to cause injury to the plaintiff. The

5    defendants were therefore guilty of malice, oppression, and

6    fraud in conscious disregard of plaintiff's rights, thereby

7    warranting an assessment of punitive damages in an amount ap-

8    propriate to punish defendants and deter others from engaging

9    in similar misconduct.

10   **FOURTH CAUSE OF ACTION – DEFAMATION[62], LIBEL, SLANDER, AND INVA-**

11   **SION OF PRIVACY**

12   **First Count – Ronald Berman – Libel and Invasion of Privacy**

13   **Against Ricky Ritch and Donna Ritch**

14   384.   Plaintiffs incorporate each of the above allegations.

15   385.   The defendant Ronald Berman made numerous defamatory state-

16   ments/allegations of fact about the plaintiffs discussed in

17   the First Cause of Action (Perjury) and the Second Cause of

18

19

---

20   [62] **Defamation on its face.** Special damages need not be alleged in a complaint for libel when
     the alleged defamatory language is libelous on its face, despite the existence of a possible non-

21   defamatory meaning of the words used. <u>MacLeod v. Tribune Pub. Co.</u>, (1959) 52 Cal. 2d 536,

22   537-551, 343 P.2d 36.

     **Language charging crime.** Language that charges plaintiff with having committed a crime is

23   defamation on its face. <u>Draper v. Hellman Commercial Trlst & Sav. Bank</u>, (1928) 263 Cal. 26,

24   34, 363 P. 240, <u>Boyich v. Howell</u>, (1963) 221 Cal. App. 2d 801, 802, 34 Cal. Rptr. 794.

     **Failure to Investigate Amounting to Avoidance of Truth Supports Finding of Actual Mal-**

25   **ice.** A failure to investigate the truth of a matter, resulting from a deliberate decision not to ac-

26   quire knowledge of facts that amounts to a purposeful avoidance of the truth, supports a finding

     of actual malice. <u>Khawar v. Globe Internat., Inc.</u>, (1998) 19 Cal. 4th 254, 279, 79 Cal. Rptr. 2d

27   178, 965 P.2d 696. <u>Antonovich v. Superior Court</u>, (1991) 234 Cal. App. 3d 1041, 1048, 1053,

28   287 Cal. Rptr. 863.

**COMPLAINT FOR DAMAGES**

Action (Attorney Misconduct). The facts disclosed were false, and portrayed the plaintiffs in a false light.

   a. False accusation that Ricky and Donna Ritch illegally obtaining Marshall Stern's signature on a General Power of Attorney after Mr. Stern was incompetent. (2 counts in two separate pleadings)

   b. False accusations that Ricky and Donna Ritch used the illegally obtained General Power of Attorney to illegally take money from the estate of Marshall Stern (i.e. embezzlement). (2 counts in 2 separate pleadings)

   c. Falsely alleged that Mr. Ritch had illegally removed $100,000.00 from Mr. Stern's estate (i.e. embezzlement) and that he, Ronald Berman, had no knowledge of the whereabouts of that money. (2 counts in 2 separate pleadings)

   d. Falsely accused Ricky and Donna Ritch of "isolating" Marshall Stern from his other family members. (3 counts in 3 separate pleadings)

   e. Falsely accused Ricky and Donna Ritch of either forging Marshall Stern's signature on documents signed in 2004 or of applying undue influence on Marshall Stern to sign the documents so that Mr. Ritch could then have access to the Marshall Stern's assets for his own bene- fit. (3 counts in 3 separate pleadings)

   f. Falsely accusing Mr. Ritch of misleading others by stating, "That he was a doctor, then a lawyer, then a doctor again." This accusation was based on double hearsay and thus was not admissible. But more impor-

**COMPLAINT FOR DAMAGES**

1         tantly, Mr. Ritch has a Juris Doctorate and thus he is

2         a lawyer (non-practicing) and he has a separate Doctor-

3         ate Degree, so technically he is a lawyer and can use

4         the title of "doctor". Berman worded his accusation as

5         if Mr. Ritch was stating he was a medical doctor, which

6         he never did. (2 counts in 2 separate pleadings)

7  386.  The defendant published the defamatory statements in three

8      separate pleadings which were filed on the court and thus be-

9      came part of the court record and available to the public.

10  387.  The statements/alleged facts placed a false light on Ricky

11      and Donna Ritch which would be highly offensive to a reason-

12      able person. The statement/alleged facts indicated that Mr.

13      Ritch had "illegally" obtained a power of attorney to steal

14      the assets of Marshall Stern's estate. Every one of the alle-

15      gations is highly offensive on its face and any reasonable

16      person hearing the allegations/alleged facts would be appalled

17      if they believed the false statements/alleged facts.

18  388.  The published statements were defamatory on their face.

19  389.  The defendant Ronald Berman knew the above statements were

20      false and intentionally defamed plaintiff and invaded his pri-

21      vacy.

22  390.  The defendant, Ronald Berman, published the statements in

23      reckless disregard of whether the matters were false and de-

24      famed plaintiff.

25  391.  The defendant, Ronald Berman, acted negligently in failing

26      to learn whether the matters published was false and defamed

27      plaintiff.

28

**COMPLAINT FOR DAMAGES**

392.  If defendant, Ronald Berman, did not know if his state-
ments/alleged facts were in fact false, he acted with reckless
disregard for whether the matter was false and defamed the
plaintiffs and means that the defendant must have had serious
doubts about the truthfulness of the statement at the time of
the publication.

393.  If defendant, Ronald Berman, did not know if his state-
ments/alleged facts were in fact false, he acted negligently
if he did not act reasonably in checking on the truth or fal-
sity or defamatory character of the communication before pub-
lishing them.

394.  In doing the things herein alleged, defendant acted will-
fully and with intent to cause injury to the plaintiffs. The
defendant was therefore guilty of malice, oppression, and
fraud in conscious disregard of plaintiff's rights, thereby
warranting an assessment of punitive damages in an amount ap-
propriate to punish defendants and deter others from engaging
in similar misconduct.

395.  The false statements were defamatory and injured the Plain-
tiff's reputation with such notable individuals as Senators
Feinstein and Boxer whom the Plaintiff worked with on various
pieces of legislation.

**Second Count – Lisa MacCarley and James Schnieders – Libel and
Invasion of Privacy**

396.  Plaintiff incorporates each of the above allegations.

397.  The defendants Lisa MacCarley and James Schnieders made nu-
merous defamatory statements/allegations of fact about the
plaintiff discussed in the First Cause of Action (Perjury) and

**COMPLAINT FOR DAMAGES**

the Second Cause of Action (Attorney Misconduct). The facts disclosed were false, and portrayed the plaintiff in a false light.

    a. False accusation of Mr. Ritch illegally obtaining Marshall Stern's signature on a General Power of Attorney after Mr. Stern was incompetent. (2 counts in two pleading)

    b. False accusations of Mr. Ritch using the illegally obtained General Power of Attorney to illegally take money from the estate of Marshall Stern (i.e. embezzlement). (1 count in one pleading)

    c. Falsely alleged that Mr. Ritch had illegally removed $100,000.00 from Mr. Stern's estate (i.e. embezzled) and that they, Jim Schnieders and Lisa MacCarley, had no knowledge of the whereabouts of that money. At the time of the pleading, Schnieders was in possession of the $100,000.00. (1 count in one pleading)

    d. Falsely alleged that Mr. Ritch had illegally taken $405,000 from Marshall Stern for his own benefit (i.e. embezzlement). (3 counts in 3 separate pleadings)

    e. Falsely accused Mr. Ritch of either forging Marshall Stern's signature on documents signed in 2004 or of applying undue influence on Marshall Stern to sign the documents so that Mr. Ritch could then have access to the Marshall Stern's assets for his own benefit. (4 counts in 4 separate pleadings)

**COMPLAINT FOR DAMAGES**

f. Falsely stating that Mr. Ritch had violated a court or-
der by not filing an accounting when the accounting was
in the court's file. (3 counts in 3 separate pleadings)

g. Falsely alleged that Mr. Ritch had not administered the
Trust according to the Trust provisions. (2 counts in 2
pleadings)

h. Falsely alleging that Mr. Ritch had not administered
the Trust solely in the interest of the beneficiaries;
but has instead has diverted funds for his own benefit.
(1 count in one pleading)

i. Falsely alleged that Mr. Ritch had not dealt impar-
tially with the three beneficiaries; but instead has
favored his wife over the other two beneficiaries. (1
count in one pleading)

j. Falsely alleged that Mr. Ritch had failed to make full
disclosure to the beneficiaries of his dealings with
the assets of the Trust, in direct violation of a non-
existent order of the court. (1 count in one pleading)

398. The defendants Lisa MacCarley and James Schnieders pub-
lished the defamatory statements in three separate pleadings
which were filed on the court and thus became part of the
court record and available to the public.

399. The statements/alleged facts placed a false light on Mr.
Ritch which would be highly offensive to a reasonable person.
The statement/alleged facts indicated that Mr. Ritch had "il-
legally" obtained a power of attorney to steal the assets of
Marshall Stern's estate. Every one of the allegations is
highly offensive on its face and any reasonable person hearing

**COMPLAINT FOR DAMAGES**

1    the allegations/alleged facts would be appalled if they be-

2    lieved the false statements/alleged facts.

3    400.  The published statements were defamatory on their face.

4    401.  The defendants Lisa MacCarley and James Schnieders knew the

5    above statements were false and intentionally defamed plain-

6    tiff and invaded his privacy.

7    402.  The defendants, Lisa MacCarley and James Schnieders, pub-

8    lished the statements in reckless disregard of whether the

9    matters were false and defamed plaintiff.

10   403.  The defendants Lisa MacCarley and James Schnieders acted

11   negligently in failing to learn whether the matters published

12   was false and defamed plaintiff;

13   404.  If defendants Lisa MacCarley and James Schnieders did not

14   know if their statements/alleged facts were in fact false,

15   they acted with reckless disregard for whether the matter was

16   false and defamed plaintiff means that the defendants must

17   have had serious doubts about the truthfulness of the state-

18   ment at the time of the publication.

19   405.  If defendants Lisa MacCarley and James Schnieders did not

20   know if their statements/alleged facts were in fact false,

21   they acted negligently if they did not act reasonably in

22   checking on the truth or falsity or defamatory character of

23   the communication before publishing them.

24   406.  In doing the things herein alleged, defendants acted will-

25   fully and with intent to cause injury to the plaintiff. The

26   defendants were therefore guilty of malice, oppression, and

27   fraud in conscious disregard of plaintiff's rights, thereby

28   warranting an assessment of punitive damages in an amount ap-

**COMPLAINT FOR DAMAGES**

1  propriate to punish defendants and deter others from engaging

2  in similar misconduct.

3  407.  The false statements were defamatory and injured the Plain-

4  tiff's reputation with such notable individuals as Senators

5  Feinstein and Boxer whom the Plaintiff worked with on various

6  pieces of legislation.

7  **Third Count – Christopher Johnson, Andrea Hodges, and Herman**

8  **Stern – Libel and Invasion of Privacy**

9  408.  Plaintiff incorporates each of the above allegations.

10  409.  The defendants Christopher Johnson, Andrea Hodges, and Her-

11  man Stern made numerous defamatory statements/allegations of

12  fact about the plaintiff discussed in the First Cause of Ac-

13  tion (Perjury) and the Second Cause of Action (Attorney Mis-

14  conduct). The facts disclosed were false, and portrayed the

15  plaintiff in a false light.

16      a. False accusation of Mr. Ritch illegally obtaining Mar-

17         shall Stern's signature on a General Power of Attorney

18         when Mr. Stern was incompetent. (1 count in one plead-

19         ing)

20      b. False accusations of Mr. Ritch using the illegally ob-

21         tained General Power of Attorney to illegally take

22         money from the estate of Marshall Stern (i.e. embezzle-

23         ment). (1 count in one pleading)

24      c. Falsely alleged that Mr. Ritch filed a Restraining Or-

25         der against Andrea Hodges.  (1 count in one pleading)

26      d. Falsely accused Mr. Ritch of either forging Marshall

27         Stern's signature on documents signed in 2004 or of ap-

28         plying undue influence on Marshall Stern to sign the

**COMPLAINT FOR DAMAGES**

1        documents so that Mr. Ritch could then have access to

2        the Marshall Stern's assets for his own benefit. (2

3        counts in 2 separate pleadings)

4  410.  The defendants Christopher Johnson, Andrea Hodges, and Her-

5    man Stern published the defamatory statements in two separate

6    pleadings which were filed on the court and thus became part

7    of the court record and available to the public.

8  411.  The statements/alleged facts placed a false light on Mr.

9    Ritch which would be highly offensive to a reasonable person.

10    The statement/alleged facts indicated that Mr. Ritch had "il-

11    legally" obtained a power of attorney to steal the assets of

12    Marshall Stern's estate. Every one of the allegations is

13    highly offensive on its face and any reasonable person hearing

14    the allegations/alleged facts would be appalled if they be-

15    lieved the false statements/alleged facts.

16  412.  The published statements were defamatory on their face.

17  413.  The defendants Christopher Johnson, Andrea Hodges, and Her-

18    man Stern knew the above statements were false and intention-

19    ally defamed plaintiff and invaded his privacy.

20  414.  The defendants, Christopher Johnson, Andrea Hodges, and

21    Herman Stern, published the statements in reckless disregard

22    of whether the matters were false and defamed plaintiff.

23  415.  The defendants Christopher Johnson, Andrea Hodges, and Her-

24    man Stern acted negligently in failing to learn whether the

25    matters published was false and defamed plaintiff.

26  416.  If defendants Lisa Christopher Johnson, Andrea Hodges, and

27    Herman Stern did not know if their statements/alleged facts

28    were in fact false, they acted with reckless disregard for

**COMPLAINT FOR DAMAGES**

1    whether the matter was false and defamed plaintiff means that

2    the defendants must have had serious doubts about the truth-

3    fulness of the statement at the time of the publication.

4  417.  If defendants Christopher Johnson, Andrea Hodges, and Her-

5    man Stern did not know if their statements/alleged facts were

6    in fact false, they acted negligently if they did not act rea-

7    sonably in checking on the truth or falsity or defamatory

8    character of the communication before publishing them.

9  418.  In doing the things herein alleged, defendants acted will-

10    fully and with intent to cause injury to the plaintiff. The

11    defendants were therefore guilty of malice, oppression, and

12    fraud in conscious disregard of plaintiff's rights, thereby

13    warranting an assessment of punitive damages in an amount ap-

14    propriate to punish defendants and deter others from engaging

15    in similar misconduct.

16  419.  The false statements were defamatory and injured the Plain-

17    tiff's reputation with such notable individuals as Senators

18    Feinstein and Boxer whom the Plaintiff worked with on various

19    pieces of legislation.

20  **Fourth Count – David Coleman – Libel, Slander and Invasion of**

21  **Privacy**

22  420.  Plaintiff incorporates each of the above allegations.

23  421.  The defendants David Coleman made defamatory state-

24    ments/allegations of fact about the plaintiff discussed in the

25    Second Cause of Action (Attorney Misconduct) before the court.

26    The alleged facts that were disclosed were false, and por-

27    trayed the plaintiff in a false light.

28

**COMPLAINT FOR DAMAGES**

a. False accusation that Mr. Ritch had been convicted of a felony in Florida. (1 count slander at hearing on December 23, 2005)

b. In his opposition to the appointment of Mr. Ritch, Mr. Coleman alleged that Mr. Ritch had failed to pay Marshall Stern's State and Federal Taxes on time. This is a false statement by David Coleman, who was basing the allegation on the attempted payment date on the checks of July 5, 2005. (1 count of liable in one pleading)

422. The defendant David Coleman made his oral defamatory statements in two separate hearings before the court and thus became part of the court record and available to the public.

423. The defendant David Coleman made his written defamatory statements in two pleadings which was filed with the court and thus became part of the court record and available to the public.

a. David Coleman falsely alleged that Mr. Ritch's financial mismanagement had caused the checks written on the Trust's accounts to be returned for insufficient funds. (3 counts in one pleading)

b. David Coleman falsely alleged that Mr. Ritch had illegally used Trust assets for his own purpose. (5 counts in 2 pleadings)

c. David Coleman has falsely accused Mr. Ritch of failing to repay loans made by Marshall Stern. (1 count)

424. The statements/alleged facts placed a false light on Mr. Ritch which would be highly offensive to a reasonable person. The statement/alleged facts indicated that Mr. Ritch had a

**COMPLAINT FOR DAMAGES**

1   felony criminal record. This allegation is highly offensive on

2   its face and any reasonable person hearing the allega-

3   tions/alleged facts would be appalled if they believed the

4   false statements/alleged facts.

5   425.  The verbal and written statements were defamatory on their

6   face.

7   426.  The defendant David Coleman Stern knew the above statements

8   were false and intentionally defamed plaintiff and invaded his

9   privacy.

10  427.  The defendant David Coleman admitted at the January 12,

11  2006 hearing that he had made the accusations at the December

12  23, 2005 hearing with a reckless disregard of whether the mat-

13  ters were false and defamed plaintiff. (He stated that he had

14  not done sufficient research prior to making the false allega-

15  tions.)

16  428.  The defendant David Coleman acted negligently in failing to

17  learn whether the matters stated was false and defamed plain-

18  tiff.

19  429.  In doing the things herein alleged, defendant acted will-

20  fully and with intent to cause injury to the plaintiff. The

21  defendant was therefore guilty of malice, oppression, and

22  fraud in conscious disregard of plaintiff's rights, thereby

23  warranting an assessment of punitive damages in an amount ap-

24  propriate to punish defendants and deter others from engaging

25  in similar misconduct.

26  430.  The false statements were defamatory and injured the Plain-

27  tiff's reputation with such notable individuals as Senators

28

**COMPLAINT FOR DAMAGES**

1   Feinstein and Boxer whom the Plaintiff worked with on various
2   pieces of legislation.

3   **FIFTH CAUSE OF ACTION – CIVIL ACTION FOR DEPRIVATION OF RIGHTS**
4   **AND CONSPIRACY AGAINST RIGHTS**
    **(42 U.S.C. § 1983[63] and 18 U.S.C. § 241[64])**

5
6   **First Cause of Action – Civil Rights Violation of 14th Amend-**
    **ment/Due Process – Guilt Must Be Proven Beyond A Reasonable**
7   **Doubt/Presumption of Innocence**

8   431.  Plaintiff incorporates each of the above allegations.

9   432.  RICKY RITCH ASSERTS THAT HE IS INNOCENT OF THE CHARGED
10  CRIMINAL CONTEMPT IN THAT THE COURT FAILED TO PROVE ALL (OR
11  ANY) OF THE REQUIRED ELEMENTS OF CRIMINAL AND/OR CIVIL CON-
12  TEMPT BEYOND A REASONABLE DOUBT AND THAT THE EXONERATING EVI-
13  DENCE WAS IN THE COURT RECORD BEFORE THE JUDGE.

14  433.  Mr. Ritch was found guilty of "criminal contempt" and thus
15  he was a "criminal defendant" and entitled to all Federal and
16  State Constitutional protections.

17  434.  There was no affidavit or declaration upon which an Order
18  to Show Cause was predicated. There was no indictment or in-
19  formation served on Mr. Ritch. Exhibit 16, a Minute Order from
20  the Court is the only evidence of the setting of an OSC.

21

22  [63] 42 U.S.C. § 1983 - Every person who, under color of any statute, ordinance, regulation, cus-
23  tom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be
    subjected, any citizen of the United States or other person within the jurisdiction thereof to the
24  deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall
25  be liable to the party injured in an action at law, suit in equity, or other proper proceeding for re-
    dress,
26

27  [64] 18 U.S.C. § 241 - If two or more persons conspire to injure, oppress, threaten, or intimidate
    any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or
28  enjoyment of any right or privilege secured to him by the Constitution or laws of the United
    States, or because of his having so exercised the same.

**COMPLAINT FOR DAMAGES**

435.   Exhibit 16 was never served on Mr. Ritch or his attorney. Therefore, the court never had jurisdiction over Mr. Ritch for the contempt prosecution.

436.   Criminal Contempt has three elements. None of these elements was proven beyond a reasonable doubt.

   a. The rendition of a valid order.   (The court's order was unconstitutionally overbroad, required an impossibility, and the court lacked jurisdiction to make the order as it was written.)

   b. The defendant's actual knowledge of the order. (The written order was never served on the defendant as required for a contempt proceeding.)

   c. The defendant's willful disobedience of the order. (Not proven beyond a reasonable doubt. There was exonerating evidence in the court's record.)

437.   The first element of a contempt charge cannot be proven beyond a reasonable doubt in the current case. The Court, i.e. Commissioner Penny, made an oral order on July 13, 2005 which was invalid on its face, in that the order exceeded the court's authority to order an accounting of the Estate of Marshall Stern. Since the order is invalid, there is no contempt for the violation of the order[65].

   a. The Court ordered an accounting in excess of two-years and its statutory limit for an accounting is one year.

---

[65] "A contempt adjudication cannot be upheld if the order violated was fatally defective. No one can be punished for disobedience of a void order." (Fortenbury v. Superior Court (1940) 16 Cal. 2d 405 [106 P.2d 411]; Brady v. Superior Court (1962) 200 Cal. App. 2d 69 [19 Cal. Rptr. 242].) Mitchell v. Superior Court of Los Angeles County, 28 Cal. App. 3d 759, 104 Cal. Rptr. 921 (Cal.App.Dist.2 11/16/1972)

COMPLAINT FOR DAMAGES

1   Therefore the court lacked jurisdiction to make the or-
2   der as written.

3      b. The court's order demanded an impossibility, in that
4   the court ordered an accounting from Mr. Ritch for a
5   period of time, from June 1, 2003 to April 2004, during
6   which he had no control over or access to the estate or
7   Trust of Marshall Stern.

8      c. The court ordered an impossibility in that all of the
9   assets of the estate had been transferred into the
10  Trust when the Trust was formed in 1994. Therefore,
11  there were no assets in the Estate to make an account-
12  ing of. The court was informed of this in the account-
13  ing filed on November 18, 2005.

14     d. The court's order is invalid for being overly broad.

15  438.  The court never served Mr. Ritch with a written copy of the
16  July 13, 2005 order of the court. Therefore, Mr. Ritch was
17  never properly placed under an obligation to perform the order
18  necessary for a contempt conviction.

19     a. A verbal order is not binding on the alleged contemnor.
20  Only a written order that is served is binding. Since
21  he was never served with the written order Mr. Ritch
22  could not be found in contempt of the order he was
23  never served.

24  439.  The "willful disobedience of a court order" portion of the
25  third element of a contempt charge cannot be proven in the
26  current case.

27     a. Mr. Ritch attempted to file an accounting in August.

28

**COMPLAINT FOR DAMAGES**

i. In Exhibit 16, the court acknowledged that Mr. Ritch had attempted to file an accounting in August 2005. The accounting may have been defective, but it is evidence of a willingness to comply with the court's order and thereby precludes a finding of "willful disobedience" in the originating document of the contempt proceeding.

b. When the opposing counsels objected to the August accounting for being in the wrong format and for the wrong period of time, Mr. Ritch submitted a second accounting in the proper format that was in compliance with the order as written on July 13, 2005.

c. Both accountings were in the record before the Court on the date of the contempt prosecution.

d. Since the Accounting was filed with the Court, there was no disobedience of the Court's order.

440. Since the accounting was filed in compliance with the court order as written and statutory standards, there was no "willful disobedience" of the court's order and therefore that portion of the third element of a contempt complaint was not satisfied in the current case.

a. The existence of both Accountings in the Court's record is evidence that there was no contempt, willful or otherwise, on the part of Mr. Ritch and is thus exonerating evidence. This evidence was before Judge Bobb and she disregarded it in her rush to convict Mr. Ritch.

441. Since the Court and the "Special Prosecutor" failed to present any evidence of the three required elements necessary for

**COMPLAINT FOR DAMAGES**

a contempt conviction beyond a reasonable doubt and the existence of the "exonerating evidence" in the Court's record, the conviction of Mr. Ritch was a denial of his Constitutional Due Process Rights, i.e. "Presumption of Innocence" and is evidence of a conspiracy to deny Mr. Ritch of his Constitutional Rights in violation of 18 U.S.C. § 241.

442.  Since Plaintiff Ricky Ritch was judged guilty by Judge Aviva Bobb, who initiated criminal contempt charges against him, the error of finding Mr. Ritch guilty "beyond a reasonable doubt" when there are serious questions concerning all three elements of a contempt charge and the existence of exonerating evidence in the Court's Record, the violation of Mr. Ritch's Constitutional Due Process Rights is not harmless error, but is evidence of the invalidity of the entire prosecution of Mr. Ritch and Judge Bobb's participation in the conspiracy against Mr. Ritch.

**Second Count – Civil Rights Violation of 14th Amendment – Due Process/Fifth Amendment -- Failure to Give Notice of Criminal Prosecution.**

443.  Plaintiff incorporates each of the above allegations.

444.  Mr. Ritch was found guilty of "criminal contempt" and thus he was a "criminal defendant" and entitled to all Federal and State Constitutional protections.

445.  There was no criminal complaint filed in municipal court by either Judge Bobb or Davis Coleman as the "Special Prosecutor" as required by law for a criminal contempt prosecution[66].

---

[66] Pen. Code, §§ 17, 166, subd. (a)(4), 949, 1462; In re McKinney (1968) 70 Cal. 2d 8, 13-14, 73 Cal. Rptr. 580, 447 P.2d 972; see also People v. McAlister (1976) 54 Cal. App. 3d 918, 927, 126 Cal. Rptr. 881; People v. Mulholland (1940) 16 Cal. 2d 62, 66, 104 P.2d 1045; People v. Palo-

**COMPLAINT FOR DAMAGES**

446.  Exhibit 16, the closest thing to an indictment or an information in the court's record, was never served on Mr. Ritch or his attorney.

447.  At no time of the criminal contempt proceeding against him was Ricky Ritch given any warning that he was being criminally prosecuted and that he had a right not to testify in the proceedings.

448.  As can be seen from Exhibit 16, even if it had been served on Mr. Ritch, it created confusion by stating, "HEARING[67] IS SET FOR OCTOBER 3, 2005 at 11:00 Am, Dept. 11 [to be heard in conjunction with the Petition of Donna & Ricky Ritch for Removal of Temporary Conservator]".

449.  Neither the Judge nor David Coleman the "Special Prosecutor" appointed by Judge Bobb informed Mr. Ritch that he was being criminally prosecuted for contempt or that the proceeding had become a "criminal contempt proceeding". Instead Judge Bobb and the Special Prosecutor maintained the proceedings as if they were evaluating Mr. Ritch's petition to be the conservator for Marshall Stern.

    i. Mr. Ritch's confusion is justified since Exhibit 16 had never been served on him and since the contempt prosecution was being held in conjunction with his petition for the removal of the temporary conservator.

mino (1940) 41 Cal. App. 2d 155, 156, 106 P.2d 66; In re Joiner (1960) 180 Cal. App. 2d 250, 254-255, 4 Cal. Rptr. 667.) People v. Gonzalez, 32 Cal.App.4th 533, 36 Cal.App.4th 870, 41 Cal.App.4th 7, 38 Cal.Rptr.2d 235 (Cal.App. Dist.2 02/17/1995)

[67] For the OSC.

**COMPLAINT FOR DAMAGES**

450.  No verbal or written warnings were provided to Mr. Ritch of the criminal nature of the proceedings.

451.  On the date of his sentencing, January 12, 2006, Judge Bobb had not decided what type of contempt, civil or criminal; she had found Mr. Ritch guilty of on December 23, 2005.

452.  Since Judge Aviva Bobb and the Special Prosecutor both failed to inform Mr. Ritch that he was the defendant in a criminal proceeding, they denied Mr. Ritch his Fourth, Fifth, Sixth, Seventh, and Eighth Amendment Rights and denied him his Due Process Rights.

453.  Since Plaintiff Ricky Ritch was judged guilty by Judge Aviva Bobb, who initiated criminal contempt charges against him, the error of denying Mr. Ritch notice that he was being criminally prosecuted is not harmless error, but is evidence of the invalidity of the entire prosecution of Mr. Ritch and Judge Bobb's participation in the conspiracy against Mr. Ritch.

**Third Count - Civil Rights Violation of 14th Amendment/Fifth Amendment - Failure to Give Self-Incrimination Warning**

454.  Plaintiff incorporates each of the above allegations.

455.  Mr. Ritch was found guilty of "criminal contempt" and thus he was a "criminal defendant" and entitled to all Federal and State Constitutional protections.

456.  At no time during the criminal contempt proceeding against him was Ricky Ritch given any warning that he was being criminally prosecuted and that he had a right not to testify in the proceedings.

**COMPLAINT FOR DAMAGES**

457.   Neither Judge Bobb nor David Coleman the "Special Prosecu-
tor" appointed by Judge Bobb informed Mr. Ritch that he was
being criminally prosecuted for contempt and informed his of
his right not to testify.

458.   Both Judge Bobb and the Special Prosecutor conducted the
proceedings as if they were evaluating Mr. Ritch's petition to
be the conservator for Marshall Stern, i.e. a civil proceed-
ing. (See Exhibit 16) No verbal or written warnings were pro-
vided to Mr. Ritch that the proceedings were criminal in na-
ture.

459.   Since Judge Aviva Bobb and the Special Prosecutor both
failed to inform Mr. Ritch of his right not to testify in a
criminal proceeding, they denied Mr. Ritch his Fifth Amendment
Rights against self incrimination[68].

460.   Since both Aviva Bobb and David Coleman (the Special Prose-
cutor) both failed to give Mr. Ritch his Constitutional Rights
warnings, as they are required to do by law, this is evidence

---

[68] Fifth Amendment of the United States Constitution, "which provides: `No person . . . shall be compelled in any criminal case to be a witness against himself . . . .' California secures the right against self-incrimination constitutionally (Cal. Const., art. I, § 15) and by statute (see Evid. Code, § 940 [`To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him.'])." (People v. Macias (1997) 16 Cal.4th 739, 748; see also People v. Cahill (1993) 5 Cal.4th 478, 486.) "This principle has been construed to allow assertion of the privilege against self-incrimination ` "in any proceeding, civil or criminal, administrative or judicial, in-vestigatory or adjudicatory . . . ." [Citations.]' [Citation.] Privileged matters thus lie beyond the reach of discovery and trial courts may not compel individuals to make responses that they rea-sonably believe could tend to incriminate them or subject them to criminal prosecution." (Fuller v. Superior Court (2001) 87 Cal. App.4th 299, 305; see also Segretti v. State Bar (1976) 15 Cal.3d 878, 886.)

COMPLAINT FOR DAMAGES

of a conspiracy to deny Mr. Ritch his Constitutional Rights and is a violation of 18 U.S.C. § 241.

461. Since Plaintiff Ricky Ritch was judged guilty by Judge Aviva Bobb, who had initiated the criminal contempt charges against him, the error of denying Mr. Ritch notice of his right not to testify is not harmless error, but is evidence of the invalidity of the entire prosecution of Mr. Ritch and Judge Bobb's participation in the conspiracy against Mr. Ritch.

**Fourth Count - Civil Rights Violation of 14th Amendment/Due Process - Criminal Contempt Trial Not Held Before an Unbiased Judge**

462. Plaintiff incorporates each of the above allegations.

463. Mr. Ritch was found guilty of "criminal contempt" and thus he was a "criminal defendant" and entitled to all Federal and State Constitutional protections.

464. As a "criminal contempt" defendant, Ricky Ritch was entitled to a fair hearing before an impartial judge[69].

465. Plaintiff Ricky Ritch was prosecuted by Los Angeles County Superior Court Judge Aviva Bobb, who has consistently demonstrated a bias against Mr. Ritch during the proceedings. By law, contempt is a misdemeanor and is to be tried in Municipal Court.

---

[69] Thus, for instance, this Court has found that defendants in criminal contempt proceedings must be . . . given a public trial before an unbiased judge, In re Oliver, 333 U.S. 257 (1948). Young V. United States Ex Rel. Vuitton Et Fils S. A. Et Al., 107 S. Ct. 2124, 481 U.S. 787 (U.S. 05/26/1987).

COMPLAINT FOR DAMAGES

466.  Judge Bobb failed to transfer the contempt proceedings to another Judge, but prosecuted the case herself.

467.  Since Judge Bobb was not an impartial judge and she thereby denied Mr. Ritch his Constitutional Rights to a fair trial before an impartial judge and denied him his Constitutional Right to Due Process.

468.  Since Plaintiff Ricky Ritch was judged guilty by Judge Aviva Bobb the error of denying Mr. Ritch a hearing before an impartial judge is not harmless error, but is evidence of the invalidity of the entire prosecution of Mr. Ritch and Judge Bobb's participation in the conspiracy against Mr. Ritch.

### Fifth Count – Civil Rights Violation of 14th Amendment/Sixth Amendment Right to Jury Trial.

469.  Plaintiff incorporates each of the above allegations.

470.  Mr. Ritch was found guilty of "criminal contempt" and thus he was a "criminal defendant" and entitled to all Federal and State Constitutional protections.

471.  As a "criminal defendant", Ricky Ritch was entitled to a fair hearing before an impartial jury.

472.  At no time in the proceedings was Ricky Ritch informed of his right to a jury trial by either Judge Bobb or David Coleman as the Special Prosecutor and was thereby denied an opportunity to have his case heard before an impartial jury.

473.  Since Judge Aviva Bobb and David Coleman denied Mr. Ritch an impartial jury they thereby denied Mr. Ritch his Constitutional Rights to a fair trial before an impartial jury.

474.  Since both Aviva Bobb and David Coleman (the Special Prosecutor) both failed to give Mr. Ritch his Constitutional Rights

**COMPLAINT FOR DAMAGES**

1    warnings, as they are required to do by law, this is evidence

2    of a conspiracy to deny Mr. Ritch his Constitutional Rights

3    and is a violation of 18 U.S.C. § 241.

4    475.  Since Plaintiff Ricky Ritch was judged guilty by Judge

5    Aviva Bobb the error of denying Mr. Ritch a jury trial is not

6    harmless error, but is evidence of the invalidity of the en-

7    tire prosecution of Mr. Ritch and Judge Bobb's participation

8    in the conspiracy against Mr. Ritch.

**Sixth Count – Civil Rights Violation of 14th Amendment/Due Process –Appointment of Opposing Counsel in Civil Case as "Special Prosecutor"**

476.  Plaintiff incorporates each of the above allegations.

477.  Mr. Ritch was found guilty of "criminal contempt" and thus he was a "criminal defendant" and entitled to all Federal and State Constitutional protections.

478.  In the current case, Judge Bobb, apparently spontaneously said that she needed a "Special Prosecutor". David Coleman who was representing Howard Stern, an objector to the appointment of Mr. Ritch, quickly volunteered to perform that duty.

479.  Judge Bobb then appointed David Coleman as the "Special Prosecutor."

480.  Subsequent to the prosecution of Ricky Ritch, which was camouflaged as a Conservatorship Proceeding (civil proceeding not a criminal proceeding), Judge Bobb ordered Mr. Ritch to pay Howard Stern, David Coleman's client, $6,640.00 for 16.6 hours of work preparing to prosecute Mr. Ritch. The Court failed to explain how Mr. Coleman knew that he had to spend 16.6 hours preparing to "volunteer to prosecute" Mr. Ritch prior to the hearing, since Judge Bobb apparently decided on

**COMPLAINT FOR DAMAGES**

1    the bench that she needed a "Special Prosecutor". (Exhibits 18

2    & 19) unless there had been discussed above, there had been an

3    illegal ex parte communication between Mr. Coleman and Judge

4    Bobb prior to the hearing.

5   481.   This case is a demonstration of the concerns of the Supreme

6    Court in <u>Young v. United States</u>. The primary of these is the

7    appearance of a "lack of justice". When the appointment of an

8    adverse party's counsel as a "Special Prosecutor" is combined

9    the lack of notice of the criminal contempt proceedings and

10    his Constitutional Rights against self-incrimination, the de-

11    nial of a jury trial, not being tried before an impartial

12    judge, the "Special Prosecutor" being allowed to call Mr.

13    Ritch as a witness, and then being allowed to treat Mr. Ritch

14    as a hostile witness as if it were an ordinary civil case, an

15    actual "lack of justice" occurred and not just its appearance.

16   482.   The Supreme Court in <u>Young</u> also expressed its concern that

17    the process of appointing an opposing counsel could result in

18    improper actions occurring. This is a case in which the fears

19    of the Supreme Court were realized in that the Court's Con-

20    tempt power was being used to extort control of the Trust from

21    Mr. Ritch.

22      a. In the current case, as will be discussed under the

23        Cause of Action for Extortion, below, the Special

24        Prosecutor along with the other opposing counsels at-

25        tempted to wrest control of the Marshall Stern Living

26        Trust away from Mr. Ritch by informing his attorney

27        that they could arrange for Mr. Ritch to avoid five-

28        days in jail if he would turn over the Trust to them.

     **COMPLAINT FOR DAMAGES**

483. The Supreme Court held that the appointment of an opposing counsel as a "Special Prosecutor" is not harmless error and therefore the conduct is on its face is Unconstitutional. Id.

484. Since Judge Bobb appointed David Coleman, an opposing counsel, as the "Special Prosecutor", Judge Bobb denied Mr. Ritch his Due Process Rights which was not harmless error, but is evidence of the invalidity of the entire prosecution of Mr. Ritch and Judge Bobb's participation in the conspiracy against Mr. Ritch.

### Seventh Count - Civil Rights Violation of 14th Amendment/Due Process - Allowing Special Prosecutor to Call Criminal Defendant as Witness

485. Plaintiff incorporates each of the above allegations.

486. Mr. Ritch was found guilty of "criminal contempt" and thus he was a "criminal defendant" and entitled to all Federal and State Constitutional protections.

487. In the current case Judge Bobb allowed David Coleman, acting as the "Special Prosecutor" to call Mr. Ritch as a witness as in a civil case.

488. Since Mr. Ritch had not been informed that he was being prosecuted for criminal contempt, but believed that the questioning only concerned his petition to be the conservator for Marshall Stern, neither Mr. Ritch nor his attorney objected to Mr. Ritch being called as a "civil trial" witness.

489. It was only after the questioning by the "Special Prosecutor" that Judge Bobb informed Mr. Ritch that she was finding him in "criminal" contempt of court.

490. The Court by allowing the Special Prosecutor to call Mr. Ritch, a criminal defendant, as a witness is a violation of

**COMPLAINT FOR DAMAGES**

1  the Fifth Amendment and denied Mr. Ritch his Due Process

2  Rights.

3  491.  Since both Aviva Bobb and David Coleman (the Special Prose-

4  cutor) both failed to give Mr. Ritch his Constitutional

5  Rights, as they are required to do by law, this is evidence of

6  a conspiracy to deny Mr. Ritch his Constitutional Rights and

7  is a violation of 18 U.S.C. § 241.

8  492.  Since Plaintiff Ricky Ritch was judged guilty by Judge

9  Aviva Bobb the error of allowing the Special Prosecutor to

10  call Mr. Ritch, a criminal contempt defendant, as a witness

11  against himself is not harmless error, but is evidence of the

12  invalidity of the entire prosecution of Mr. Ritch and Judge

13  Bobb's participation in the conspiracy against Mr. Ritch.

14  **Eighth Cause of Action - Civil Rights Violation of 14th Amend-**
15  **ment/Due Process - Special Prosecutor Allowed To Treat Defendant**
    **as a "Hostile Witness"**

16

17  493.  Plaintiff incorporates each of the above allegations.

18  494.  Mr. Ritch was found guilty of "criminal contempt" and thus

19  he was a "criminal defendant" and entitled to all Federal and

20  State Constitutional protections.

21  495.  The Court granted the Special Prosecutor authority to treat

22  Mr. Ritch, a criminal defendant, as a "hostile witness" as if

23  the action were a civil case and not a criminal prosecution.

24  This allowed the Special Prosecutor the freedom to ask leading

25  questions and the court required that Mr. Ritch answer all of

26  the Special Prosecutor's questions.

27  496.  Since Mr. Ritch was treated as a "hostile witness" he was

28  denied the right not to testify and was denied his right

**COMPLAINT FOR DAMAGES**

1    against self-incriminating testimony. This denied Mr. Ritch

2    his Fifth Amendment Rights and his Right to Due Process.

3    497.  Since both Aviva Bobb and David Coleman (the Special Prose-

4    cutor) both failed to give Mr. Ritch his Constitutional

5    Rights, as they are required to do by law, this is evidence of

6    a conspiracy to deny Mr. Ritch his Constitutional Rights and

7    is a violation of 18 U.S.C. § 241.

8    498.  Since Plaintiff Ricky Ritch was judged guilty by Judge

9    Aviva the error of denying Mr. Ritch his Fifth Amendment

10   Rights not to testify and right against self incrimination se-

11   rious questions of justice and is not harmless error, but is

12   evidence of the invalidity of the entire prosecution of Mr.

13   Ritch and Judge Bobb's participation in the conspiracy against

14   Mr. Ritch.

15   ### SIXTH CAUSE OF ACTION - EXTORTION

16   **Judge Bobb, Judge MacLaughlin, Ronald Berman, Lisa MacCarley,**
     **David Coleman, Los Angeles County Superior Court**

17   **(Penal Code §§ 518 - 524)**[70]

18   499.  Plaintiff incorporates each of the above allegations.

19   500.  In the courthouse hallway, prior to the sentencing hearing

20   on January 12, 2006, Ronald Berman, Lisa MacCarley, David

21   Coleman, and Christopher Johnson approached Mr. Agajanian, Mr.

22

23   _____

24   [70]Penal Code § 508 - Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or un-

25   der color of official right.
     Penal Code § 519 - Fear, such as will constitute extortion, may be induced by a threat, either:

26       1. To do an unlawful injury to the person or property of the individual threatened or of a third person; or,

27       2. To accuse the individual threatened, or any relative of his, or member of his family, of any crime; or,

28       3. To expose, or to impute to him or them any deformity, disgrace or crime;

**COMPLAINT FOR DAMAGES**

1    Ritch's attorney. They informed Mr. Agajanian that if Mr.

2    Ritch would turn over the position of Trustee to them, "It

3    would go a long ways towards keeping him out of jail." Or

4    words to that effect.

5    501.  Judge Bobb, from the bench, told Mr. Ritch that if he

6    turned over the Trust, "It would go a long ways towards keep-

7    ing him out of jail." Or words to that effect.

8    502.  As has been discussed above, the conviction of Mr. Ritch

9    for contempt was unlawfully obtained. One of the attorneys ap-

10   proaching Mr. Agajanian, David Coleman, had been directly in-

11   volved as the "Special Prosecutor" in procuring the illegal

12   conviction.

13        a. The involvement of David Coleman, the "Special Prosecu-

14           tor" appointed by Judge Bobb, in the extortion attempt

15           is evidence that the Supreme Court's concern in Young[71]

16           that an interested party's attorney being appointed as

17           a Special Prosecutor could lead to unlawful extortion

18           of an opposing party was a valid concern.

19   503.  The opposing attorneys were conspiring with Judge Bobb to

20   obtain control over the Trust by unlawfully threatening Mr.

21   Ritch with jail (where as will be shown below in the Cause of

22   action for Battery he was subject to a life threatening bat-

23   tery at the behest of "the Judge") thereby they were unlaw-

24

_____

25   [71] These claims theoretically could have created temptation to use the criminal investigation to
26   gather information of use in those suits, and could have served as bargaining leverage in obtain-
     ing pleas in the criminal prosecution. In short, as will generally be the case, the appointment of
27   counsel for an interested party to bring the contempt prosecution in this case at a minimum cre-
     ated opportunities for conflicts to arise, and created at least the appearance of impropriety.
28   Young V. United States Ex Rel. Vuitton Et Fils S. A. Et Al., 107 S. Ct. 2124, 481 U.S. 787
     (U.S. 05/26/1987)

**COMPLAINT FOR DAMAGES**

1    fully threatening him with injury to his person and his lib-

2    erty.

3    504. The attorneys and Judge Bobb had already accused and im-

4    puted Mr. Ritch of a crime, i.e. contempt of court, which has

5    been discussed above was unfounded and the conviction was

6    unlawfully obtained.

7    505. Judge Bobb, in her position as a Superior Court Judge, un-

8    der the color of official right, assisted in the attempted ex-

9    tortion of Mr. Ritch by finding him guilty of criminal con-

10   tempt in an illegal court proceeding in which Mr. Ritch was

11   denied all of his Constitutional Due Process Rights and Pro-

12   tections by Judge Bobb.

13   506. The above threats and actions were made in an effort to

14   force Mr. Ritch into relinquishing the Trust to them so that

15   they would have control over and access over the assets in the

16   Trust.

17   507. Presiding Judge MacLaughlin was informed of the improper

18   actions of Judge Bobb and he has to date apparently taken no

19   action to prevent her improper actions. Therefore, it appears

20   to be a custom, practice, or policy within the Los Angeles

21   County Superior Court for the judges to use their contempt

22   powers to threaten parties with criminal prosecution, convic-

23   tion, and threats of incarceration in an effort to assist

24   those attorneys and parties they have a preference for.

25   508. In doing the things herein alleged, defendants acted will-

26   fully and with intent to cause injury to the plaintiff. The

27   defendants were therefore guilty of malice, oppression, and

28   fraud in conscious disregard of plaintiff's rights, thereby

**COMPLAINT FOR DAMAGES**

warranting an assessment of punitive damages in an amount ap-
propriate to punish defendants and deter others from engaging
in similar misconduct.

### SEVENTH CAUSE OF ACTION - FALSE IMPRISONMENT/KIDNAPPING

**First Count - Judge Bobb, Judge MacLaughlin, Ronald Berman, Lisa MacCarley, David Coleman, Los Angeles County Superior Court (18 U.S.C. § 1201[72] and California Penal Code §§ 182 and 236[73])**

509.  Plaintiff incorporates each of the above allegations.

510.  Mr. Ritch filed the accounting in compliance with the Court's order. Therefore there was no willful disobedience of the Court's order. Since there was no willful disobedience of the Court's order, there was no possibility for a valid "beyond a reasonable doubt" guilt determination.

511.  Due to her conduct of the criminal contempt prosecution, i.e. appointing an opposing counsel as a "Special Prosecutor", denying the plaintiff of his rights not to testify, his right against self-incrimination, his right to a jury trial, his right to an impartial judge, etc. discussed above, Judge Bobb took extraordinary steps to convict the plaintiff of criminal contempt.

---

[72] 18 U.S.C. § 1201 - (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person.
(c) If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

[73] Penal Code § 236. False imprisonment is the unlawful violation of the personal liberty of another.

**COMPLAINT FOR DAMAGES**

512.  Mr. Ritch's conviction which resulted in his incarceration/confinement was unlawful. Therefore, Mr. Ritch's incarceration/confinement was unlawful as well.

513.  David Coleman, the "Special Prosecutor" appointed by Judge Bobb, Lisa MacCarley, and Ronald Berman were part of the group who approached Mr. Agajanian with a proposal that if Mr. Ritch would give them the control over the Trust they would, "Talk to Judge Bobb about Mr. Ritch not going to jail," or words to that effect.  Therefore, Mr. Ritch's imprisonment was part of an illegal conspiracy to extort control of Marshall Stern's Trust from Mr. Ritch.

514.  Judge Bobb acting under the color of her office, ordered that Mr. Ritch could only be released into the custody of Marshall Stern. Since Marshall Stern is 85 years old and in a nursing home, this order was an obvious attempt by Judge Bobb to cause further delays in Mr. Ritch's release and to cause further imprisonment. This was a knowing effort to injure Mr. Ritch by Judge Bobb, since she was the Judge hearing Mr. Stern's conservatorship case and thus she knew he was not competent or physically able to go to the jail and to sign for Mr. Ritch's release.

515.  The attorneys were conspiring with Judge Bobb to obtain control over the Trust by unlawfully threatening Mr. Ritch with imprisonment (where as will be shown below he was subject to a battery which caused serious bodily injury at the behest of "the Judge") thereby they unlawfully imprisoned him with intent to cause him injury to his person and his liberty.

**COMPLAINT FOR DAMAGES**

516.   The attorneys and Judge Bobb had already accused and imputed Mr. Ritch of a crime, i.e. contempt of court, which has been discussed above was unfounded and the conviction was unlawfully obtained.

517.   Presiding Judge MacLaughlin was informed of the improper actions of Judge Bobb and he has to date apparently taken no action to prevent her improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to use their contempt powers to falsely imprison parties in an effort to assist those attorneys and parties they have a preference for.

518.   In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Second Count − Judge Bobb, Judge MacLaughlin, Ronald Berman, Lisa MacCarley, David Coleman, Los Angeles County Superior Court, Los Angeles County Sheriff's Department, Sheriff Baca (18 U.S.C. § 1201 and California Penal Code §§ 182 and 236)**

519.   Plaintiff incorporates each of the above allegations.

520.   Plaintiff and plaintiff's counsel were informed by representatives of the Los Angeles County Sheriff's Department, that due to over crowding in the jail, inmates were doing $1/10^{th}$ of the their sentences. (An example given by the Sheriffs at the jail was that an inmate sentenced to 90 days did one day.)

178                                    **COMPLAINT FOR DAMAGES**

521.  Mr. Ritch was kept in In-Processing in the jail for three-days. His file was not transferred to the medical department where he was transferred due to the medical problems he reported to the Sheriff's Department when he turned himself over to them to serve his sentence, i.e. his broken back and damaged shoulder. Because his file was not transferred with him, he was kept in In-Processing unable to talk with his attorney or his family for his entire imprisonment.

522.  Mr. Ritch's attorney's associate made numerous calls and visits to the jail in an effort to speak with Mr. Ritch. Since he was in In-Processing, Mr. Ritch was never able to speak with his attorney during his entire incarceration. During one of the conversations with the jail's Watch Captain, Mr. Ritch's attorney was informed, "He's in the medical section of In-Processing. We can keep him there as long as we think is necessary to stabilize him. We bought him, he is ours." Or words to that effect.

523.  Mr. Ritch's counsel was informed several times that the jail could keep Mr. Ritch as long as they wanted to ensure that Mr. Ritch was physically fit to leave the jail. Since he was fit when he surrendered himself into the Sheriff's custody, except for his broken back and shoulder which were under control via medical treatment and medication, Mr. Ritch should have been fit while he was in custody and when he was released.

524.  Mr. Ritch believes, based on his treatment by officers in the jail, that the miss-location of his file which resulted in him being in custody for three-days was intentional. He was

**COMPLAINT FOR DAMAGES**

1   consistently threatened with violence and was verbally abused

2   by the officers in the jail. It was only when his attorney

3   threatened a lawsuit that the threats stopped and suddenly his

4   file was found, in in-processing while he was upstairs in the

5   medical department, so they could out process him.

6   525.  When Mr. Ritch asked for his doctor ordered medication

7   while he was in custody, which he provided to the jail along

8   with medical reports from his doctor informing the jail of his

9   medical condition and his need for his medication, he was de-

10  nied his medications and was informed, "This is what you get

11  for messing with the Judge."

12  526.  During his entire incarceration, Mr. Ritch was never given

13  any of his doctors prescribed medications for his back or his

14  shoulder.

15  527.  Due to the statement of the officers it appears that Mr.

16  Ritch's lengthy incarceration (3-day incarceration for a 5-day

17  sentence for Mr. Ritch compared to 1-day incarceration for a

18  ninety-day sentence for other inmates) was at the prompting of

19  Judge Bobb, in another of her messages to Mr. Ritch of her

20  willingness to hurt him in anyway necessary in order to force

21  him to relinquish the Trust to her co-conspirators. Therefore,

22  she is responsible for the increased incarceration caused by

23  actions of the Sheriff's Department.

24  528.  Since Judge Bobb works for the Los Angeles Superior Court

25  and is under the supervision of Presiding Judge MacLaughlin,

26  Judge Bobb's actions of inciting the false imprisonment of Mr.

27  Ritch must also be supported by the Superior Court and her su-

28  pervisor.

**COMPLAINT FOR DAMAGES**

529.  Mr. Ritch believes that it was Officer Yang, who is as-
signed as the bailiff for Judge Bobb, who informed Officer As-
torga that Judge Bobb wished for a message to be sent to Mr.
Ritch. Therefore Officer Yang was part of the conspiracy to
injure Mr. Ritch.

530.  The attorneys, Berman (court appointed PVP counsel), Mac-
Carley (attorney for the court appointed conservator), Coleman
(court appointed "Special Prosecutor"), and Johnson, and Jim
Schnieders (court appointed conservator) were conspiring with
Judge Bobb to obtain control over the Marshall L. Stern Trust
by unlawfully threatening Mr. Ritch with imprisonment (where
as will be shown below he was subject to battery at the behest
of "the Judge") thereby they unlawfully imprisoned him with
intent to cause injury to his person and his liberty.

531.  The attorneys and Judge Bobb had already accused and im-
puted Mr. Ritch of a crime, i.e. contempt of court, which has
been discussed above was unfounded and the conviction was
unlawfully obtained.

532.  Judge Bobb, in her position as a Superior Court Judge, un-
der the color of official right and the other attorneys,
falsely imprisoned Mr. Ritch by finding him guilty of criminal
contempt in an illegal court proceeding in which Mr. Ritch was
denied all of his Due Process Rights and Protections by Judge
Bobb in an effort to exert force and the threat of force on
Mr. Ritch to turnover the Trust to the opposing counsels.

533.  The above threats and actions were made in an effort to
force Mr. Ritch into relinquishing the Trust to them so that
they would have control and access over the assets in the

**COMPLAINT FOR DAMAGES**

1  Trust for their own benefit and to the harm of Marshall Stern
2  and his heirs.

3  534.  Presiding Judge MacLaughlin was informed of the improper
4  actions of Judge Bobb and he has to date apparently taken no
5  action to prevent her improper actions. Therefore, it appears
6  to be a custom, practice, or policy within the Los Angeles
7  County Superior Court for the judges to use their contempt
8  powers to falsely imprison parties in an effort to assist
9  those attorneys and parties they have a preference for to ex-
10  tort their victims.

11  535.  In doing the things herein alleged, defendants acted will-
12  fully and with intent to cause injury to the plaintiff. The
13  defendants were therefore guilty of malice, oppression, and
14  fraud in conscious disregard of plaintiff's rights, thereby
15  warranting an assessment of punitive damages in an amount ap-
16  propriate to punish defendants and deter others from engaging
17  in similar misconduct.

18  **Third Count — Judge Bobb, Commissioner Penny, Judge MacLaughlin,**
19  **Ronald Berman, Lisa MacCarley, David Coleman, Magnolia Gardens,**
   **Los Angeles County Superior Court**
20  **(18 U.S.C. § 1201 and California Penal Code §§ 182 and 236)**

21  536.  Plaintiff incorporates each of the above allegations.

22  537.  Defendant Jim Schnieders, operating under the temporary
23  conservatorship granted to him by Commissioner Penny in viola-
24  tion if Probate Code § 1810, moved Marshall Stern to Magnolia
25  Gardens without court authorization as required by Probate
26  Code §§ 2253 and 2254.

27  538.  At Magnolia Gardens has been rated very poorly by State In-
28  spections in its care of patients in the facility. Marshall

182                              COMPLAINT FOR DAMAGES

Stern has been kept in a drugged state by the employees of Magnolia Gardens when any friends or relatives have visited him.

539.  Donna Ritch, during a visit to Marshall Stern in January 2006, was having a conversation with her father, when a staff member came into the room and injected a pink color substance into Marshall Stern's IV. He quickly became completely non-responsive essentially ending Donna Ritch's visit with her father. (Exhibit 14)

540.  Commissioner Penny placed a restricting order on the Ricky and Donna Ritch so that they could only visit Marshall Stern for 4-hours in any one day and then under supervision. There was no basis for this restriction other than the false and inadmissible statements made by Ronald Berman in his initial report to the court. (Exhibit 12) There has never been any credible evidence presented to justify these restrictions on Donna and Ricky Ritch. The order of Commissioner Penny was part of the conspiracy to isolate Marshall Stern in an effort to gain control over his assets.

541.  Marshall Stern has been unlawfully seized by the conspirators and transported to a location of their choosing, where they have confined and isolated him from family and friends.

542.  Presiding Judge MacLaughlin was informed of the improper actions of Judge Bobb and he has to date apparently taken no action to prevent her improper actions. Therefore, it appears to be a custom, practice, or policy within the Los Angeles County Superior Court for the judges to use their contempt

**COMPLAINT FOR DAMAGES**

1  powers to falsely imprison parties in an effort to assist

2  those attorneys and parties they have a preference for.

3  543.  In doing the things herein alleged, defendants acted will-

4  fully and with intent to cause injury to the plaintiff. The

5  defendants were therefore guilty of malice, oppression, and

6  fraud in conscious disregard of plaintiff's rights, thereby

7  warranting an assessment of punitive damages in an amount ap-

8  propriate to punish defendants and deter others from engaging

9  in similar misconduct.

## EIGHTH CAUSE OF ACTION – BATTERY

**Aviva Bobb, Los Angeles County Superior Court, Presiding Judge MacLaughlin, Los Angeles County Sheriff's Department, Sheriff Lee Baca, Officer Astorga, Officer G. Yang**
**(Penal Code §§ 182, 242 & 243)[74]**

544.  Plaintiff incorporates each of the above allegations.

545.  On January 23, 2006, Ricky Ritch turned himself in to the

Los Angeles Superior Court to commence his sentence for the

criminal contempt.  Mr. Ritch desired to return to Louisiana

as soon as possible.

---

[74] Penal Code § 242.  A battery is any willful and unlawful use of force or violence upon the person of another.

Penal Code § 243:
(d) When a battery is committed against any person and serious bodily injury is inflicted on the person, the battery is punishable by imprisonment in a county jail not exceeding one year or imprisonment in the state prison for two, three, or four years.
(f) As used in this section:
        (4) "Serious bodily injury" means a serious impairment of physical condition, in-cluding, but not limited to, the following: . . . concussion; bone fracture.

COMPLAINT FOR DAMAGES

546.  After paying the fines and assorted fees ($2,750.00), Mr. Ritch was turned over to the Los Angeles County Sheriffs Department.

547.  Mr. Ritch informed the Sheriff's Department that he had a broken back and pins in his left shoulder. He also provided them with documentation of his medical condition and the medications he is required to take due to his medical conditions.

548.  Initially, the officers treated him well, placing him in a set of double handcuffs which minimized his physical discomfort and did not aggravate his existing injuries. He was transported to a local hospital for medical evaluation.

549.  Subsequently Officer Astorga was assigned to transport Mr. Ritch to the Twin Towers Jail in Los Angeles.

550.  Officer Astorga informed him that "The Judge" had directed that he be transferred to the jail from the hospital. Officer Astorga handcuffed Mr. Ritch with a single set of handcuffs which wrenched Mr. Ritch's injured shoulder causing him severe pain.

551.  Mr. Ritch was cooperating with Officer Astorga and was not creating any difficulties or problems for Officer Astorga. Mr. Ritch was a 51-year old man, slight of build, with a broken back and a severely damaged shoulder. He was trying to do his sentence and to go home to Louisiana. He had no reason to create any problems and there is no evidence on record anywhere that Mr. Ritch had any criminal intent. There was no attempted escape or failure to follow directions. Therefore, Officer Astorga had no lawful justification for his actions.

**COMPLAINT FOR DAMAGES**

552.  As Officer Astorga was putting Mr. Ritch into the car to transport him to the jail, Officer Astorga hit Mr. Ritch's head violently against the car, stating as he did so, "That was a message from the Judge!" Or words to that effect. The impact caused severe injury to Mr. Ritch.

    a. Mr. Ritch's head still had a large bump where it was struck three days later when he was examined by a doctor at the Northridge Hospital after his release. Mr. Ritch was diagnosed with a concussion at that time. Mr. Ritch never received any treatment for the concussion while he was incarcerated.

553.  After striking Mr. Ritch's head against the car, Officer Astorga kicked Mr. Ritch into the car, causing Mr. Ritch's back to be wrenched causing injury to his back.

554.  The statement of Officer Astorga, "That was a message from the Judge!" makes it appear that the battery was at the prompting of Judge Bobb. Therefore Judge Bobb is responsible for the life threatening battery of by Officer Astorga.

555.  Since Judge Bobb works for the Los Angeles Superior Court and is under the supervision of Presiding Judge MacLaughlin, Judge Bobb's actions of inciting the life threatening battery against Mr. Ritch must also be supported by the Los Angeles County Superior Court which she works for and her supervisor, the Presiding Judge. It appears that there is a custom, practice, or policy within the Los Angeles County Superior Court for the judges to utilize the Los Angeles Sheriff's Department to send, apparently violent, messages to inmates that the judges do not like.

**COMPLAINT FOR DAMAGES**

556.  Mr. Ritch believes that it was Officer Yang, who is as-
signed at the bailiff for Judge Bobb, who informed Officer As-
torga that Judge Bobb wished for a message to be sent to Mr.
Ritch. Therefore Officer Yang was part of the conspiracy to
cause life threatening injure Mr. Ritch.

557.  Since Officers Astorga and Yang are members of the Los An-
geles County Sheriff's Department, the Department and Sheriff
Baca are liable for the unlawful actions of their officers.
Since more than one officer was involved in "sending the mes-
sage from the Judge", it appears that there is a custom, prac-
tice, or policy within the Los Angeles County Sheriff's De-
partment to deliver violent and life threatening messages to
inmates from the Judges of the Los Angeles County Superior
Court.

558.  In doing the things herein alleged, defendants acted will-
fully and with intent to cause life threatening injury to the
plaintiff. The defendants were therefore guilty of malice, op-
pression, and fraud in conscious disregard of plaintiff's
rights, thereby warranting an assessment of punitive damages
in an amount appropriate to punish defendants and deter others
from engaging in similar misconduct.

## NINTH CAUSE OF ACTION – ASSAULT

**Aviva Bobb, Los Angeles County Superior Court, Presiding Judge MacLaughlin, Los Angeles County Sheriff's Department, Sheriff Lee Baca, Sheriff Astorga
(Penal Code §§ 240 & 245)** [75]

---

[75] Penal Code § 240 - An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.

**COMPLAINT FOR DAMAGES**

1   559.   Plaintiff incorporates each of the above allegations.

2   560.   During his incarceration, Mr. Ritch was verbally threatened

3      by various officers in the jail including Officer Astorga sub-

4      sequent to his battery to the person of Mr. Ritch.

5   561.   The threats included statements such as," Don't mess with a

6      judge!"[76] When Mr. Ritch asked for his medication, the Sher-

7      iffs refused to provide him with his prescription medication,

8      "This is what you get for messing with a judge!" Or words to

9      that effect.

10  562.   In light of the battery done to Mr. Ritch by Officer As-

11     torga and Officer Astorga's comments at the time he caused the

12     serious injury to him, Mr. Ritch took the threats of physical

13     harm made to him by the Sheriff's Department very seriously.

14  563.   Due to the statement of Officer Astorga and the other offi-

15     cers, it appears that the threats were at the prompting of

16     Judge Bobb and therefore she is responsible for the assaults

17     caused by the officers.

18  564.   Since Judge Bobb works for the Los Angeles Superior Court

19     and is under the supervision of Presiding Judge MacLaughlin,

20     Judge Bobb's actions of inciting the assault against Mr. Ritch

21     must also be supported by the Los Angeles Superior Court which

22     she works for and her supervisor. It appears that there is a

23

24   Penal Code § 245 - (a) (1) Any person who commits an assault upon the person of another

25   with a deadly weapon or instrument other than a firearm or by any means of force likely to pro-
     duce great bodily injury shall be punished by imprisonment in the state prison for two, three, or

26   four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand
     dollars ($10,000), or by both the fine and imprisonment.

27

28   [76] Most of the threats, if not all of them, contained the expletive "fuck" at some point in the
     statement.

**COMPLAINT FOR DAMAGES**

1  custom, practice, or policy within the Los Angeles County Su-

2  perior Court for the judges to utilize the Los Angeles Sher-

3  iff's Department to send violent and life threatening messages

4  to inmates that the judges do not like or over whom they wish

5  to extort money from.

6  565.  Mr. Ritch believes that it was Officer Yang, who is as-

7  signed at the bailiff for Judge Bobb who informed Officer As-

8  torga that Judge Bobb wished for a message to be sent to Mr.

9  Ritch. Therefore Officer Yang was part of the conspiracy to

10  injure Mr. Ritch.

11  566.  Since various officers made threatening comments to Mr.

12  Ritch, the Los Angeles County Sheriff's Department and Sheriff

13  Baca are liable for the unlawful actions of their officers.

14  Since more than one officer was involved in "sending the mes-

15  sage from the Judge", it appears that there is a custom, prac-

16  tice, or policy within the Los Angeles County Sheriff's De-

17  partment to deliver violent and life threatening messages to

18  inmates from the Judges of the Los Angeles County Superior

19  Court.

20  567.  In doing the things herein alleged, defendants acted will-

21  fully and with intent to cause injury to the plaintiff. The

22  defendants were therefore guilty of malice, oppression, and

23  fraud in conscious disregard of plaintiff's rights, thereby

24  warranting an assessment of punitive damages in an amount ap-

25  propriate to punish defendants and deter others from engaging

26  in similar misconduct.

27

28

## TENTH CAUSE OF ACTION – CONVERSION

189

**COMPLAINT FOR DAMAGES**

**(Penal Code § 484[77])**

### Count One — All Defendants — Taking of Trust Assets

568.  Plaintiff incorporates each of the above allegations.

569.  At all times herein mentioned, and in particular on or about February 21, 2006, plaintiff was and still is the trustee and is entitled to the possession of the assets, personal, monetary, and financial of the Trust, in order to manage it for the benefit of Marshall L. Stern.

570.  On or about February 21, 2006, and at Los Angeles, Los Angeles County, California, the above described property had a value in excess of $1,500,000.00.

571.  On or about February 21, 2006, the defendants took the property described above from the plaintiff's possession and converted the same to their own use.

572.  The plaintiff alleges that the defendants have acted in unison to take control of the Marshall L. Stern Living Trust, in an order to utilize the assets of that trust for their own benefit.

573.  The taking was facilitated by the false and perjurous allegations made against Ricky Ritch in an effort to wrest control of the trust from Mr. Ritch.

574.  Money previously taken from the Trust has been spent on attorneys, such as Ronald Berman, who has been part of the con-

---

[77] Penal Code § 484. (a) Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft.

**COMPLAINT FOR DAMAGES**

spiracy to take the assets in the trust. Specifically, Ronald Berman has committed perjury, discussed above, which has caused the petition for the Conservatorship of Marshall Stern to become unnecessarily complicated for which he has been compensated by the Conservator Jim Schnieders, for his services, as approved by Judge Bobb.

    a. This is an on going pattern of conduct in Southern California, where probate courts appoint PVP counsels, who then recommend to the court that the wishes of the proposed conservatees be ignored and their proposed conservators are disqualified by the probate judges who then appoints a professional conservator. The court appointed conservator then isolates the proposed conservatee from their family and then proceeds to ravage the estates of the conservatees in their care. (See Exhibit 42, a series of articles from The Los Angeles Times describing their investigation into the ongoing conservatorship/guardian scandal in Southern California which includes Judge Bobb.)

575.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Count Two — Lee Baca and Los Angeles County Sheriff's Department — Ricky Ritch's Personal Property**

**COMPLAINT FOR DAMAGES**

576.  Plaintiff incorporates each of the above allegations.

577.  At all times herein mentioned, and in particular on or about January 23, 2006, plaintiff was and still is the owner and was entitled to the possession of the following property, namely: $150.00 Nike Shoes, his $150.00 suit pants, $80.00 dress shirt, $250.00 of prescription medications.

578.  On or about January 23, 2006, and at Los Angeles, Los Angeles County, California, the above described property had a value in excess of $630.00.

579.  On or about February 21, 2006, defendants Lee Baca and Los Angeles County Sheriff's Department took the property described above from the plaintiff's possession and converted the same to their own use.

580.  When Mr. Ritch was released from custody, the Los Angeles Sheriff's Department claimed to have "lost" Mr. Ritch's new $150.00 Nike Shoes, his $150.00 suit pants, $80.00 dress shirt, $250.00 of prescription medications.

581.  On or about January 25, 2006, Mr. Ritch orally demanded the immediate return of the above mentioned property, but defendant failed and refused and continues to fail and refuse to return the property to Mr. Ritch.

582.  On or about January 25, 2006, when Mr. Ritch orally demanded the immediate return of the above mentioned property. An officer of the Los Angeles County Sheriff's Department, threatened to return Mr. Ritch to his incarceration if he made an issue of the return of his property to him. Considering the illegal treatment he had received to that time, including life

**COMPLAINT FOR DAMAGES**

1   threatening physical abuse, false imprisonment, etc., Mr.

2   Ritch took the threat of another false imprisonment seriously.

3   583.  Since Mr. Ritch had entrusted these items to the Los Ange-

4   les County Sheriff's Department, the so called loss of those

5   items is the responsibility of Los Angeles County Sheriff's

6   Department and Sheriff Baca. Since there was a taking of Mr.

7   Ritch's personal items, and since Sheriff Lee Baca is respon-

8   sible for the actions of the officers in the jail, he is deri-

9   vately liable for the loss of Mr. Ritch's possessions.

10  584.  In doing the things herein alleged, defendants acted will-

11  fully and with intent to cause injury to the plaintiff. The

12  defendants were therefore guilty of malice, oppression, and

13  fraud in conscious disregard of plaintiff's rights, thereby

14  warranting an assessment of punitive damages in an amount ap-

15  propriate to punish defendants and deter others from engaging

16  in similar misconduct.

17  **ELEVENTH CAUSE OF ACTION – FRAUD AND DECEIT**

18

19  **(Civil Code §§ 1709-1710[78] and Penal Code § 484[79] in Compliance with Rule 9(b))**

20

21  ---

22  [78] Civil Code § 1709.  One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

23

24  Civil Code §1710.  A deceit, within the meaning of the last section, is either:

    1. The suggestion, as a fact, of that which is not true, by one who does not believe it to

25  be true;

    2. The assertion, as a fact, of that which is not true, by one who has no reasonable

26  ground for believing it to be true;

    3. The suppression of a fact, by one who is bound to disclose it, or who gives informa-

27  tion of other facts which are likely to mislead for want of communication of that fact; or,

28  4. A promise, made without any intention of performing it.

**COMPLAINT FOR DAMAGES**

**Count One - Aviva Bobb, Ronald Berman, Jim Schnieders, Lisa Mac-Carley, David Coleman**

585.   Plaintiff incorporates each of the above allegations.

586.   The plaintiff is informed and believes and thereon alleges that on or about April 27, 2005, defendant Aviva Bobb made the following representation to Attorney Roger Agajanian, "He (Albert Sterwerf) is not on the panel (Probate Volunteer Panel or PVP) and therefore he can not be the counsel for the conservatee in this case (The Conservatorship of Marshall L. Stern, Case No. BP 091 574)." Or words to that effect.

587.   The plaintiff is informed and believes and thereon alleges that on or about April 27, 2005, defendant Ronald Berman made the following representation to Attorney Roger Agajanian, in the hallway outside of Dept. 11, "He (Albert Sterwerf) is not on the panel (PVP) and therefore he can not be the counsel for the conservatee in this case." Or words to that effect.

588.   On or about April 27, 2005, Roger Agajanian, relayed the above declarations to Albert Sterwerf.[80]

589.   The representations made by the defendants were in fact false. The true facts are that Albert Sterwerf was not prohibited by any statute or court rule from representing Marshall Stern even though he was not on the PVP. The conservatee is

---

[79] Penal Code § 484 - For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof.

[80] "Reason to expect reliance by plaintiff sufficient. A maker of a fraudulent misrepresentation may be subject to liability to a person who acts in reliance on it even though the statement was not made directly to the injured party, if the maker intended or had reason to expect that the injured party would rely on the misrepresentation." Geernaert v. Mitchell, (1995) 31 Cal. App. 4th 601, 605-606, 37 Cal. Rptr. 2d 483.

COMPLAINT FOR DAMAGES

1   entitled to hire any attorney they wish to represent them in

2   the conservatorship proceedings prior to the filing of the

3   conservatorship petition.

4   590.  If a conservatee is so represented, then the court has no

5   authority to appoint a PVP counsel under Probate Code § 1470

6   and the California and Los Angeles Rules of the Court and by

7   the wording of Probate Code § 1470 is prohibited from appoint-

8   ing a PVP counsel if the proposed conservatee is represented

9   by counsel.

10  591.  When the defendants made these representations, they knew

11  them to be false and made these representations with the in-

12  tention to deceive and defraud the plaintiff and to induce the

13  plaintiff to act in reliance on these representations in the

14  manner hereafter alleged, or with the expectation that the

15  plaintiff would so act.[81]

16      a. Defendant Aviva Bobb is the Superior Court Judge in

17         Dept. 11, the Probate Court. Therefore defendant Aviva

18         Bobb is knowledgeable of Probate Law and would be aware

19         that Probate Code § 1470 only gives her authority to

20         appoint a PVP counsel if the proposed conservatee **does**

21         **not have retained counsel** and the court can show that

22         the appointment of a PVP counsel is necessary to the

23         resolution of the matter or is necessary to protect the

24         proposed conservatee's interests. California and Los

25         Angeles Court Rules mimic Probate Code § 1470. There is

---

[81] Misrepresentation May Be Implied by Conduct. A misrepresentation need not be oral, but may be implied by conduct. Thrifty-Tel, Inc. v. Bezenek, (1996) 46 Cal. App. 4th 1559, 1567, 54 Cal. Rptr. 2d 468.

**COMPLAINT FOR DAMAGES**

1        no statutory or court rule authorizing the court to ap-

2        point a PVP counsel if there is a retained counsel.

3        Since Defendant Aviva Bobb has knowledge of the law,

4        she would know that her representations to Roger Aga-

5        janian and thus to the plaintiff were false.[82]

6    b. Defendant Ronald Berman is an attorney on the PVP and

7        is presumed to have knowledge of probate law, including

8        Probate Code § 1470 and the court rules. Since Defen-

9        dant Ronald Berman has knowledge of the law, he would

10       know that his representations to Roger Agajanian and

11       thus to the plaintiff were false.

12   592. Albert Sterwerf at the time false representations were made

13   by the defendants relied on the false assertions of the defen-

14   dants relayed to him by Roger Agajanian and took no actions as

15   Marshall Stern's representative since he believed that Mr.

16   Stern was adequately represented by counsel.

17   593. Albert Sterwerf relied on the assertions of Judge Bobb

18   since she was in a position of authority as a Judge and Mr.

19   Sterwerf has a duty to follow the lawful orders of a court.

20   594. As a proximate result of the fraudulent conduct of the de-

21   fendants as herein alleged, the defendants were able to begin

22   the improper actions which resulted in the isolation of Mar-

23   shall Stern from his family and friends, the assets of the

---

[82] "Opinion of person with superior knowledge or occupying position of trust. One who has been induced to enter into a transaction by fraudulent misrepresentations may have relief if he or she acted in reliance on the misrepresentations and was justified therein. One may justifiably rely on statements of mere opinion if the person stating the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust." Seeger v. Odell, (1941) 18 Cal. 2d 409, 115 P.2d 977.

**COMPLAINT FOR DAMAGES**

1   Marshall L. Stern Living Trust have been placed at risk, (Jim
2   Schnieders has already admitted losing $100,000 of Trust as-
3   sets), Mr. Ritch has been falsely imprisoned, suffered a seri-
4   ous physical injury at the direction of Judge Aviva Bobb, and
5   has suffered the taking of his property without due process.
6   595.   The fraud was part of an on going conspiracy for the defen-
7   dants to gain access and control over the assets of the Mar-
8   shall L. Stern Living Trust in an effort to benefit themselves
9   and to harm Ricky Ritch and Marshall L. Stern.
10  596.   The aforementioned conduct of the defendants was an inten-
11  tional misrepresentation, deceit, or concealment of a material
12  fact known to the defendants with the intention on the part of
13  the defendants of thereby depriving the plaintiff of property
14  or legal rights or otherwise causing injury, and was despica-
15  ble conduct that subjected the plaintiff to cruel and unjust
16  hardship in conscious disregard to the plaintiff's rights, so
17  as to justify an award of exemplary and punitive damages.
18  597.   In doing the things herein alleged, defendants acted will-
19  fully and with intent to cause injury to the plaintiff. The
20  defendants were therefore guilty of malice, oppression, and
21  fraud in conscious disregard of plaintiff's rights, thereby
22  warranting an assessment of punitive damages in an amount ap-
23  propriate to punish defendants and deter others from engaging
24  in similar misconduct.

25  **Count Two – Encino-Tarzana Regional Medical Center**
26  598.   Plaintiff incorporates each of the above allegations.
27  599.   After Mr. Ritch's injury due to the negligence of the En-
28  cino-Tarzana Regional Medical Center, Marshall Stern was in-

**COMPLAINT FOR DAMAGES**

1   formed by the hospital that they could no longer treat Mar-

2   shall Stern unless there was a conservatorship.

3   600.   This was a fraudulent statement. The hospital had been

4   treating Marshall Stern under the April 2004 Power of Attorney

5   for Health Care for nearly a year at that time.

6   601.   Marshall Stern relied on the false assertion of the hospi-

7   tal when he initiated the conservatorship proceedings. Based

8   on Marshall Stern's reliance on the fraudulent assertions of

9   the Hospital, Ricky Ritch also relied on the assertions of the

10   hospital when he commenced the conservatorship proceedings[83].

11   602.   Because of this reliance on the fraudulent assertions of

12   Encino-Tarzana Regional Medical Center, Ricky Ritch has been

13   injured by the false statements of Encino-Tarzana Regional

14   Medical Center's fellow conspirators, including physical in-

15   jury and incarceration, the taking of his property (the ille-

16   gal fine and costs assigned by Judge Bobb), as well as damage

17   to his reputation, from his involvement in the "Conservator-

18   ship Mill in Southern California".

19   603.   The Plaintiff hospital believes, based on their actions and

20   the actions of the others in the conspiracy, that the fraudu-

21   lent statements of the hospital was an effort to avoid a law-

22   suit for its negligence in causing the injuries to Marshall

23   Stern and Ricky Ritch.

24   604.   The fraud was part of an on going conspiracy for the defen-

25   dants to gain access and control over the assets of the Mar-

---

[83] Intent to induce action in reliance inferable. The defendants' intent to induce the plaintiff to alter plaintiff's position can be inferred from the fact that the defendants made the representations knowing that the plaintiff would act in reliance on the representations. Gagne v. Bertran, (1954) 43 Cal. 2d 481, 488, 275 P.2d 15.

198                                    **COMPLAINT FOR DAMAGES**

1   shall L. Stern Living Trust in an effort to benefit themselves

2   and to harm Ricky Ritch and Marshall L. Stern.

3   605.   The aforementioned conduct of the defendants was an inten-

4   tional misrepresentation, deceit, or concealment of a material

5   fact known to the defendants with the intention on the part of

6   the defendants of thereby depriving the plaintiff of property

7   or legal rights or otherwise causing injury, and was despica-

8   ble conduct that subjected the plaintiff to cruel and unjust

9   hardship in conscious disregard to the plaintiff's rights, so

10  as to justify an award of exemplary and punitive damages.

11  606.   In doing the things herein alleged, defendants acted will-

12  fully and with intent to cause injury to the plaintiff. The

13  defendants were therefore guilty of malice, oppression, and

14  fraud in conscious disregard of plaintiff's rights, thereby

15  warranting an assessment of punitive damages in an amount ap-

16  propriate to punish defendants and deter others from engaging

17  in similar misconduct.

**TWELFTH CAUSE OF ACTION - FALSE STATEMENT TO A BANK**
**Jim Schnieders**
**(18 U.S.C. § 1014 and Penal Code § 484)**

607.   Plaintiff incorporates each of the above allegations.

608.   The Plaintiff believes and thereon alleges that on or about

July 11, 2005, defendant Jim Schnieders made a false statement

to a federally insured bank, Bank of America, for the purpose

of influencing the bank in violation of Section 1014 of Title

18 of the United States Code.

609.   The defendant Jim Schnieders made the false statement as-

sertion that he had a right to access the Trust funds in two

checking accounts in Bank of America a federally insured bank.

**COMPLAINT FOR DAMAGES**

610.   Jim Schnieders made the false statement or report to the bank knowing it was false because he is an experienced Professional Conservator and he was being advised by his counsel, Lisa MacCarley, therefore he should have known that he did not have access to Trust assets as a temporary conservator.

611.   Jim Schnieders mislead the bank for the purpose of influencing in any way the action of the bank, i.e. the turning over of the Trust funds in the accounts.

612.   The bank was, in fact influenced and misled and turned over the funds to Jim Schnieders as he intended.

613.   In doing the things herein alleged, defendant acted willfully and with intent to cause injury to the plaintiff. The defendant was were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### THIRTEENTH CAUSE OF ACTION – STATE CIVIL RIGHTS VIOLATION
### All Defendants
### (Civil Code § 52.1 –Tom Bane Civil Rights Act)

614.   Plaintiff incorporates each of the above allegations.

615.   All defendants have conspired and acted in concert to deny Ricky Ritch of his Federal and State Constitutional Rights, including the Right to be Secure in his Person, the Right to Liberty, the Right to only have property taken after due process, etc.

616.   Defendant Aviva Bobb, Brenda Penny, Ronald Berman, James Schnieders, David Coleman, William MacLaughlin, Officer Astorga, Officer Yang were all acting as direct representatives

1   of the State since they were acting in their either official

2   or appointed capacity. Therefore, the actions taken against

3   Mr. Ritch were under the color of a State Action.

4   617.   Through their actions, the defendants caused Mr. Ritch to

5   be fined (loss of property without due process), be wrongfully

6   incarcerated (loss of liberty), and to be physically injured

7   and threatened with further physical injury (loss of security

8   of his person).

9   618.   Officer Astorga directly caused life threatening physical

10   injury to Mr. Ritch; see the Cause of Action for Battery

11   above. The battery was at the bequest of "the Judge". Since

12   Judge Bobb was the only "judge" involved in the action at that

13   time, "The Judge" must have been Judge Bobb. Therefore the se-

14   vere life threatening physical injury suffered by Mr. Ritch

15   was at the instigation of Judge Bobb.

16   619.   As discussed under the Cause of Action for Extortion dis-

17   cussed above, the incarceration of Mr. Ritch was part of a

18   conspiracy to gain control over the Trust of Marshall L.

19   Stern.

20   620.   Judge Bobb also ordered Mr. Ritch to pay a fine ($1,000

21   fine + $1,750 of costs) and to pay defendant David Coleman's

22   client (Howard Stern) $6,640 in attorney's fees for prosecut-

23   ing Mr. Ritch. Since the so called trial had so many Constitu-

24   tional "mistakes", Mr. Ritch was denied the possession of his

25   property without any Due Process.

26   621.   Defendant MacLaughlin is the Presiding Judge in the Los An-

27   geles County Superior Court. He was given notice twice of

28   Judge Bobb's improper actions in this case. To date there has

**COMPLAINT FOR DAMAGES**

1   been no evidence that he has taken any actions to correct her

2   illegal conduct. By his failure to act, Judge MacLaughlin has

3   provided Judge Bobb the freedom to continue her illegal ac-

4   tivities. Thereby, Judge MacLaughlin is a participant through

5   derivative liability and through him the entire Los Angeles

6   County Superior Court and thereby were participants in the

7   conspiracy to deny him his Constitutional Rights and Privi-

8   leges.

9   622.   Since Officer Astorga was acting under his color of author-

10   ity at the time he caused the serious injury to Mr. Ritch and

11   all of the threats made to Mr. Ritch by the Officers at the

12   jail, Sheriff Baca and the Los Angeles County Sheriff's De-

13   partment are derivately liable for the injury caused to Mr.

14   Ritch and thereby were participants in the conspiracy to deny

15   Mr. Ritch his Constitutional Rights and Privileges.

16   623.   Since the violations of Mr. Ritch's Constitutional Rights

17   was under the color of State action, Civil Code § 52.1 is not

18   barred under <u>Jones v. Kmart Corp.</u>, (1998) 17 Cal. 4th 329,

19   333-334; 70 Cal Rptr. 2d 844, 949 P.2d 941.

20   624.   Since all of the elements of the tort have been satisfied,

21   Mr. Ritch is entitled to an award of a $25,000/defendant civil

22   liability that is authorized under Civil Code § 52.1(a) & (b)

23   in addition to any and all actual damages suffered[84].

24   625.   In doing the things herein alleged, defendants acted will-

25   fully and with intent to cause injury to the plaintiff. The

26   defendants were therefore guilty of malice, oppression, and

27

28   [84] <u>Los Angeles Metro. Transp. Auth. V. Superior Court</u> (2004) 123 Cal. App. 4th 261, 266-76, 20 Cal. Rptr. 3d 92.

**COMPLAINT FOR DAMAGES**

1   fraud in conscious disregard of plaintiff's rights, thereby

2   warranting an assessment of punitive damages in an amount ap-

3   propriate to punish defendants and deter others from engaging

4   in similar misconduct.

### FOURTEENTH CAUSE OF ACTION – CONSPIRACY
### (Penal Code § 182[85] – Civil Conspiracy[86])

626.   Plaintiff incorporates each of the above allegations.

627.   The defendants in this action have worked in unison in an
effort to harm Ricky Ritch so that they could deny him the po-
sition of Conservator for the Person and Estate of Marshall L.
Stern in an effort to use the assets of the estate for their
own benefit and with regards to Encino-Tarzana Regional Medi-

---

[85] Penal Code § 182.  (a) If two or more persons conspire:

(1) To commit any crime.

(2) Falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime.

(3) Falsely to move or maintain any suit, action, or proceeding.

(4) To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform those promises.

[86] A civil conspiracy is a combination of two or more persons to accomplish by concerted action a criminal or unlawful purpose or a lawful purpose by criminal or unlawful means. Parkinson Co. v. Bldg. Trades Council, (1908) 154 Cal. 581, 593, 98 P. 1027; Peskin v. Squires (1957) 156 Cal. App 2d 240, 246, 319 P.2d 405.

The elements of civil conspiracy cause of action:

  1.  Two or more persons enter into an agreement,
  2.  To commit a criminal or unlawful act or to act by criminal or unlawful means,
  3.  An act in furtherance thereof, and
  4.  Damages to plaintiff.

Parkinson Co. v. Bldg. Trade Council, 154 Cal. 581 (1908), Unruh v. Truck Insurance Exchange, 7 Cal.3d 616 (1972)

**COMPLAINT FOR DAMAGES**

cal Center to avoid taking liability for their negligent ac-
tions. When the conspirators learned of the Marshall L. Stern
Living Trust (which contained all of the assets of Marshall
Stern and was thus not subject to their control as conserva-
tor) they took whatever actions were necessary, the illegal
activities described above, to force Mr. Ritch to abandon his
position as the Trustee of the Trust.

628.  Each of the defendants knowingly and willfully conspired
and agreed to take the actions necessary to accomplish the ob-
jectives of the conspiracy.

629.  Through their fraudulent actions, discussed above, Encino-
Tarzana Regional Medical Center induced the Plaintiff into
filing the petition for conservatorship[87]. The actions of En-
cino-Tarzana Regional Medical Center induced Marshall Stern
into the conspiracy and thereby involved Ricky and Donna Ritch
in the conspiracy as well.

630.  Through their wrongful conduct (discussed in the Causes of
Action above), defendants Judge Bobb, Commissioner Penny,
Judge Pro Tem Beckloff, Ronald Berman, Jim Schnieders, Lisa
MacCarley, David Coleman, Christopher Johnson, Andrea Hodges,
Herman Stern, Officer Yang, Officer Astorga, Magnolia Gardens,

---

[87] If one joint-venturer acting within the scope of the joint-venture and in furtherance of its agreed purposes is guilty of fraud in procuring benefits that the joint-venturers retain, all joint-venturers are liable for the fraud. Grant v. Weatherholt, (1954) 123 Cal. App. 2d 34, 45, 266 P.2d 185.

Liability not predicated on profit. Liability for fraud is predicated on the fact that plaintiff has been misled to plaintiff's prejudice, not that defendant has benefited by defendant's wrong. It is not essential to liability that the person charged with fraud should have received any benefit from the fraud. Taormina v. Antelope Mining Corp., (1952) 110 Cal. App. 2d 314, 320, 242 P.2d 665; Swasey v. de L'Etanche, (1936) 17 Cal. App. 2d 713, 718, 62 P.2d 753.

**COMPLAINT FOR DAMAGES**

1   Retirement Advisors of America, the Los Angeles County Supe-

2   rior Court, and the Los Angeles County Sheriff's Department,

3   have actively participated and forwarded the conspiracy

4   through their actions discussed in the previous Causes of Ac-

5   tion, which were all conducted in the furtherance of the ob-

6   jectives of the conspiracy. The conduct included criminal

7   acts, such as assault, battery, false imprisonment/kidnapping,

8   conversion (theft), etc. The conspiracy also had the objective

9   of taking the assets of Marshall Stern's estate and his Trust

10  for their own benefit through their fraudulent statements, ac-

11  tions, and declarations.

12  631. Through their wrongful conduct (discussed above), defen-

13  dants Judge Bobb, Mitchell Beckloff, Brenda Penny, Ronald Ber-

14  man, Jim Schnieders, Lisa MacCarley, David Coleman, Christo-

15  pher Johnson, Andrea Hodges, Howard Stern, Retirement Advisors

16  and Herman Stern have conspired to falsely and maliciously in-

17  dict Ricky Ritch for criminal contempt, in the process con-

18  spiring to deny Mr. Ritch of his Constitutional Rights and

19  Protections.

20  632. The conspiracy took money from the Plaintiff through its

21  fraudulent actions, when Judge Bobb fraudulently "convicted"

22  Mr. Ritch of criminal contempt and made him pay a fine and

23  costs after denying him almost every Constitutional Protection

24  due to him. Therefore, Mr. Ritch was denied his property with-

25  out Due Process.

26  633. As discussed in the Cause for Action for Attorney Miscon-

27  duct, through their wrongful conduct, defendants Judge Bobb,

28  Beckloff, Commissioner Penny, Ronald Berman, Jim Schnieders,

**COMPLAINT FOR DAMAGES**

1   Lisa MacCarley, David Coleman, Christopher Johnson, Andrea

2   Hodges, Howard Stern, and Herman Stern have conspired to

3   falsely to move and maintain suits, actions, or proceedings

4   against Mr. Ritch and Marshall Stern contrary to law and the

5   best interests of Marshall Stern, who the defendants accepted

6   the responsibility of protecting and guarding.

7   634.   Through its wrongful conduct, defendant Magnolia Gardens,

8   furthered the conspiracy's objectives by providing for the

9   isolation of Marshall Stern from family and friends and possi-

10  bly causing the deterioration of Marshall Stern's mental ca-

11  pacity through their "drug treatments" and have criminally en-

12  dangered his life.

13  635.   Through its wrongful conduct, defendant Retirement Advisors

14  of America furthered the conspiracy's objectives by providing

15  documentation of the accounting of the Marshall L. Stern Trust

16  to its co-conspirators (Exhibit 32) while at the same time re-

17  fusing to communicate to Mr. Ritch who was the trustee of the

18  Trust.

19      a.  When attorney Albert Sterwerf called Retirement Advi-

20          sors of America for Mr. Ritch, he was informed by Ann

21          Smith of the legal department of Retirement Advisors of

22          America that they were always willing to talk to Mr.

23          Ritch about the Trust, but that he had to say that he

24          was calling about the Trust. This is inconsistent with

25          Mr. Ritch's experience with the defendant and is also

26          not a viable explanation of the defendant's action.

27          Since Marshall and Florence Stern had transferred all

28          of their assets into the Trust in 1992, all of the as-

**COMPLAINT FOR DAMAGES**

sets managed by the defendant were assets of the Trust, except for the IRA account held by the defendant and it was created from Trust assets. Therefore, the defendant had no justification not to speak with Mr. Ritch concerning the moneys held by the defendant for the Trust.

b. Retirement Advisors of America knew Mr. Ritch was the Trustee of the Trust and thus had no viable reason not to communicate with him regarding the Trust.

c. The documents provided to the co-conspirators were provided during a time when the defendant refused to speak at all to Mr. Ritch. Specifically Ruthledge Gordon, an employee of the defendant, who had worked closely with Mr. Ritch in the past, kept refusing to speak with Mr. Ritch due to the conservatorship proceedings. Yet at the same time those opposing Mr. Ritch received confidential Trust documents from the defendant. (For example Exhibit 32) These documents were then used to create false allegations of wrong doing against Mr. Ritch by the defendant's co-conspirators, discussed above.

d. Since the defendant Retirement Advisors of America refused to provide an accounting of the Trust assets held in its accounts to Mr. Ritch, Mr. Ritch was prevented from providing an accounting of those assets to the court, even if Commissioner Penny's order had been valid with regards to the Trust. The co-conspirators used this lack of information as an argument in their

**COMPLAINT FOR DAMAGES**

1    attempt to have Mr. Ritch removed as the Trustee of the

2    Trust.

   e. The defendants James Schnieders and Lisa MacCarley used

4    Mr. Ritch's statements concerning lack of cooperation

5    from Retirement Advisors of America to create an out-

6    landish argument that Mr. Ritch was not the Trustee of

7    the Trust since he was not directly in control of the

8    Trust's assets. Thus the actions of defendant Retire-

9    ment Advisors of America aided in the illegal actions

10   of its co-conspirators to remove Mr. Ritch as the Trus-

11   tee of the Trust.

   f. The plaintiffs believe that the defendant Retirement

13   Advisors, in furtherance of the conspiracy, as trans-

14   ferred trust assets to its co-conspirators after Judge

15   Bobb illegally gave Jim Schnieders the position as

16   trustee over the Trust. Thereby, the conspiracy has af-

17   fected interstate commerce and may have committed wire

18   fraud.

19   636.  Through her wrongful conduct, defendant Claudia L. Kreigen-

20   hofer and The Los Angeles County Superior Court furthered the

21   conspiracy's objectives by delaying the Mr. Ritch's access to

22   the records of the court proceedings in this matter, which

23   were necessary to provide Mr. Ritch with defenses and informa-

24   tion needed to preserve his rights. The transcripts have not

25   been received over 6-months after they were requested.

26   637.  Through their wrongful conduct, defendants Officer Yang,

27   Officer Astorga, and The Los Angeles County Sheriff's Depart-

28   ment furthered the conspiracy's objectives by providing the

**COMPLAINT FOR DAMAGES**

physical enforcement and threat arm of the conspiracy. It was these defendants that falsely imprisoned, physically injured and threatened Mr. Ritch with further injury at the direction of Judge Bobb in furtherance of the conspiracy.

638.   Through the wrongful conduct of their members and/or employees, defendants Presiding Judge William MacLaughlin, Sheriff Lee Baca, the Los Angeles County, Los Angeles County Superior Court, and the Los Angeles County Sheriff's Department, are derivately liable under the conspiracy because they were in positions of responsibility and were responsible for the wrongful and unlawful actions of their subordinates.

639.   Through the wrongful conduct of their members or employees, defendant law firms BERMAN & BERMAN; OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN; and RUSSAKOW, RYAN, & JOHNSON are derivately liable under the conspiracy because they were in positions of responsibility and were responsible for the wrongful and unlawful actions of their subordinates.

   a. The law firms financially benefited from the conspiracy through the actions of their employees/members; therefore they are members of the conspiracy.

640.   Plaintiff is informed and believes and thereon alleges that the last overt act in pursuance of the above-described conspiracy occurred on or about April 6, 2006, on which date defendants criminally removed Ricky Ritch as Trustee of the Marshall L. Stern Living Trust and appointed Jim Schnieders as the Trustee and as the Conservator of the Estate and Person of Marshall L. Stern. This order has never been filed on the Plaintiffs or their attorney.

**COMPLAINT FOR DAMAGES**

1   641.  As a proximate result of the wrongful acts herein alleged,

2       plaintiff has been generally damaged.

3   642.  In doing the things herein alleged, defendants acted will-

4       fully and with intent to cause injury to the plaintiff. The

5       defendants were therefore guilty of malice, oppression, and

6       fraud in conscious disregard of plaintiff's rights, thereby

7       warranting an assessment of punitive damages in an amount ap-

8       propriate to punish defendants and deter others from engaging

9       in similar misconduct.

10      **FIFTEENTH CAUSE OF ACTION – OBSTRUCTION OF JUSTICE**

11   **First Count – Aviva Bobb, Mitchell Beckloff, Brenda Penny,**

12   **Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman –**

13            **Influencing of Officer of the Court**

                    **(18 U.S.C. § 1503[88])**

14   643.  Plaintiff incorporates each of the above allegations.

15   644.  Under 18 U.S.C § 1503, obstruction of justice occurs when-

16      ever a party or parties endeavors to influence, interferes

17      with, or impede an officer in the performance of their duty

18      either through corruption or threats and/or intimidation.

19   645.  As has been shown in previous Causes for Action, specifi-

20      cally Perjury, Attorney Misconduct, Judicial Misconduct, Ex-

21      tortion, Fraud, and Conspiracy, there has been an ongoing pat-

22      tern of corruption by the defendants. Each of the above named

---

[88] 18 U.S.C. § 1503. Influencing or injuring officer or juror generally: (a) Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, in-timidate, or impede any . . . officer who may be serving at any examination or other proceeding before any . . . committing magistrate, in the discharge of his duty, . . . or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or en-deavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

1   defendants, who is not sitting as a magistrate, has committed
2   or suborned perjury (discussed above), has violated California
3   Legal Ethics laws by attempting to influence or mislead the
4   various magistrates sitting on the underlying cases (discussed
5   above), and have brought legal proceedings in an effort to
6   deny Ricky and Donna Ritch a fair day in court.
7   646.  The above named magistrates have violated State and Federal
8   law in an effort to concede to the requests of their co-
9   conspirators and in the process have denied Ricky and Donna
10   Ritch their rights to a fair and full hearing before them.
11   647.  In doing the things herein alleged, defendants acted will-
12   fully and with intent to cause injury to the plaintiffs. The
13   defendants were therefore guilty of malice, oppression, and
14   fraud in conscious disregard of plaintiff's rights, thereby
15   warranting an assessment of punitive damages in an amount ap-
16   propriate to punish defendants and deter others from engaging
17   in similar misconduct.

**Second Count - Aviva Bobb, Mitchell Beckloff, Brenda Penny, Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman, Officer Yang, Officer Astorga, Los Angeles Sheriff's Department**
-

### Tampering With a Witness
### (18 U.S.C. § 1512[89])

---

[89] 18 U.S.C. § 1512. Tampering with a witness, victim, or an informant:(a)(2) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—
(A) influence, delay, or prevent the testimony of any person in an official proceeding;
(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
(1) influence, delay, or prevent the testimony of any person in an official proceeding;

**COMPLAINT FOR DAMAGES**

648.   Plaintiff incorporates each of the above allegations.

649.   As was discussed in the causes of Action for Extortion, Battery, and Assault, the above defendants were directly involved in tampering with the testimony of Ricky Ritch and did so through the use of and threat of physical force. (i.e. striking Mr. Ritch's head violently against a Los Angeles Sheriffs vehicle while Mr. Ritch was handcuffed and threatening to shoot him as an escaping prisoner). These actions, the battery and assaults, were an effort to influence Mr. Ritch's testimony as a witness/party to the underlying actions.

650.   As was discussed above in the Cause of Action for Extortion, the above named defendants attempted to influence Mr. Ritch's testimony and in so doing conspired to influence him. Therefore under 18 U.S.C § 1512(k) are liable as co-conspirators in this Cause of Action.

651.   Due to the statement of Officer Astorga, "That was a message from the Judge!" it appears that the battery was at the prompting of Judge Bobb since there were no other judges involved with Mr. Ritch at that time. Therefore Judge Bobb is responsible for incitement of the life threatening battery of by Officer Astorga.

652.   Since Judge Bobb works for the Los Angeles Superior Court and is under the supervision of Presiding Judge MacLaughlin, Judge Bobb's actions of inciting the life threatening battery against Mr. Ritch must also be supported by the Los Angeles

---

(k) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

COMPLAINT FOR DAMAGES

County Superior Court which she works for and her supervisor, the Presiding Judge. It appears that there is a custom, practice, or policy within the Los Angeles County Superior Court for the judges to utilize the Los Angeles Sheriff's Department to send, apparently violent, messages to inmates that the judges do not like.

653.   Mr. Ritch believes that it was Officer Yang, who is assigned at the bailiff for Judge Bobb, who informed Officer Astorga that Judge Bobb wished for a message to be sent to Mr. Ritch. Therefore Officer Yang was part of the conspiracy to cause life threatening injure Mr. Ritch.

654.   Since Officers Astorga and Yang are members of the Los Angeles County Sheriff's Department, the Department and Sheriff Baca are liable for the unlawful actions of their officers. Since more than one officer was involved in "sending the message from the Judge", it appears that there is a custom, practice, or policy within the Los Angeles County Sheriff's Department to deliver violent and life threatening messages to inmates from the Judges of the Los Angeles County Superior Court.

655.   In doing the things herein alleged, defendants acted willfully and with intent to cause life threatening injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**COMPLAINT FOR DAMAGES**

**Third Count – Aviva Bobb, Mitchell Beckloff, Brenda Penny, Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman, Officer Yang, Officer Astorga, Los Angeles Sheriff's Department – Retribution Against a Party/Witness**
**(18 U.S.C. § 1513[90])**

656.  Plaintiff incorporates each of the above allegations.

657.  As was discussed in the causes of Action for Extortion, Battery, and Assault, the above defendants were directly involved in battery and assault inflicted on Ricky Ritch. (i.e. striking Mr. Ritch's head violently against a Los Angeles Sheriffs vehicle while Mr. Ritch was handcuffed and threatening to shoot him as an escaping prisoner). These actions, the battery and assaults, were in retaliation for an alleged "disrespect" to "The Judge," who was sending Mr. Ritch a message. The "disrespect" was the contempt charge against Mr. Ritch, which has been shown above to have been part of an ongoing conspiracy of the defendants to harm the plaintiffs.

658.  Due to the statement of Officer Astorga, "That was a message from the Judge!" it appears that the battery was at the prompting of Judge Bobb since there were no other judges involved with Mr. Ritch at that time. Therefore Judge Bobb is responsible for incitement of the life threatening battery of by Officer Astorga.

659.  Since Judge Bobb works for the Los Angeles Superior Court and is under the supervision of Presiding Judge MacLaughlin,

---

[90] 18 U.S.C. § 1513. Retaliating against a witness, victim, or an informant:
(b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—
(1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding

**COMPLAINT FOR DAMAGES**

1  Judge Bobb's actions of inciting the life threatening battery

2  against Mr. Ritch must also be supported by the Los Angeles

3  County Superior Court which she works for and her supervisor,

4  the Presiding Judge. It appears that there is a custom, prac-

5  tice, or policy within the Los Angeles County Superior Court

6  for the judges to utilize the Los Angeles Sheriff's Department

7  to retaliate against inmates that the judges do not like.

8  660.  Mr. Ritch believes that it was Officer Yang, who is as-

9  signed at the bailiff for Judge Bobb, who informed Officer As-

10  torga that Judge Bobb wished for a message to be sent to Mr.

11  Ritch. Therefore Officer Yang was part of the conspiracy to

12  cause life threatening injure Mr. Ritch.

13  661.  Since Officers Astorga and Yang are members of the Los An-

14  geles County Sheriff's Department, the Department and Sheriff

15  Baca are liable for the unlawful actions of their officers.

16  Since more than one officer was involved in "sending the mes-

17  sage from the Judge", it appears that there is a custom, prac-

18  tice, or policy within the Los Angeles County Sheriff's De-

19  partment to retaliate against inmates for Judges of the Los

20  Angeles County Superior Court.

21  662.  In doing the things herein alleged, defendants acted will-

22  fully and with intent to cause life threatening injury to the

23  plaintiff. The defendants were therefore guilty of malice, op-

24  pression, and fraud in conscious disregard of plaintiff's

25  rights, thereby warranting an assessment of punitive damages

26  in an amount appropriate to punish defendants and deter others

27  from engaging in similar misconduct.

28  ## SIXTEENTH CAUSE OF ACTION - CIVIL RICO

215                                    COMPLAINT FOR DAMAGES

## First Count — All Defendants — Pattern of Racketeering Activity (18 U.S.C. § 1961–1964)

663.  Plaintiff incorporates each of the above allegations.

664.  The acts of Obstruction of Justice, Extortion, Fraud and Deceit, False Imprisonment/Kidnapping, Conversion (Robbery), Assault, Battery, and Perjury charged in Pendant Causes of Action Listed Above of the complaint are racketeering acts as defined by the RICO statutes (Racketeer Influenced and Corrupt Organizations Act).

665.  The above listed racketeering acts have been committed since January 2005 and are thus with one-year, well less than the ten-year window under the RICO Statutes[91].

666.  The pattern of racketeering actions of the defendants, based on Los Angeles Times Articles from November 2005, might well extend beyond boundaries this case. (Exhibit 42A-F, Specifically 42D, Pages 5-6 and 42F, which specifically describe Aviva Bobb's involvement in a corrupt probate proceeding.)

667.  The racketeering activities of the defendants formed a pattern that have a relationship to each other and they amount to or pose a threat of continued criminal activity. The conduct of the defendants consists of criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, and otherwise are interrelated by distinguishing characteristics.

---

[91] 18 U.S.C. § 1961 (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

COMPLAINT FOR DAMAGES

668.   Plaintiffs Ricky and Donna Ritch are individuals and as such are "enterprises" under 18 U.S.C. § 1961(4). They are residents of Alabama and the financial losses they incurred have affected interstate commerce. Both of the plaintiffs have been targets of the racketeering activities of the defendants described in the earlier Pendant Causes of Action.

669.   The plaintiffs were injured by the defendants' use of the income from their racketeering activities and investment of income from the racketeering activities described above. The defendants have used the funds taken from the plaintiffs in violation of 18 U.S.C. § 1962(a) to fund further litigation against the plaintiffs in continuance of their racketeering operations. <u>Malley-Duff & Associates Inc. v. Crown Life Insur-ance Co.</u>, 792 F.2d 341 (3rd Cir. 1986). The costs of defending against the litigation were injuries to the plaintiffs.

670.   The plaintiffs were injured by the criminal activities of the defendants since they are beneficiaries of the Marshall Stern Living Trust and thus the misuse of the funds in the Trust diminish the benefit of the Trust to the beneficiaries.

**Second Count – All Defendants – 18 U.S.C. § 1962(a) [92] RICO Income from Racketeering.**

671.   Plaintiff incorporates each of the above allegations.

672.   The defendants have received income from the plaintiffs via their racketeering practices. Specifically, the plaintiffs have utilized their co-conspirator's position (Aviva Bobb and

---

[92] 18 U.S.C. § 1962 (a) It shall be unlawful for any person who has received any income de-rived, directly or indirectly, from a pattern of racketeering activity.

**COMPLAINT FOR DAMAGES**

the other judges) as the parties empowered to authorize dis-
bursements from the Trust to pay their fellow conspirators.
This is an obvious criminal abuse of power.

673.   The Trust is subject to 18 U.S.C. § 1962(a) in that the
Trust has assets in Texas, Idaho, Louisiana, and California.
The Trust includes a Gold Mine in Idaho the product of which
is sold both interstate and internationally. Therefore, the
Trust has assets which effects interstate and international
commerce.

674.   Plaintiffs Ricky and Donna Ritch are individuals and as
such are "enterprises" under 18 U.S.C. § 1961(4). They are
residents of Alabama and the financial losses they incurred
have affected interstate commerce. Both of the plaintiffs have
been targets of the racketeering activities of David Coleman
described in the earlier Pendant Causes of Action.

675.   The defendants have gained control over the Trust through a
pattern of Racketeering described in the previous Pendant
Causes of Action above and are using the income from their
racketeering activities.

676.   The purpose of the actions of the conspirators was to gain
access to the Trust's assets for their own benefit and to the
harm/detriment of the plaintiff, Marshall Stern, and his bene-
ficiaries.

677.   The plaintiffs were injured by the use of and investment of
income from the racketeering activities described above. The
defendants used the funds taken from the plaintiffs in viola-
tion of 18 U.S.C. § 1962(a) to cause further litigation
against the plaintiffs in continuance of their racketeering

**COMPLAINT FOR DAMAGES**

1   harm/detriment of the plaintiff, Marshall Stern, and his bene-

2   ficiaries.

3   683.  The plaintiffs were injured by the use of and investment of

4   income from the racketeering activities described above. The

5   defendants used the funds taken from the plaintiffs in viola-

6   tion of 18 U.S.C. § 1962(a) to cause further litigation

7   against the plaintiffs in continuance of their racketeering

8   operations. <u>Malley-Duff</u>. The costs of defending against the

9   litigation were injuries to the plaintiffs.

10  684.  The plaintiffs were injured by the criminal activities of

11  the defendants since they are beneficiaries of the Marshall

12  Stern Living Trust and thus the misuse of the funds in the

13  Trust diminish the benefit of the Trust to the beneficiaries.

14  **Fourth Count – James Schnieders and Lisa MacCarley – 18 U.S.C. §**

15  **1962(c)**[95] **Employee of Enterprise Involved in Racketeering Activi-**

16  **ties.**

17  685.  Plaintiff incorporates each of the above allegations.

18  686.  The Marshall L. Stern Living Trust is an "enterprise" as

19  defined by 18 U.S.C. § 1961 (4), in that it is a "legal en-

20  tity". The Trust is subject to 18 U.S.C. § 1962(c) in that the

21  Trust has assets in Texas, Idaho, Louisiana, and California.

22  The Trust includes a Gold Mine in Idaho the product of which

23  is sold both interstate and internationally. Therefore, the

24

25  ───────────────

26  [95] 18 U.S.C. § 1962 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to con-

27  duct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

28

**COMPLAINT FOR DAMAGES**

Trust has assets which effects interstate and international commerce.

687.   Plaintiffs Ricky and Donna Ritch are individuals and as such are "enterprises" under 18 U.S.C. § 1961(4). They are residents of Alabama and the financial losses they incurred have affected interstate commerce. Both of the plaintiffs have been targets of the racketeering activities of David Coleman described in the earlier Pendant Causes of Action.

688.   The defendant James Schnieders is the court appointed Trustee of the Trust and thus has a fiscal duty to serve the Trust, i.e. an employee of the Trust. Lisa MacCarley is the attorney for James Schnieders with regards to his accusation of and management of the Trust, i.e. she has a fiscal duty to serve the Trust.

689.   As discussed in the previous Pendant Causes of Action, James Schnieders and Lisa MacCarley have been involved in Racketeering activities as defined by 18 U.S.C. § 1961. These activities have continued after James Schnieders was appointed as the Temporary Trustee of the Trust.

690.   The plaintiffs were injured by the use of and investment of income from the racketeering activities described above. The defendants used the funds taken from the plaintiffs in violation of 18 U.S.C. § 1962(a) to cause further litigation against the plaintiffs in continuance of their racketeering operations. Malley-Duff. The costs of defending against the litigation were injuries to the plaintiffs.

691.   The plaintiffs were injured by the criminal activities of the defendants since they are beneficiaries of the Marshall

**COMPLAINT FOR DAMAGES**

1    Stern Living Trust and thus the misuse of the funds in the

2    Trust diminish the benefit of the Trust to the beneficiaries.

3    **Fifth Count — All Defendants — 18 U.S.C. § 1962(d)[96] RICO Con-**

4    **spiracy to Violate 18 U.S.C. 1962(a)(b)&(c).**

5    692.  Plaintiff incorporates each of the above allegations.

6    693.  The Marshall L. Stern Living Trust is an "enterprise" as

7    defined by 18 U.S.C. § 1961 (4), in that it is a "legal en-

8    tity". The Trust is subject to 18 U.S.C. § 1962(d) in that the

9    Trust has assets in Texas, Idaho, Louisiana, and California.

10   The Trust includes a Gold Mine in Idaho the product of which

11   is sold both interstate and internationally. Therefore, the

12   Trust has assets which effects interstate and international

13   commerce.

14   694.  Plaintiffs Ricky and Donna Ritch are individuals and as

15   such are "enterprises" under 18 U.S.C. § 1961(4). They are

16   residents of Alabama and the financial losses they incurred

17   have affected interstate commerce. Both of the plaintiffs have

18   been targets of the racketeering activities of David Coleman

19   described in the earlier Pendant Causes of Action.

20   695.  The defendants have conspired to gained control over the

21   Trust through a pattern of Racketeering described in the pre-

22   vious Pendant Causes of Action above in violation of 18 U.S.C.

23   § 1962(b).

24   696.  The defendants have conspired to place James Schnieders and

25   Lisa MacCarley in positions of association inside the Trust

26

27   ────────────

[96] 18 U.S.C. §1962 (d) It shall be unlawful for any person to conspire to violate any of the pro-

28   visions of subsection (a), (b), or (c) of this section.

**COMPLAINT FOR DAMAGES**

where they have continued a pattern of Racketeering described in the previous Pendant Causes of Action above in violation of 18 U.S.C. § 1962(c).

697.   The purpose of the actions of the conspirators was to gain access to the Trust's assets for their own benefit and to the harm/detriment of the plaintiff, Marshall Stern, and his bene-ficiaries.

698.   The plaintiffs were injured by the use of and investment of income from the racketeering activities described above. The defendants used the funds taken from the plaintiffs in viola-tion of 18 U.S.C. § 1962(a) to cause further litigation against the plaintiffs in continuance of their racketeering operations. Malley-Duff. The costs of defending against the litigation were injuries to the plaintiffs.

699.   The plaintiffs were injured by the criminal activities of the defendants since they are beneficiaries of the Marshall Stern Living Trust and thus the misuse of the funds in the Trust diminish the benefit of the Trust to the beneficiaries.

**Sixth Count – Ronald Berman and BERMAN & BERMAN – 18 U.S.C. § 1962(c) Employee of Enterprise Involved in Racketeering Activi-ties.**

700.   Plaintiff incorporates each of the above allegations.

701.   The BERMAN & BERMAN is an "enterprise" as defined by 18 U.S.C. § 1961 (4), in that it is a "legal entity".

702.   BERMAN & BERMAN is not the target of or the victim of the criminal racketeering activities.

703.   Plaintiffs Ricky and Donna Ritch are individuals and as such are "enterprises" under 18 U.S.C. § 1961(4). They are residents of Alabama and the financial losses they incurred

223                                    COMPLAINT FOR DAMAGES

1   have affected interstate commerce. Both of the plaintiffs have

2   been targets of the racketeering activities of David Coleman

3   described in the earlier Pendant Causes of Action.

4   704.   The Trust, which is the victim of the Racketeering Activi-

5   ties is subject to 18 U.S.C. § 1962(c) in that the Trust has

6   assets in Texas, Idaho, Louisiana, and California. The Trust

7   includes a Gold Mine in Idaho the product of which is sold

8   both interstate and internationally. Therefore, the Trust has

9   assets which effects interstate and international commerce.

10  705.   The defendant Ronald Berman is the court appointed attorney

11  for Marshall Stern and thus has a fiscal and ethical duty to

12  serve Marshall Stern.

13  706.   As discussed in the previous Pendant Causes of Action,

14  Ronald Berman and BERMAN & BERMAN have been involved in Rack-

15  eteering activities as defined by 18 U.S.C. § 1961.

16  707.   The plaintiffs were injured by the use of and investment of

17  income from the racketeering activities described above. The

18  defendants used the funds taken from the plaintiffs in viola-

19  tion of 18 U.S.C. § 1962(a) to cause further litigation

20  against the plaintiffs in continuance of their racketeering

21  operations. Malley-Duff. The costs of defending against the

22  litigation were injuries to the plaintiffs.

23  708.   The plaintiffs were injured by the criminal activities of

24  the defendants since they are beneficiaries of the Marshall

25  Stern Living Trust and thus the misuse of the funds in the

26  Trust diminish the benefit of the Trust to the beneficiaries.

27  **Seventh Count – David Coleman and OLDMAN, COOLEY, SALLUS, GOLD,**

28  **BRINBERG, & COLEMAN – 18 U.S.C. § 1962(c) Employee of Enterprise**
    **Involved in Racketeering Activities.**

COMPLAINT FOR DAMAGES

709.  Plaintiff incorporates each of the above allegations.

710.  The OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN is an "enterprise" as defined by 18 U.S.C. § 1961 (4), in that it is a "legal entity".

711.  OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN is not the target of or the victim of the criminal racketeering activities.

712.  Plaintiffs Ricky and Donna Ritch are individuals and as such are "enterprises" under 18 U.S.C. § 1961(4). They are residents of Alabama and the financial losses they incurred have affected interstate commerce. Both of the plaintiffs have been targets of the racketeering activities of David Coleman described in the earlier Pendant Causes of Action.

713.  The Trust, which is the victim of the Racketeering Activities is subject to 18 U.S.C. § 1962(c) in that the Trust has assets in Texas, Idaho, Louisiana, and California. The Trust includes a Gold Mine in Idaho the product of which is sold both interstate and internationally. Therefore, the Trust has assets which effects interstate and international commerce.

714.  The defendant David Coleman is the court appointed "Special Prosecutor".

715.  As discussed in the previous Pendant Causes of Action, David Coleman and OLDMAN, COOLEY, SALLUS, GOLD, BRINBERG, & COLEMAN have been involved in racketeering activities as defined by 18 U.S.C. § 1961.

716.  The plaintiffs were injured by the use of and investment of income from the racketeering activities described above. The defendants used the funds taken from the plaintiffs in viola-

COMPLAINT FOR DAMAGES

1    tion of 18 U.S.C. § 1962(a) to cause further litigation

2    against the plaintiffs in continuance of their racketeering

3    operations. <u>Malley-Duff</u>. The costs of defending against the

4    litigation were injuries to the plaintiffs.

5    717.   The plaintiffs were injured by the criminal activities of

6    the defendants since they are beneficiaries of the Marshall

7    Stern Living Trust and thus the misuse of the funds in the

8    Trust diminish the benefit of the Trust to the beneficiaries.

9    **Eighth Count – Christopher Johnson and RUSSAKOW, RYAN, & JOHNSON**

10   **– 18 U.S.C. § 1962(c) Employee of Enterprise Involved in Racket-**
**eering Activities.**

11   718.   Plaintiff incorporates each of the above allegations.

12   719.   The RUSSAKOW, RYAN, & JOHNSON is an "enterprise" as defined

13   by 18 U.S.C. § 1961 (4), in that it is a "legal entity".

14   720.   RUSSAKOW, RYAN, & JOHNSON is not the target of or the vic-

15   tim of the criminal racketeering activities.

16   721.   The Trust, which is the victim of the Racketeering Activi-

17   ties is subject to 18 U.S.C. § 1962(c) in that the Trust has

18   assets in Texas, Idaho, Louisiana, and California. The Trust

19   includes a Gold Mine in Idaho the product of which is sold

20   both interstate and internationally. Therefore, the Trust has

21   assets which effects interstate and international commerce.

22   722.   Plaintiffs Ricky and Donna Ritch are individuals and as

23   such are "enterprises" under 18 U.S.C. § 1961(4). They are

24   residents of Alabama and the financial losses they incurred

25   have affected interstate commerce. Both of the plaintiffs have

26   been targets of the racketeering activities of David Coleman

27   described in the earlier Pendant Causes of Action.

28

**COMPLAINT FOR DAMAGES**

723.  The defendant Christopher Johnson is the court appointed attorney for Andrea Hodges a beneficiary of the Trust.

724.  As discussed in the previous Pendant Causes of Action, Christopher Johnson and RUSSAKOW, RYAN, & JOHNSON have been involved in Racketeering activities as defined by 18 U.S.C. § 1961.

725.  The plaintiffs were injured by the use of and investment of income from the racketeering activities described above. The defendants used the funds taken from the plaintiffs in violation of 18 U.S.C. § 1962(a) to cause further litigation against the plaintiffs in continuance of their racketeering operations. Malley-Duff. The costs of defending against the litigation were injuries to the plaintiffs.

726.  The plaintiffs were injured by the criminal activities of the defendants since they are beneficiaries of the Marshall Stern Living Trust and thus the misuse of the funds in the Trust diminish the benefit of the Trust to the beneficiaries.

### SEVENTEENTH CAUSE OF ACTION - HOBBS ACT

**First Cause of Action - Extortion or Attempted Extortion by Force.**

**(18 U.S.C. § 1951[97])**

---

[97] 18 U.S.C. § 1951 - (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
**(b)** As used in this section—
**(1)** The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his cus-

727.  Plaintiff incorporates each of the above allegations.

728.  Through their criminal conduct (discussed above in the Pendant Causes of Action), defendants Judge Bobb, Judge Pro Tem Beckloff, Commissioner Penny, Ronald Berman, Jim Schnieders, Lisa MacCarley, David Coleman, Christopher Johnson, Andrea Hodges, Howard Stern, Herman Stern, Officer Yang, Officer Astorga, The Los Angeles Sheriff's Department, attempted to extort Mr. Ritch into turning the Trust over to the conspirators for their own benefit.

729.  The extortion of Mr. Ritch is discussed in the Cause of Action – Extortion above.

730.  The extortion included the actual false imprisonment/ kidnapping of Mr. Ritch, and his subsequent life threatening physical injury and threats of further injury caused by the conspirators in the Los Angeles Sheriff's Department.

731.  By taking control over the Trust, the conspirators have gained control over Trust assets, including the Gold Mine which means that they are in a position to effect interstate and international commerce.

tody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

228                                    COMPLAINT FOR DAMAGES

732.  The purpose of the actions of the conspirators was to gain access to the Trust's assets for their own benefit and to the harm/detriment of the plaintiff, Marshall Stern, and his bene-ficiaries.

733.  In doing the things herein alleged, defendants acted will-fully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount ap-propriate to punish defendants and deter others from engaging in similar misconduct.

## Second Cause of Action - Extortion or Attempted Extortion Under Color of Official Right

### (18 U.S.C. § 1951)

734.  Plaintiff incorporates each of the above allegations.

735.  Through their criminal conduct (discussed above in the Pen-dant Causes of Action), defendants Judge Bobb, Judge Pro Tem Beckloff, Commissioner Penny, Ronald Berman, Jim Schnieders, David Coleman, Officer Yang, Officer Astorga, The Los Angeles Sheriff's Department, attempted to extort Mr. Ritch into turn-ing the Trust over to the conspirators for their own benefit.

736.  The above listed defendants were either direct employees of the State/County or were appointed to special duties and re-sponsibilities and thereby were representatives of the State

737.  The extortion of Mr. Ritch is discussed in detail in the Pendant Cause of Action for Extortion above.

229                                    COMPLAINT FOR DAMAGES

738.  The defendants criminally used their positions of authority to conduct the extortion in an effort to unlawfully gain control over the Trust.

739.  The purpose of the actions of the conspirators was to gain access to the Trust's assets for their own benefit and to the harm/detriment of the plaintiff, Marshall Stern, and his beneficiaries.

740.  The extortion included the actual false imprisonment/ kidnapping of Mr. Ritch, and his subsequent life threatening physical injury and threats of further injury caused by the conspirators in the Los Angeles Sheriff's Department.

741.  By taking control over the Trust, the conspirators have gained control over Trust assets, including the Gold Mine which means that they are in a position to effect interstate and international commerce.

742.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**EIGHTEENTH CAUSE OF ACTION – INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**First Cause of Action – Intentional Infliction of Emotional Distress[98] to Ricky Ritch.**

---

[98] The elements for the Intentional Infliction of Emotional Distress are:
    1. Extreme or outrageous conduct,

230                                                    COMPLAINT FOR DAMAGES

1   743.  Plaintiff incorporates each of the above allegations.

2   744.  The conduct of the defendants has been extreme and outra-

3        geous, in that the defendants have caused grievous injury to

4        Mr. Ritch, physically, emotionally, and to his reputation. The

5        actions have included false imprisonment, assault, battery,

6        defamation of his character with false and perjurous allega-

7        tions of wrong doing.

8   745.  The actions of the defendants were intentionally directed

9        at Mr. Ritch in an effort to cause him harm in an effort to

10       forward their conspiracy to gain control over the assets of

11       the Marshall L. Stern Living Trust for their own benefit and

12       to the harm of Marshall Stern.

13  746.  Mr. Ritch suffered emotional harm during his illegal incar-

14       ceration. He was in fear for his life during his incarcera-

15       tion, both from the inmates of the jail and from the officers

16       of the Los Angeles County Sheriff's Department who made

17       threatening comments to him during his incarceration at the

18       direction of Judge Bobb.

19  747.  Mr. Ritch has suffered emotional harm from his fear for the

20       welfare of Marshall Stern and his wife Donna's fear for her

21       father.

22

23

24

25       2. Intending to cause plaintiff emotional distress or actions in reckless disregard of the
26       likelihood that such distress would result,
         3. Plaintiff actually suffered sever emotional distress,
27       4. Plaintiff's emotional distress was proximately caused by the actor's extreme and out-
28       rageous conduct, and
         5. The Plaintiff suffered damages due to the conduct of the actor.

COMPLAINT FOR DAMAGES

748.   The emotional and physical injuries Mr. Ritch has suffered have caused Mr. Ritch's preexisting physical ailments to aggravated, requiring additional medical treatment and care.

749.   Mr. Ritch's emotional injury was directly caused by the extreme and outrageous actions of the defendants, both the incarceration and the separation from his father-in-law.

750.   Mr. Ritch has incurred additional medical expenses due to his emotional distress caused by the defendants.

751.   In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Second Cause of Action – Negligent Infliction of Emotional Distress to Ricky Ritch.**

752.   Plaintiff incorporates each of the above allegations.

753.   The conduct of the defendants has been extreme and outrageous, in that the defendants have caused grievous injury to Mr. Ritch, physically, emotionally, and to his reputation. The actions have included false imprisonment, assault, battery, defamation of his character with false and perjurous allegations of wrong doing.

754.   The actions of the defendants were taken with a reckless disregard to the potential injury they would cause to Mr. Ritch.

**COMPLAINT FOR DAMAGES**

755.  Mr. Ritch suffered emotional harm during his illegal incarceration. He was in fear for his life during his incarceration, both from the inmates of the jail and from the officers of the Los Angeles County Sheriff's Department who made threatening comments to him during his incarceration at the direction of Judge Bobb.

756.  Mr. Ritch has suffered emotional harm from his fear for the welfare of Marshall Stern and his wife Donna's fear for her father.

757.  The emotional and physical injuries Mr. Ritch has suffered have caused Mr. Ritch's preexisting physical ailments to aggravated, requiring additional medical treatment and care.

758.  Mr. Ritch's emotional injury was directly caused by the extreme and outrageous actions of the defendants, both the incarceration and the separation from his father-in-law.

759.  Mr. Ritch has incurred additional medical expenses due to his emotional distress caused by the defendants.

760.  In doing the things herein alleged, defendants acted willfully and with intent to cause injury to the plaintiff. The defendants were therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**Third Cause of Action – Intentional Infliction of Emotional Distress to Donna Stern-Ritch.**

761.  Plaintiff incorporates each of the above allegations.

233                                    **COMPLAINT FOR DAMAGES**

762.   The conduct of the defendants has been extreme and outrageous, in that the defendants have caused grievous injury to Donna Ritch, physically, emotionally, and to her reputation. The actions have included the false imprisonment of both her father and her husband, battery to her husband by the Los Angeles County Sheriff's Department, the drugging of her father by the defendants, and the defamation of her character with false and perjurous allegations of wrong doing.

763.   The actions of the defendants were intentionally directed at Donna Ritch to cause her serious harm emotionally and physically.

764.   Donna Ritch is a cancer survivor who is on medication, oral chemotherapy, which causes her to be emotionally vulnerable to stress. The stress she has suffered from the actions of the defendants has caused her doctors to warn her that she could be facing a relapse of her cancer from the stress.

765.   Donna Ritch has epilepsy and is subject to seizures. During Mr. Ritch's incarceration Donna Ritch suffered two seizures from the stress she was experiencing at that time.

766.   Donna Ritch suffered emotional harm during Ricky Ritch's illegal incarceration. She was in fear for his life during his incarceration, both from the inmates of the jail and from the officers of the Los Angeles County Sheriff's Department, who she learned during his incarceration had physically abused him and were making threatening comments to him.

767.   Donna Ritch has suffered emotional harm from her fear for the welfare of Marshall Stern. She fears for his safety, especially after learning of the poor ratings that Magnolia Gar-

**COMPLAINT FOR DAMAGES**

1    dens has received for its patient care by the State of Cali-

2    fornia and observing them administer potentially harmful drugs

3    to him during her visit in January. (Exhibit 14)

4  768.   The emotional harm to Donna Ritch has caused Donna Ritch to

5    suffer seizures during Ricky Ritch's incarceration and has ag-

6    gravating her nervous condition and requiring additional medi-

7    cal treatment and care.

8  769.   Donna Ritch's emotional injury was directly caused by the

9    extreme and outrageous actions of the defendants, both the in-

10   carceration of her husband and the separation from her father.

11 770.   Donna Ritch has incurred additional medical expenses due to

12   her emotional distress caused by the defendants.

13 771.   In doing the things herein alleged, defendants acted will-

14   fully and with intent to cause injury to the plaintiff. The

15   defendants were therefore guilty of malice, oppression, and

16   fraud in conscious disregard of plaintiff's rights, thereby

17   warranting an assessment of punitive damages in an amount ap-

18   propriate to punish defendants and deter others from engaging

19   in similar misconduct.

20   **Fourth Cause of Action – Negligent Infliction of Emotional Dis-**

21   **tress to Donna Stern-Ritch.**

22 772.   Plaintiff incorporates each of the above allegations.

23 773.   The conduct of the defendants has been extreme and outra-

24   geous, in that the defendants have caused grievous injury to

25   Donna Ritch, physically, emotionally, and to her reputation.

26   The actions have included the false imprisonment of both her

27   father and her husband, battery to her husband by the Los An-

28   geles County Sheriff's Department, the drugging of her father

**COMPLAINT FOR DAMAGES**

1  by the defendants, and the defamation of her character with

2  false and perjurous allegations of wrong doing.

3  774.  The actions of the defendants were taken with a reckless

4  disregard to the potential injury they would cause to Donna

5  Ritch.

6  775.  Donna Ritch is a cancer survivor who is on medication, oral

7  chemotherapy, which causes her to be emotionally vulnerable to

8  stress. The stress she has suffered from the actions of the

9  defendants has caused her doctors to warn her that she could

10  be facing a relapse of her cancer from the stress.

11  776.  Donna Ritch has epilepsy and is subject to seizures. During

12  Mr. Ritch's incarceration Donna Ritch suffered two seizures

13  from the stress she was experiencing at that time.

14  777.  Donna Ritch suffered emotional harm during Ricky Ritch's

15  illegal incarceration. She was in fear for his life during his

16  incarceration, both from the inmates of the jail and from the

17  officers of the Los Angeles County Sheriff's Department, who

18  she learned during his incarceration had physically abused him

19  and were making threatening comments to him.

20  778.  Donna Ritch has suffered emotional harm from her fear for

21  the welfare of Marshall Stern. She fears for his safety, espe-

22  cially after learning of the poor ratings that Magnolia Gar-

23  dens has received for its patient care by the State of Cali-

24  fornia and observing them administer potentially harmful drugs

25  to him during her visit in January. (Exhibit 14)

26  779.  Donna Ritch is a cancer survivor who is on medication, oral

27  chemotherapy, which causes her to be emotionally vulnerable to

28  stress. The stress she has suffered from the actions of the

236                           **COMPLAINT FOR DAMAGES**

1  defendants has caused her doctors to warn her that she could

2  be facing a relapse of her cancer from the stress.

3  780.  Donna Ritch has epilepsy and is subject to seizures. During

4  Mr. Ritch's incarceration Donna Ritch suffered two seizures

5  from the stress she was experiencing at that time.

6  781.  The emotional harm to Donna Ritch has aggravating her nerv-

7  ous condition and required additional medical treatment and

8  care.

9  782.  Donna Ritch's emotional injury was directly caused by the

10  extreme and outrageous actions of the defendants, both the in-

11  carceration of her husband and the separation from her father.

12  783.  Donna Ritch has incurred additional medical expenses due to

13  her emotional distress caused by the defendants.

14  784.  In doing the things herein alleged, defendants acted will-

15  fully and with intent to cause injury to the plaintiff. The

16  defendants were therefore guilty of malice, oppression, and

17  fraud in conscious disregard of plaintiff's rights, thereby

18  warranting an assessment of punitive damages in an amount ap-

19  propriate to punish defendants and deter others from engaging

20  in similar misconduct.

21  **PETITIONER'S PRAYER FOR RELIEF**

22  WHEREFORE, the plaintiff prays for judgment against the defen-

23  dants as follows:

24  1. For defendants' perjury and conspiracy to commit perjury vio-

25  lations, compensatory damages, against all defendants, jointly

26  and severally, $100,000,000.00/plaintiff, together with pre-

27  trial interest, cost and attorneys' fees.

28

**COMPLAINT FOR DAMAGES**

2. For defendants' attorney misconduct[99] and conspiracy to commit attorney misconduct violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00 per plaintiff, together with pretrial interest, cost and attorneys' fees.

3. For defendants' judicial misconduct and conspiracy to commit judicial misconduct violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00 per plaintiff, together with pretrial interest, cost and attorneys' fees.

4. For defendants' defamation, libel, slander, and invasion of privacy and conspiracy to commit defamation, libel, slander, and invasion of privacy, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

5. For defendants' deprivation of the plaintiff's Constitutional Rights and conspiracy to deprive plaintiff of his Constitutional Rights, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

6. For defendants' extortion and conspiracy to commit extortion violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

---

[99] C.C.P. § 128.5.(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay.

**COMPLAINT FOR DAMAGES**

7. For defendants' false imprisonment/kidnapping and conspiracy to commit false imprisonment/kidnapping violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

8. For defendants' assault and conspiracy to commit assault violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

9. For defendants' battery and conspiracy to commit battery violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

10. For defendants' conversion and conspiracy to commit conversion violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

11. For defendants' fraud and deceit and conspiracy to commit fraud and deceit violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

12. For defendants' making false statements to a bank and conspiracy to commit making false statements to a bank violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

13. For defendants' obstruction of justice, interference with a judicial officer, and conspiracy to obstruct justice, compen-

COMPLAINT FOR DAMAGES

1  satory damages, against all defendants, jointly and severally,
2  $100,000,000.00/plaintiff, together with pretrial interest,
3  cost and attorneys' fees.
4  14.  For defendants' obstruction of justice, tampering with a
5  witness, and conspiracy to obstruct justice, compensatory dam-
6  ages, against all defendants, jointly and severally,
7  $100,000,000.00/plaintiff, together with pretrial interest,
8  cost and attorneys' fees.
9  15.  For defendants' obstruction of justice, retaliation against
10  a witness/party, and conspiracy to obstruct justice, compensa-
11  tory damages, against all defendants, jointly and severally,
12  $100,000,000.00/plaintiff, together with pretrial interest,
13  cost and attorneys' fees.
14  16.  Against all defendants, jointly and severally, reasonable
15  attorney's fees, pursuant to 42 U.S.C. § 1988, together with
16  pretrial interest, cost and attorneys' fees.
17  17.  Against all defendants, jointly and severally, special dam-
18  ages under California Civil Code § 52(a) in an amount of
19  $100,000,000.00, together with pretrial interest, cost and at-
20  torneys' fees.
21  18.  Against all defendants, jointly and severally, for a statu-
22  tory civil penalty in the sum of $25,000/defendant, pursuant
23  to California Civil Code § 52(b).
24  19.  For defendants' violations of the Racketeer Influenced and
25  Corrupt Organizations Act, treble damages against all defen-
26  dants, jointly and severally, $100,000,000.00/plaintiff, to-
27  gether with pretrial interest, cost and attorneys' fees, under
28  18 U.S.C. § 1964(c).

**COMPLAINT FOR DAMAGES**

a. The prayer for relief is based on the economic damages inflicted on the Plaintiffs through the racketeering activities of the defendants.

20.  For defendants' intentional and negligent infliction of emotional distress and conspiracy to intentional and negligent infliction of emotional distress violations, compensatory damages, against all defendants, jointly and severally, $100,000,000.00/plaintiff, together with pretrial interest, cost and attorneys' fees.

21.  Against all defendants, jointly and severally, for treble damages for those damages determined according to proof at trial to have been caused by fraud or deceit, together with pretrial interest, cost and attorneys' fees.

22.  Against all defendants, jointly and severally, double any amounts removed from the Marshall L. Stern Living Trust, under California Probate Code § 859, together with pretrial interest, cost and attorneys' fees to be returned to the Trust forthwith.

23.  Against all defendants, jointly and severally, punitive damages in the amount appropriate to punish the defendants and deter others from engaging in similar misconduct.[100]

---

[100] C.C.P. § 128.5 (d) In addition to any award pursuant to this section for conduct described in subdivision (a), the court may assess punitive damages against the plaintiff upon a determination by the court that the plaintiff's action was an action maintained by a person convicted of a felony against the person's victim, or the victim's heirs, relatives, estate, or personal representative, for injuries arising from the acts for which the person was convicted of a felony, and that the plaintiff is guilty of fraud, oppression, or malice in maintaining the action.

**COMPLAINT FOR DAMAGES**

24.  Against all defendants, jointly and severally, costs of suit incurred herein, together with pretrial interest, cost and. attorneys' fees.

25.  An order setting aside defendants' fraudulent conveyances and directing defendants and all persons acting in concert with them to return any funds or property may be available for satisfaction of the judgment herein.

26.  An order imposing a constructive trust on defendants' assets in the amount of the judgment herein, together with an order directing an accounting by defendants of all funds and assets received from the Marshall L. Stern Living Trust and the Estate of Marshall L. Stern and tracing the defendants' use and disposition of these funds and assets.

27.  An order vacating all orders and convictions of the California Superior Court in the County of Los Angeles in State matters *BP 091 574* and *BP 096 488* on the grounds that they were a part of an ongoing illegal conspiracy, are not supported by fact or law, and violated Mr. Ritch's Federal and State Constitutional Rights and Protections.

28.  Reinstatement of Ricky Ritch as Trustee of the Marshall L. Stern Living Trust.

29.  Appointment of Ricky Ritch as Conservator of the Person and Estate of Marshall L. Stern.

30.  For such other and further relief as the court may deem proper.

Date: _____ SEP 1 1 2006 _____        By: _____

~~Roger~~ Albert M. Sterwerf
Attorney for the Plaintiffs

242                    **COMPLAINT FOR DAMAGES**

**VERIFICATION**

I, Ricky A. Ritch, am the plaintiff in this action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct.

Date: _____        _____
                                    Ricky A. Ritch, Plaintiff

I, Donna Ritch, am the plaintiff in this action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct.

Date: _____        _____
                                    Donna Ritch, Plaintiff

**CERTIFICATES OF COMPLIANCE AND RELATED CASES**

I certify that the above document complies with Federal Appellate Rule (FRAP) 32(a)(7).

Pages:        210
Words:        47,874
Lines:        5,433
Font/Size:    Courier New/14

All exhibits in attached appendix are numbered sequentially.

Dated: _____ SEP 1 1 2006 _____        Law Office of Albert M. Sterwerf

                                        Albert M. Sterwerf

**COMPLAINT FOR DAMAGES**

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange. I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 1352 Irvine Boulevard; Tustin, California 92780.

On _____SEP 1 1 2006_____, I served the following document described as:

### LEAVE TO AMEND

on the interested parties in this action by placing the true copies thereof enclosed in sealed envelopes as follows:

See Service List

(✓) I mailed the said envelopes via certified return receipt mail from Tustin, California. The envelopes were mailed with postage thereon fully prepaid.

( ) By Personal Service, I caused such envelope to be delivered by hand to the individuals at the addresses listed.

( ) By overnight courier, I caused the above-referenced document(s) to be delivered to an overnight courier service (United Parcel Service), for delivery to the above addressee(s).

( ) By facsimile machine I caused the above-referenced document(s) to be transmitted to the above-named person at the following telephone number above.

(✓) (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

(✓) (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

EXECUTED this date _____SEP 1 1 2006_____, at Tustin, California.

Respectfully submitted,

6

COMPLAINT FOR DAMAGES

## SERVICE LIST

1

2  Sarah Overton

3  Cummings, McClorey, Davis, Acho, & Associates
   3801 University Avenue, Suite 700

4  Riverside, CA 92501
   (Defendants: Aviva Bobb, William Maclaughlin, Mitchell Beckloff, Brenda Penny, and Claudia

5  Kreigenhofer)

6
   Ron Gold

7  Oldman, Cooley, Sallus, Gold, Brinberg & Coleman
   16133 Ventura Blvd.

8  Penthouse Suite A

9  Encino, CA 91436-2447
   (Defendants: Ronald Berman, James Schnieders, Lisa MacCarley, Christopher Johnson, David

10 Coleman, Andrea Stern-Hodges, Howard Stern, "Berman & Berman", "Oldman, Cooley, Sallus,

11 Gold, Brinberg & Coleman", and "Russakow, Ryan & Johnson)

12
   Matthew R. Rungaitis

13 Lewis, Brisbois, Bisgaard & smith L.L.P.
   221 North Figueroa Street

14 Suite 1200

15 Los Angeles, CA 90012
   (Defendant: Magnolia Gardens Convalescent Hospital)

16

17 John Collins
   Collins, Collins, Muir & Stewart, L.L.P.

18 1100 El Centro Street
   P.O. Box 250

19 South Pasadena, CA 91030

20 (Defendants: Los Angeles County, Leroy Baca, and Gacher Yang)

21 Retirement Advisors of America, Inc.

22 13155 Noel Road, Suite 1800
   Dallas, TX 75240

23

24 Herman H. Stern
   55 S. Kukui Street, No. D2708

25 Honolulu, HI 96813

26
   Encino-Tarzana Regional Medical Center

27 18321 Clark St.
   Tarzana, CA 91356-3501

28

                                        7                    COMPLAINT FOR DAMAGES

1    operations. <u>Malley-Duff</u>. The costs of defending against the

2    litigation were injuries to the plaintiffs.

3    678.  The plaintiffs were injured by the criminal activities of

4    the defendants since they are beneficiaries of the Marshall

5    Stern Living Trust and thus the misuse of the funds in the

6    Trust diminish the benefit of the Trust to the beneficiaries.

7    **Third Count - All Defendants - 18 U.S.C. § 1962(b)[93] RICO Take**

8    **over of an Enterprise.**

9    679.  Plaintiff incorporates each of the above allegations.

10   680.  The Marshall L. Stern Living Trust is an "enterprise" as

11   defined by 18 U.S.C. § 1961(4)[94], in that it is a "legal en-

12   tity". The Trust is subject to 18 U.S.C. § 1962(b) in that the

13   Trust has assets in Texas, Idaho, Louisiana, and California.

14   The Trust includes a Gold Mine in Idaho the product of which

15   is sold both interstate and internationally. Therefore, the

16   Trust has assets which effects interstate and international

17   commerce.

18   681.  The defendants have gained control over the Trust through a

19   pattern of Racketeering described in the previous Pendant

20   Causes of Action above.

21   682.  The purpose of the actions of the conspirators was to gain

22   access to the Trust's assets for their own benefit and to the

23

---

24   [93] 18 U.S.C. § 1962 (b) It shall be unlawful for any person through a pattern of racketeering ac-

25   tivity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any

26   interest in or control of any enterprise which is engaged in, or the activities of which affect, in-

     terstate or foreign commerce.

27   [94] 18 U.S.C. § 1961(4) "enterprise" includes any individual, partnership, corporation, associa-

28   tion, or other legal entity, and any union or group of individuals associated in fact although not a

     legal entity.

**COMPLAINT FOR DAMAGES**